## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**JOSE J. AYALA, JR., on behalf of himself and as representative of other class members similarly situated,**

**PUTATIVE CLASS ACTION SUIT**

**Plaintiff,**

**v.**

**NISSAN NORTH AMERICA, INC. D/B/A NISSAN USA, a California corporation, and wholly owned subsidiary of Nissan Motor Company of Japan,**

**Defendant.**

_____/

## CLASS ACTION COMPLAINT

JOSE J. AYALA, JR., by and through his undersigned counsel, hereby files this Class Action Complaint, individually, and on behalf of all others similarly situated and makes the allegations against Nissan North America, Inc. ("_Nissan_") and any of its associated partners, agents, affiliates, subsidiaries, representatives, and the like for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 _et. seq._, Florida's Minimum Wage Act, Fla. Stat. § 448.110, and other state and federal laws. The following is alleged in support thereof:

## I.     THE CLASS REPRESENTATIVE AND MEMBERS OF THE CLASS

### A.     The Class Representative.

1.      Jose J. Ayala, Jr. is an individual who maintains his personal residence in Orange County, Florida.

2.      Mr. Ayala is, and at all times material to this lawsuit, a citizen of Florida employed as a mechanic and/or technician in the service department of Nissan from approximately September 2009 through March of 2020 and was a non-exempt employee.

3.      Mr. Ayala brings this suit on behalf of himself and all similarly situated individuals.

4.      Mr. Ayala and other Class Members (to be defined) were (or are currently) automobile service employees of Nissan in Florida whom were or currently are subject to Nissan's unlawful compensation program referred to generally as "piece-rate" or "flat-rate" for services performed on behalf of Nissan.

### B.     Class Members.

#### 1.     Class Members as defined by the Federal Fair Labor Standard Act.

5.      Pursuant to 29 U.S.C. § 207, Mr. Ayala and all others similarly situated in their first cause of action, seek to prosecute their Fair Labor Standards Act ("FLSA") claims as a collective action on behalf of all mechanics, technicians, and/or maintenance personnel (with Mr. Ayala to be collectively referred to as "*Class Members*") who are or were employed by Nissan at any time from January 2014 to the entry of judgement in this case (the "*Class Period*").

6.      A collective action is appropriate in this circumstance because the Class Members are similarly situated in that they were subjected to Nissan's unlawful compensation program and policies which compensated them less than the minimum wage for all hours worked, including the

failure to pay overtime wages and abusing the Class Members, among other unlawful conduct described later in this pleading consistent with applicable law.

7.      The class of similarly situated individuals or potential Class Members (i.e., the Class Members) sought to be certified under 29 U.S.C. § 216 is defined as:

> All persons who worked for Nissan during the Class Period who were or are automobile service persons compensated under an unlawful compensation program manipulated by Nissan referred to as "piece-rate" or "flat-rate" for services performed on behalf of Nissan and were not compensated their A) regular hourly rate for all hours worked, B) time-and-a-half of their regular hourly rate for all hours worked in excess of forty (40) hours, or C) were not compensated statutory minimum wage for all hours worked per week during one or more work weeks.

8.      The precise size and identity of all Class Members is ascertainable from the business records, tax records, and/or employee personnel records of Nissan.  Nissan has employed over 1,500 individuals who were paid under its unlawful compensation program in violation of the Fair Labor Standards Act in Florida during the Class Period.  Nissan compensated Class Members in the same manner and under the same unlawful employee compensation program, and each of them has worked in Florida during the Class Period.  All Class Members were not compensated, at least, the full minimum wage for all hours worked and are owed overtime wages, amongst other things typical compensation that had denied them at the hands of Nissan and its unlawful employee compensation program.

9.      Mr. Ayala maintains the right to modify the class and or create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

## 2.      **Additional Allegations Defining the Class Members.**

10.     As to Counts 2-5 and pursuant to Rule 23 of the Federal Rules of Civil Procedure, Mr. Ayala makes the following additional allegations and incorporates by references paragraphs 5-9.

**Numerosity of the Putative Class.**

11.     Class Members are so numerous that their individual joinder is impractical. Although the precise identities, numbers and addresses of Class Members are currently unknown to Mr. Ayala, the facts on which the calculation of that number can be based are presently within the sole control Nissan.  Upon information and belief, there are well in excess of two hundred (200) Class Members during the Class Period.

**Existence of Common Questions of Fact and Law.**

12.     There is well-defined commonality in the questions of law and fact involved affecting Class Members. The common questions of law include, but are not limited to:

a.     Whether Nissan's implementation, manipulation, and use of piece-rate pay and/or flat-rate pay violated Florida and Federal laws and statutes;

b.     Whether Nissan employed Class Members within the meaning as prescribed by law;

c.     What proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.     Whether Nissan failed and/or refused to pay Class Member wages owed and minimum wage for all hours worked;

e.     Whether Nissan took unlawful deductions from the wages of Class Members;

f.      Whether Nissan acted with intention—willfully and maliciously—in its actions; and

g.      Whether Nissan is liable for all damages claimed hereunder, including but not limited to compensatory, liquidated, punitive, interest, costs and disbursements, and attorneys' fees.

**Typicality.**

13.     Mr. Ayala's claims are typical of the claims of all Class Members because he was employed in the same capacity as a Nissan mechanic and/or technician during the Class Period; Mr. Ayala experienced the same harms and violations of law as all other Class Members.

**Adequacy.**

14.     Mr. Ayala is an adequate representative of Class Members because his interests do not conflict with the interests of other Class Members he seeks to represent.  Mr. Ayala has retained competent counsel for this class action and intends to vigorously pursue this action.  Mr. Ayala and his counsel will fairly and adequately protect the interests of Class Members.

**Predominance and Superiority.**

15.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation—particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against Nissan.

16.     The individual members of the class have no interest or capacity to bring separate actions; the plaintiff is unaware of any other litigation concerning this controversy; thus, it is desirable to concentrate the litigation in one case.

17.     There are no likely difficulties that will arise in managing the class action.

18. This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law common to the Class Members predominate over the questions affecting only individual members of the class; a class action is superior to other available means for the fair and efficient adjudication of this action.

19. The damages suffered by individual Class Members may be disproportionate to the burden and expense of complex litigation of these claims on an individual basis.

20. Additionally, individual litigation may lead to inconsistent and conflicting judgments against Nissan; therefore, effective redress for each and every Class Member may be limited or impossible.

21. A class action which involves all Class Members favors judicial economy, fairness, and provides the benefit of a single, consistent, adjudication on the issues herein claimed.

## II.   THE DEFENDANT – NISSAN NORTH AMERICA, INC.

22. Nissan is a California corporation that maintains its principal place of business in Franklin, Tennessee.

23. Nissan manufactures and sells Nissan and Infiniti brand cars, sport utility vehicles and pickup trucks through a network of approximately 1,082 Nissan and 211 Infiniti dealers in the United States.

24. Nissan also provides, in addition to manufacturing and selling motor vehicles, a variety of maintenance and repair services to its customers at its various Nissan and Infiniti dealerships.

25. Nissan manages its business by engaging in joint venture relationships with various qualifying individuals or business entities who manage the day to day operation of a dealership, under the direction and control of Nissan.

26.     By way of example –

- XYZ Corp. seeks to own a Nissan dealership.

- Nissan evaluates XYZ Corp.'s creditworthiness, financial resources, and other criteria required by Nissan to determine whether Nissan wishes to engage in the joint venture relationship with the potential dealer.

- Assuming XYZ Corp. satisfies Nissan's criteria, then the two parties enter into a dealership agreement that Nissan has created to govern the relationship with all of its dealership partners.

27.     The relationship between Nissan and its various joint venture partners concerning the dealership or dealerships operated by each partner is as follows:

a.      Each dealer is an independent business entity that enters into a dealership agreement with Nissan that outlines (i) the financial terms of the business relationship, including the sharing of revenues and expenses; (ii) the purchase and sale of motor vehicles and other Nissan products and services that Nissan makes available to its customers through its dealers; and (iii) the general terms and conditions for the operation of the dealership, termination of the business relationship, and control of the corporate polices by which the dealership must operate.  An exemplar of a Nissan dealership agreement is attached and identified as ***Composite Exhibit 1***.

b.      Pursuant to the terms of the dealership agreement between Nissan and each dealer, Nissan retains absolute control of all corporate policies, including but not limited, human resources, employee benefits and perquisites, compensation policies and procedures, among other policies and procedures related to all employees of each dealership, which includes without limitation, the employees that comprise the Class Members for this lawsuit.

28.     As a result of the forgoing, Nissan is directly responsible and liable for the acts and omissions alleged throughout this pleading and is liable to compensate all Class Members for the harm each has endured at the hands of Nissan.

## III.    JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of  2005 under § 1332(d)(2) because this is a class action where any member of a class of plaintiffs

is a citizen of a state different from any defendant and the aggregated amount in controversy exceeds $300,000,000, exclusive of interest and costs.

30.     This Court has original jurisdiction as to "Count One" under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*; such jurisdiction lies under 28 U.S.C. § 1331 and § 1332.

31.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, as the state law claims share all common operative facts with his federal law claims, and the parties are identical.  Resolving all state and federal claims in a single action serves the interests of judicial economy and fairness.

32.     Venue is proper in this District under the provisions of 28 U.S.C. § 1391 because: (1) Nissan conducts business in this District, (2) a substantial part of the acts or omissions giving rise to the claim occurred in this District; and the lead plaintiff and several hundred of the Class Members reside within the District.

## IV.   NISSAN'S WRONGFUL BUSINESS PRACTICES

### A.   <u>General Comments About Nissan's Failure to Compensate.</u>

33.     Nissan has engaged in willful and systematic misconduct that violates both federal and state wage and labor laws that deprive Class Members of fair and appropriate compensation consistent with the various laws enacted by the United States and the State of Florida to protect individuals from wrongful compensation practices of their employers.

34.     In addition, Nissan has failed to properly reimburse Class Members for all business expenses including, without limitation, the cost to procure and maintain tools, equipment, and supplies necessary for the discharge of their duties, resulting in failure to pay minimum wages and unpaid wages.

35.     Nissan has failed to maintain proper business records concerning compensation and related employment matters pertaining to Class Members, which likewise is a violation of the laws of the United States.

36.     Nissan willfully engages in wage compensation schemes that deny Class Members the right to be compensated for all work hours performed and benefits provided on behalf of Nissan.

**B.      Nissan's Business.**

37.     Nissan is engaged in the service of automobiles in Florida, nationwide, and globally. It has historically manufactured reliable and affordable vehicles while typically remaining competitive, even in foreign markets.

38.     Nissan provides and controls service departments at their agents'/representatives' respective locations where automobiles are serviced, maintained, and/or repaired.

39.     Mechanics, technicians, and maintenance personnel (i.e., Class Members) are employed by Nissan in order to perform repair and maintenance services on automobiles.

40.     Class Members work under a payment system referred to as "piece-rate" pay or "flat-rate" pay, where employees are paid a fixed rate for each unit produced or service performed ("*flagged hours*"), regardless of the amount of time the employee spent working on the task. The rate of pay per service varies by the task performed and whether the service is "warranty-paid" or "customer-paid".

41.     Traditionally, this system is common with automotive technicians and was initially created as an incentive for their employees to work at a faster pace; in fact, it was quite lucrative for many technicians in previous years before unusual developments in Nissan's recent history.

42.     Nissan's manipulation and use of this unlawful employee compensation program does not properly compensate employees for a substantial number of hours worked in the day, including time working non-flagged hours for such tasks as training, cleaning the workshop, or prepping tools.

43.     Nissan partakes in unlawful behaviors under the guise of the "flat-rate pay" program and withholds owed wages from their technicians in an effort to decrease its expenses, increase profits, and cut-corners.  In comparison to other vehicle manufacturers, Nissan established additional policies, causing their technicians to suffer unpaid wages at a high degree over the past several years.

44.     To provide example:

a.      Jose Ayala and those similarly situated, are required to remain and perform various unpaid "non-repair" tasks, including, but not limited to cleaning, attending meetings and/or on-site/virtual trainings, traveling to offsite locations in connection with Nissan's business, reviewing service orders, and completing invoices. This comprises a large portion of their "work-time", for which the employees are unpaid.  Class Members are not compensated for the hours spent conducting "non-piece-rate" or "non-flat-rate" tasks.

b.      The total amount of hours spent "on the job" by Class Members are not documented as required and paystubs denote what purports to be "flagged hours" only with no supportive information.

c.      Class Members are not compensated or reimbursed for tools purchased in order to fulfill their required duties. Class Members are required to personally purchase, without any compensation or reimbursement from their employer, thousands of dollars' worth of tools and equipment that are necessary and vital to work at Nissan and complete Nissan's service work.

d.      Nissan arbitrarily deducts from employees' paychecks without explanation or documentation.

e.      Class Members, although entering agreements to be paid a certain amount of dollars per hour (i.e. an agreement and expectation to be paid $26 dollars per hour worked), are never actually compensated the promised hourly wage due to the egregious payment system.

45.     Nissan also created and has employed an arbitrary system where services paid by customers directly provides a significantly higher flat-rate pay-out to the Nissan employee conducting the work; on the other end of the spectrum, that same work, but for a customer with a vehicle under warranty (which consists of approximate 80% of Nissan's customer base/service-work as of recent years) pays a *substantially* lower flat-rate pay-out to the employee than if it were to be paid directly by a customer.

46.     There is no difference in the work being performed between "customer-paid" and "warranty-paid" work, other than the rate being paid to the employee.   For example, the flat-rate pay-out to a technician for replacing a transmission in a Nissan Sentra that is paid directly by the customer is eight hours. If that same transmission is brought in by a customer with the same vehicle, but under a warranty (either manufacturer or an extended warranty), the transmission replacement conducted by the technician will now only pay four hours (without reason). This drastic change in the flat-rate paid to the technician is arbitrary and capricious—there is no difference in the work performed or the time it takes to replace a transmission (for example) in a warranty-paid versus customer-paid vehicle. Perhaps the only difference is the profit that Nissan wrongfully diverts from its employees on a majority of the vehicles which are serviced.

47.     "Warranty-paid" work provides a substantially lower payout to the employees than "customer-paid" work because the warranty work constitutes a great majority of the service requested at Nissan.

48.     Hence, there is a tighter profit-margin at risk for Nissan. In an effort to claw-back some of the profits, Nissan reduces the pay-out to its employees through the unlawful method described.

49.   Consequently, mechanics, technicians, and maintenance personnel did not and are not receiving fair compensation for all hours worked while providing valuable benefits and services to Nissan, for which Nissan receives profits. These invaluable Nissan employees have outstanding unpaid wages[1] owed to them.

50.   Nissan's employee compensation program violates the Fair Labor Standards Act, 29 U.S.C. § 206, for failure to pay minimum wage for all hours worked, as will be described in Count 1 of this complaint.

51.   Further, Nissan's employee compensation program violates Florida's Minimum Wage Act, Fla. Stat. § 448.110, as will be described in Count 2 of this complaint.

52.   Nissan has been unjustly enriched through their conduct by failing to pay wages for all hours worked and other benefits the employees conferred onto Nissan for its own profit and benefit.  In other words, Class Members have conferred a benefit on Nissan by working hours for which they were not reasonably compensated, amongst other things.

53.   Additionally, Class Members are generally required to purchase, and maintain their tools, equipment, and supplies necessary for the discharge of their duties.

54.   Nissan's failure to reimburse Class Members for out of pocket expenses resulted in a benefit to the employer, to the detriment of the employee/Class Member.

55.   By requiring Class Members to purchase their own tools to complete their duties, the cost of such tools purchased by the employee cuts into the overall compensation of the employee.

---

[1] "Unpaid wages" means the difference between the wages actually paid to an employee and the wages required to be paid to the employee including all compensation for services.

56.     By requiring Class Members to purchase their own tools, Nissan is effectively requiring employees to kick-back their wages to the employer.

57.     Nissan's arbitrary decisions to deduct certain hours from employees' wages is an incomprehensible violation of employment laws and constitutes a kick-back for the benefit of Nissan.

58.     By utilizing "piece-rate," "flat-rate," and/or "flagged hours," as a means of determining compensation, Nissan has consequently failed to properly maintain records which indicate the time of day and day of the week which the employees' workweek begins, the hours worked each workday, the total hours worked during the workday or workweek, etc. as required under 20 C.F.R. § 516.12.

59.     Nissan's failure to keep accurate and complete records casts the burden on Nissan to disprove the testimony that Class Members will provide regarding the hours worked by him/them and all other testimony related to this action.

60.     Nissan knowingly and intentionally failed to provide accurate itemized statements of total hours worked; Nissan failed to comply with record keeping requirements by employers.

61.     Additionally, to entice potential employees to seek employment with it, Nissan fraudulently promises individuals a specific competitive wage per hour, knowing that it had no intention of ever paying the employee that hourly amount, or any amount for overtime that the employee may work.

62.     Due to the manipulated flat-rate pay system and the several reductions and kickbacks in their pay, the employees do not achieve their promised hourly wage—Nissan intentionally makes it impossible to do so.

63.    Nissan and its agents/representatives are aware of and materially participated in the implementation of the unfair wage compensation system.

64.    Nissan employs unlawful wage compensation systems to retain more profits in an era of slim margins by essentially robbing their essential technicians, mechanics, and maintenance personnel of monies rightfully earned for skilled labor conducted.

65.    This action represents a situation typical of class treatment.

66.    Nissan's failure to pay wages for all hours worked by all mechanics, technicians, and maintenance personnel employed by Nissan is uniform throughout the State of Florida, who are also similarly situated due to the application of "piece-rate" and or "flat rate" pay.

67.    Determining liability for violations of the Federal Fair Labor Standards Act, Florida's Minimum Wage Act, and Code of Federal Regulations, and other laws will ensure that all mechanics, technicians, and maintenance personnel of Nissan are fairly and legally compensated under these laws then, now, and in the future.

68.    All conditions precedent to bring this action have taken place, are futile, expired or were effectively waived.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *et. seq.*:**
**(COLLECTIVE ACTION BY COLLECTIVE ACTION MEMBERS)**

69.    Class Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 68 above as if fully set forth herein.

70.    Class Members bring this cause of action to recover unpaid minimum wages owed to them pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("*FLSA*") and to recover unpaid minimum wages, improper wage deductions and unpaid overtime wages, amongst other things.

71.     The similarly situated Class Members are automobile service or maintenance employees (or former-employees) of Nissan throughout the State of Florida—including but not limited to mechanics/technicians and maintenance servicemen.   The definition of this collective action was set forth in paragraphs 5 through 21 and is to be fully incorporated herein.

72.     All other collective action plaintiffs were, at all times relevant to this action, adults residing in Florida. Class Members each provided their consent in writing pursuant to 29 U.S.C. § 216(b).

73.     Class Members were hired by Nissan in Florida to perform duties as a technician on behalf of Nissan and for Nissan's profit during the Class Period.

74.     At all material times during the last three years, Nissan was an enterprise governed by the FLSA, and as defined by 29 U.S.C. § 203(s)(1)(A)(i).

75.     At all material times hereto, Nissan was and continues to be an "employer" within the meaning of FLSA 29 U.S.C. § 203(d)  because it is an artificial person acting directly in the interest of its associated agents/business partners—its franchisee dealerships—in relation to the employees at issue—the technicians, mechanics, and maintenance servicemen.

76.     At all times material hereto, Nissan has had an annual gross volume of business done of not less than $500,000.00 exclusive of taxes.

77.     At all material times hereto, Class Members were an "employee" of Nissan within the meaning of FLSA, 29 U.S.C. § 203(e)(1).

78.     Nissan determined the nature and amount (and specifically the methodology to be used to calculate) of compensation paid to Class Members.

79.    In determining the nature and amount of pay for the employees, Nissan developed, through manipulation, systems to avoid payment of owed wages to Class Members and those similarly situated.

80.    The systems set in place by Nissan amount to deliberate refusal to compensate Class Members and those similarly situated.

81.    By failing to pay minimum and/or overtime wages, Nissan has violated and continues to violate the FLSA, including sections 206, 207, and 215.

82.    The conduct described throughout this Complaint and above constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

83.    Nissan knew that it was required to pay its employees for all hours worked, for both regular hours worked and overtime hours.

84.    Instead of lawfully paying its employees who generate profit to Nissan, it instead sought and continues to manipulate and perpetuate certain methods to avoid paying the earned wages.

85.    To provide explanation, Class Members and those similarly situated refers to paragraphs 33-68, 70, 71, 73, 74, 78-80, 83, and 84 above.

86.    Nissan has engaged in a widespread systematic pattern, policy, and practice of violating the FLSA, as detailed throughout this Complaint. Application of these practices does/did not depend on the personal circumstances of Class Members. Rather, the same practices which result in the non-payment of minimum wages and/or overtime to Class Members apply to all Class Members.

87.    Class Members are entitled to be paid minimum wage for all hours worked during the workweek pursuant to FLSA 29 U.S.C. § 206.

88.     Nissan's failure to pay minimum wage is in violation of the statute and caused Class Members to suffer loss of wages and interest thereon.

89.     Nissan violated FLSA 29 U.S.C. § 206 and § 207 by failing to pay minimum wages and failing to pay overtime wages, as described in paragraphs 33-68, 70, 71, 73, 74, 78-80, 83, and 84.

90.     Class Members would be required to work eight (8) hours per day, and beyond, without receiving the full compensation for the hours worked. In addition, and/or alternatively, with regards to the weeks worked in excess of forty (40) hours, which occurred regularly, Nissan failed to pay Class Members overtime compensation at a rate of time and a half of their regular pay.

91.     Class Members worked hours for which they were not reasonably compensated at the minimum wage rate and certainly not at the wage contract promised to them during the Class Period.

92.     Because of the unlawful employee compensation program, Class Members did not earn minimum wages for all of their hours worked during one or more work weeks. Moreover, despite working more than forty (40) hours per week, Nissan failed to pay Class Members overtime compensation at the appropriate rate.

93.     Nissan knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay proper minimum wages as compensation with respect to Class Members.

94.     Nissan knew that Class Members were owed compensation and that Nissan was required to pay such compensation. However, Nissan failed to do so.

17

95.    As a result of Nissan's intentional, willful, and unlawful acts in refusing to pay Class Members, and those similarly situated to him, minimum wage rates per hour worked per workweek in one or more workweeks, Class Members, and those similarly situated to him, have suffered damages, and incurred reasonable attorneys' fees and costs as provided by in 29 U.S.C. § 216.

96.    As a result of Nissan's willful violation of FLSA § 206, Class Members are entitled to recover the full amount of any unpaid back wages unlawfully withheld, plus the same amount as liquidated damages as per 29 U.S.C. § 216.

97.    Class Members are entitled to recover from Nissan their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages or pre-judgment interests, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. §§ 206, 207, 215, and 216.

98.    Class Members request designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join, and appointing Plaintiff and his counsel to represent the Collective Action Members;

<u>**SECOND CAUSE OF ACTION**</u>
**VIOLATIONS OF FLORIDA'S MINIMUM WAGE ACT, Fla. Stat. § 448.110.**
**(CLASS ACTION BY CLASS ACTION MEMBERS)**

99.    Class Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 68 above as if fully set forth herein.

100.    Nissan has engaged in a widespread pattern, policy, and practice of violating Florida's Minimum Wage Act, as detailed throughout the Complaint in paragraphs 33-68, 70, 71, 73, 74, 78-80, 83, and 84.

101.    Class Members are/were entitled to be paid at least minimum wage for all hours worked pursuant to Fla. Stat. § 448.110, Florida's Minimum Wage Act.

102.    Class Members are/were employees of Nissan as they are individuals employed by an employer under the definitions of Florida Statute § 448.07(1) and 29 U.S.C. § 203.

103.    During his or her employment with Nissan, Class Members worked hours for which they were not reasonably compensated at the minimum wage rate as a result of the "piece rate" or "flat rate" scheme manipulated by Nissan.

104.    Nissan willfully failed to pay minimum wage compensation for the hours worked by Class Members in violation of Florida law.

105.    As a result of Nissan's intentional, willful, and unlawful acts in refusing to pay Class Members minimum wage rates per hour worked per workweek in one or more workweeks, Class Members have suffered damages, plus incurring reasonable attorneys' fees and costs.

106.    As a result of Nissan's willful violation of Fla. Stat. § 448.110, Class Members are entitled to recover the full amount of any unpaid back wages unlawfully withheld, plus the same amount as liquidated damages (or alternatively, pre-judgment interests), as per Fla. Stat. § 448.110(6)(c)(1).

107.    As a result of Nissan's willful violation of Fla. Stat, § 448.110, Class Members are entitled to an award of reasonable attorneys' fees and costs pursuant to Fla. Stat. § 448.110(6)(c)(1).

108.     As a direct and proximate result of Nissan's willful violations, Class Members are entitled to such legal or equitable relief as may be appropriate to remedy the violation, including, without limitation, liquidated damages, reinstatement in employment, injunctive relief, and all other damages allowable under law.

**THIRD CAUSE OF ACTION**
**FAILURE TO COMPLY WITH 29 C.F.R. § 531.35 "FREE AND CLEAR" PAYMENT;**
**"KICKBACKS."**
**(CLASS ACTION BY CLASS ACTION MEMBERS)**

109.     Class Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 68 above as if fully set forth herein

110.     Pursuant to 29 C.F.R. § 531.35, wages cannot be considered to have been paid by the employer to the employee unless they are paid finally and unconditionally or "free and clear."

111.     Further, the wage requirements of FLSA will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.  Kickbacks include but are not limited to direct reductions in employee's pay checks for the benefit of the employer or requiring employees to purchase tools to perform the employer's work without reimbursement or compensation.

112.     Nissan routinely required Class Members to procure and maintain tools, equipment, and supplies necessary for the discharge of their duties, without providing adequate compensation or reimbursement for the business-related expense that conferred a direct benefit to Nissan.

113.     Class Members were arbitrarily deducted pay on a regular basis without reason or description—another benefit kicked-back directly to Nissan.

114.     Class Members routinely kicked-back their wages to the employer, which consequently benefitted the employer, in order to fully perform their work duties. Nissan's failure

to properly reimburse employees for tools purchased in order to perform their work duties, resulted in Nissan's willful violation of 29 C.F.R. § 531.35.

115.     Class Members receive less than minimum wage pay, in violation of the FLSA and the Florida Minimum Wage Act when the kickbacks effectively reduce wages owed to them during a pay period below minimum wage.

116.     As a direct and proximate result of the kickbacks described about and throughout this Complaint, Class Members were damaged to the extent that they did not enjoy the earned benefit of their whole paycheck, without any kickbacks to Nissan.

117.     WHEREFORE, Plaintiff and those similarly situated are entitled to receive compensation kicked-back to the employer, which was unlawfully taken, plus interest, attorneys' fees, and cost, including any other remedy provided and applicable under law.

**FOURTH CAUSE OF ACTION**
**FAILURE TO PROPERLY MAINTAIN RECORDS UNDER  29 C.F.R. § 516.12**
**(CLASS ACTION BY CLASS MEMBERS)**

118.     Class Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 68 above as if fully set forth herein.

119.     Pursuant to 29 C.F.R. § 516.12, employers shall maintain and preserve payroll or other records containing all the information and data required by § 516.2(a), in addition to information and data regarding the basis on which wages are paid (such as the monetary amount paid, expressed as earnings per hour, per day, per week, etc.).

120.     These records should include employee personal data, the time of day and day of week on which the employee's workweek begins, hours worked each workday and total hours worked each workweek, total daily or weekly straight-time earnings or wages due for hours

worked during the workday or workweek, and total additions to or deductions from wages paid each pay period.

121.    Nissan failed to properly maintain all appropriate records regarding the hours worked each workday, total hours worked in the workweek, and other items required by law and described in paragraphs 119 and 120.

122.    Nissan also failed to properly maintain records regarding total daily or weekly straight-time earnings for wages due for hours worked during the workday or workweek.

123.    By failing to itemize the number of hours Class Members performed and only documenting "piece-rate" or "flat-rate" work, Nissan knowingly and intentionally failed to provide Class Members accurate itemized wage statements in writing with each paycheck, showing all applicable pay rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

124.    By failing to properly maintain employee records, Nissan knowingly and intentionally failed to comply with 29 C.F.R. § 516.

125.    Nissan's failure to keep accurate and complete records casts the burden on Nissan to disprove the testimony that Class Members will provide regarding the hours worked by him/them and all other testimony related to this action.

126.    Class Members are entitled to receive compensation for damages incurred, plus interest, attorneys' fees and costs, including any other remedy provided and applicable under law.

## FIFTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (CLASS ACTION BY CLASS ACTION MEMBERS)

127.    Class Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 68 above as if fully set forth herein.

128.    Class Members conferred valuable benefits to Nissan in the form of labor, tools of the trade to complete their work, and services on behalf of Nissan.

129.    Nissan was enriched by its failure to compensate its employees for work that was conducted by the employees on behalf of Nissan. To provide example, Class Members worked several hours for which they were not lawfully compensated. Nissan unlawfully retained the profits and revenues associated with the work performed.

130.    Nissan was enriched by, appreciated, and reaped the benefits that Class Members conferred in the form of profits and revenues for the work and tools provided by Class Members.

131.    The benefit conferred by Class Members were non-gratuitous and Nissan received value from this benefit such that it would be inequitable for Nissan to retain the benefit without compensating the Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, Class Members respectfully request that judgment be entered in his favor, against Nissan, and:

a.    Certification and acknowledgement of the collective action (Count 1 of this litigation) and appointing Jose J. Ayala, Jr. and his counsel the opportunity to represent the collective action class;

b.    Certification of this action (Counts 2-5) as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Jose J. Ayala, Jr. and his counsel to represent the class;

c.    Awarding Class Members his/their unpaid wages in the amount due to him/them for Class Members, time worked in each work week at minimum wage, any owed overtime wages, and any other relief provided for under law;

d.   Awarding Class Members and those similarly situated to him, liquidated damages as permitted by law;

e.   Awarding Class Members reasonable attorneys' fees and costs and expenses of the litigation pursuant to Florida and Federal law;

f.   Awarding Class Members punitive damages and/or pre-judgment interest as permitted by law;

g.   Granting Class Members an Order, on an expedited basis, allowing him to send notice of this action, pursuant to Fed. R. Civ. P. 23, to those similarly situated to Class Members; and

h.   Order any other further relief the Court deems just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Class Members respectfully demands a trial by jury on all issues so triable.

Respectfully submitted this 3rd day of September 2020:

**éclat Law, LLP**

<u>*/s/ Kevin K. Ross-Andino*</u>
Kevin K. Ross-Andino, # 66214
kevin.ross@eclatlaw.com
Jolynn M. Falto, #1002743
jfalto@eclatlaw.com
Mitchell E. Grodman, # 543713
mgrodman@eclatlaw.com
Lisa E. Bolinger, # 1017749
lbolinger@eclatlaw.com

307 Cranes Roost Boulevard # 2010
Altamonte Springs, Florida 32701
Main Line: (407) 636-7004

*Lead Trial Counsel to the Plaintiff and each Class Member*

24