UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSE J. AYALA, JR., on behalf of himself and as representative of other class members similarly situated,

    Plaintiff,

Case No.: 6:20-cv-01625-RBD-GJK

v.

NISSAN NORTH AMERICA, INC. D/B/A NISSAN USA, a California corporation, a wholly owned subsidiary of Nissan Motor Company of Japan,

    Defendant.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS (*DE-27*)**

JOSE J. AYALA, JR., by and through the undersigned counsel, and pursuant to Local Rule 3.01(b), submits the following Memorandum of Law in Opposition to Defendant's, NISSAN NORTH AMERICA, INC., Motion for Sanctions (*DE-27*) that provides the factual and legal basis for this Honorable Court to deny the Defendant's motion.

**I.   OPENING STATEMENT**

This lawsuit is a standard and straightforward wage claim brought by a class of technicians against Nissan North America, Inc. ("Nissan"), their employer under applicable laws, for its failure to compensate them as non-exempt employees in compliance with both the laws of the United States of America and the State of Florida. Nissan disagrees with Mr. Ayala's interpretation of the statutes underlying his claims and has filed a motion seeking to dismiss the complaint (discussed below), a typical defense tactic to initially avoid dealing with the merits of the employee's claim. Mr. Ayala expected this response and have dealt with the issues in the memorandum of law filed

1

in opposition on November 3, 2020. (*See DE-21*).

Nissan's decision to convert its motion to dismiss into a Rule 11 motion for sanctions, however, is neither a typical nor rational reaction to a wage claim. As discussed below, the strategy to file this motion is nothing short of a reprehensible bully tactic to scare Mr. Ayala to force him and his lawyers to abandon his constitutional right to seek justice through this Court. Nissan, as one of the nation's largest corporations, has dealt with several hundred if not thousands of wage and other employment related claims and should not be surprised by the nature of this claim. This reaction and filing of a motion for sanctions on a wage claim at such an early stage (i.e., before discovery and ignoring Mr. Ayala's response to the Motion to Dismiss) perhaps reveals Nissan's fear about the merits of Mr. Ayala's claims.

Nissan argues that Mr. Ayala's counsel should be sanctioned because counsel failed to do "the most basic of due diligence" to identify the proper employer, among other baseless assertions. Nissan, however, has not produced a single shred of evidence to support its contention. To the contrary, the only thing Nissan has done is send a demand letter threatening to seek sanctions (*see Exhibit 1*) and a second letter containing an advance copy of the motion for sanctions (*see Exhibit 2*) that it filed. No documents were supplied; Mr. Ayala's counsel was expected to derelict its duty and simply take the word of Nissan's attorneys that their case was worthless. This expectation is not only irrational, it fails to meet the most basic of requirements to advance a request that this Court sanction Mr. Ayala and his counsel for exercising the his constitutional right to seek justice through this Court for the wrongs committed against him by Nissan.

The motion for sanctions is purely for intimidation, as it fails to satisfy the legal requisites established by Rule 11 and the myriad of cases analyzing the rule. Moreover, as shown in this memorandum of law, Mr. Ayala and his counsel did indeed perform extensive due diligence into

the issues underlying this claim before filing this lawsuit, not only to confirm that Nissan is an employer under the applicable statutes, but to ensure that the claims being raised were meritorious and worthy of consideration before this Honorable Court.

## II.  BACKGROUND AND PROCEDURAL HISTORY

On September 3, 2020, Mr. Ayala, on behalf of himself and all others similarly situated, filed a class and collective action complaint against Nissan for willful and systematic misconduct violating Federal and state laws—primarily the Fair Labor Standards Act ("FLSA") and the Florida Minimum Wage Act ("FMWA")—amongst other causes of action. Nissan filed a Motion to Dismiss on October 20, 2020. (*DE-23*). Mr. Ayala provided his Response to the Motion to Dismiss as of November 9, 2020. (*DE-*24).

Nissan initially sent a copy of its Motion for Sanctions by electronic mail on October 20, 2020—the same day that its Motion to Dismiss was filed. On November 13, 2020, Nissan filed its Motion for Sanctions, deliberately ignoring Mr. Ayala's Response to the Motion to Dismiss which provided rebuttal with case law, statutory, and factual support against their sought-after relief. Apart from asserting virtually identical arguments to its Motion to Dismiss, the Motion for Sanctions imputes actions and assertions on Mr. Ayala taken out of context, that are improper, and that are patently false based on the pleadings. Furthermore, as will be discussed in more detail below, the fact that a Complaint was filed against a defendant, who then disagrees with the allegations (either by responsive motion or answer and defenses), is the very nature of civil litigation—sanctions and the requirements of Rule 11 are not meant to deprive litigants of their constitutional right to file lawsuits.

Defendant's "letters" and "communication" provided to Mr. Ayala's counsel prior to filing their Motion for Sanctions, never once provided any documentation verifying the alleged truth of

their statements or directly contradicting the allegations in the Complaint (*see generally Worldwide Primates v. McGreal*, 87 F.3d 1252, 1253 (11th Cir. 1996). In fact, Defendant provided no more than their own conclusory statements, their own interpretation of statutory language, and threats of sanctions in an effort to bully, intimidate, and harass Mr. Ayala and his counsel.

### III. SUPPORTING LAW AND ARGUMENT

#### A. Standard of Review.

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 11.03 (3d ed. 2010)). The Rule requires parties or counsel who submit a paper to the court (pleading, motion, etc.) "to conduct a reasonable inquiry into the law and facts before signing [these documents]." *See* Fed. R. Civ. P. 11(b) advisory comm. note to 1993 amendment; *see also Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 554 (1991) ("Rule 11 imposes an *objective standard* of reasonable inquiry on represented parties who sign papers or pleadings." (emphasis added)). Further, sanctions are not tied to the outcome of the litigation, they are tied to bad faith. *See Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 553 (1991).

The objective standard under Rule 11 is described as "'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Additionally, the Eleventh Circuit requires district courts to perform a two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous. *Id.* The Rule is not meant to impose requirements on a pleading party that go above and beyond what the plain language states regarding pleading as is set out in the rules. This would

4

frustrate the purpose of the rules and make it challenging for plaintiffs to bring valid causes of action when one rule contradicts another. *See, e.g.*, Fed. R. Civ. P. 8.

The standard that courts utilize to truly impose sanctions under Rule 11 is quite high. In the Eleventh Circuit there are three (3) types of conduct in pleadings that warrant the imposition of Rule 11 sanctions. These types of conduct are: (1) when a party files a pleading that has *no* reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has *no* reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in *bad faith* for an improper purpose. *Ransaw v. Hernando Cnty. Sch. Bd.*, No.: 8:06-CV-2393-T-23EAJ, 2007 U.S. Dist. LEXIS 103926, at *9 (Fla. M.D. Oct. 30, 2007) (emphasis added) (citing *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993)).

As has been addressed in Plaintiff's Response to Defendant's Motion to Dismiss (*DE-21*), Mr. Ayala has both factual and legal basis for filing his Complaint against Nissan. His legal theories are based on valid causes of action under the laws of the United States of America and the State of Florida. Finally, Mr. Ayala's allegations were not pled in bad faith or for an improper purpose. As stated above, merely disagreeing with a Complaint's allegations and statutory interpretation does not impute bad faith status and if such was the case, a plaintiff would never be able to file suit against an adversary. This is particularly true in wage claims, which are very standard and routine cases, with several thousands of them being filed every single year throughout all fifty states in our nation.

In other words, it is relatively standard practice in the United States for employees to exercise their constitutional right to file lawsuits against their employers when the employer has failed to compensate them in compliance with federal and state laws. In fact, protecting employees

from wage abuse is so inherent in our constitutional rights that the United States Department of Labor was created to not only influence laws to protect employees, but to provide a mechanism to enforce them and protect employees from abuse.

**B. Mr. Ayala's Complaint is not objectively frivolous and is based on sound legal theories of relief and hence Defendant's Motion should be Denied.**

Mr. Ayala's Complaint is not "objectively frivolous" and is based on sound legal theories for relief, established after several months of extensive due diligence. Nissan first asserts that Mr. Ayala's counsel did not make *any* pre-filing inquiry into the factual and legal basis for Mr. Ayala's claims—much less the reasonable pre-filing inquiry required by Rule 11. (*DE-27* at pg. 1). Nissan goes on to state that had counsel done so, "they would have quickly discovered the claims are objectively frivolous." *Id.* at 2.

The term "frivolous", as used when describing when sanctions are appropriate in a particular claim, is defined by the Eleventh Circuit as not possessing any "factual and legal support in the record." *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998); *see also Davis v. Carl*, 906 F.2d 533, 538 (11th Cir.1990) ("Rule 11 is intended to deter claims with no factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment.").

Nissan's main argument as to why the claims are objectively frivolous is that there was never an employment relationship that existed between Nissan and Mr. Ayala. (*DE-27* at pg. 6). Mr. Ayala has already responded to Defendant's assertion in his Response to the Motion to Dismiss (*see DE*-21) and refers to his filing so as to avoid wasting the Court's time re-hashing all of the details; however, the crux of Mr. Ayala's argument is that (1) the FLSA's definition of "employer" is quite broad and certainly not as narrowly defined as Nissan would like for the statute to read so that it can avoid the perils of its wrongful actions; (2) Nissan is an employer under the FLSA

6

pursuant to the "economic reality" test (*id.* at pp. 4-5); (3) under the Eleventh Circuit's factors for determining who may be a joint employer, Nissan and its independent dealerships are joint employers of Mr. Ayala (*id.* at 5-6); and (4) Nissan and its dealerships are inextricably intertwined by their joint venture relationships where Nissan retains substantial dominion and control over the dealerships, rendering it an employer under the law (*id.* at 6). Mr. Ayala's allegations that Nissan is an employer of Mr. Ayala and those similarly situated has a sound basis in case law and statute. To the extent that a defendant would reasonably challenge Mr. Ayala's allegations, the same would be appropriate through legal arguments related to statutory interpretation of the meaning of "employer" under the applicable statutes—not through a motion for Rule 11 sanctions.

Nissan further states that "even the most cursory investigation would have uncovered that no such relationship exists [between Mr. Ayala and Nissan]." (*DE*-27 at pg. 2). They also state that on "three separate occasions" they informed Mr. Ayala's counsel that the case was based on a "non-existent employment relationship." *Id.* Mr. Ayala and his counsel not only pertinaciously disagree with Nissan as to this allegation, they also maintain that as stated in the Response to the Motion to Dismiss (*DE-21*) that they provided case law, statutory, and factual support that evidenced an employment relationship, either directly or indirectly. Additionally, Mr. Ayala contends Nissan's self-serving narrow definition of "employer" is merely its own interpretation of the statute and that as Mr. Ayala showed in the Response to the Motion to Dismiss, case law shows that the definition of "employer" is not construed so narrowly.

As described in Plaintiff's Response to Nissan's Motion to Dismiss, Nissan, *at the very least*, is a joint employer and is considered an employer under the applicable FLSA and FMWA which takes a broad view of the employment relationship. Had Nissan reviewed its own records or done even the most basic searches in their corporate system, they would have been alerted to

the employment history of Mr. Ayala and Nissan's relationship with him representing the same. As such, Mr. Ayala and his counsel maintain that they conducted extensive due diligence, and, from a reasonable inquiry of the information researched and provided by Mr. Ayala and those similarly situated, it is difficult to see how Nissan is *not* considered Mr. Ayala's and all others' employer under the FLSA and FMWA statutes.

To provide example, Mr. Ayala and all class and collective action members were and are required to log in to Nissan North America's (NNA[1]) website to review, partake in, and utilize items such as: required training courses each employee must complete as a condition of employment (required, established, run, monitored, and recorded by Nissan), the pricing scheme and requisites of each job completed[2], and the specific tasks that must be completed for each job, all of which is a Nissan requirement, a condition of employment, and a condition that governs the compensation payable to each employee. This site can be found at: NNAnet.com. *See Exhibit 3*.

Mr. Ayala and all other employees were given access to this site (established, maintained, monitored and controlled by Nissan); Mr. Ayala (and all other employees) routinely logged in to this Nissan owned website to review and monitor the status of his training history and to complete any additional or new training courses required by Nissan as a condition of further employment and promotions. *See Exhibit 4*.

Further, Mr. Ayala (and his fellow Nissan technicians) were provided with a "Nissan Assurance Products Resource Manual," which provides specific corporate requirements governing how technicians perform their job duties, how to log data required by Nissan, and how they are compensated for those duties. *See Exhibit 5*. Due to the proprietary nature of the manual, in

---

[1] NNA is defined in the Nissan Assurance Products Resource Manual attached hereto as *Exhibit 5*.
[2] In fact, this is the alleged "piece-rate" pay scheme Mr. Ayala refers to in his Complaint. *See DE-1*, ¶¶40-7.

addition to the length of the manual in its entirety[3], and out of respect for Nissan, Mr. Ayala will not file the entire manual as there are likely trade secrets included in it. Mr. Ayala will provide the entire manual, however, if this Court requests by filing it under seal. It can also be obtained directly from Nissan[4].

To the instant filing, Mr. Ayala has attached as exhibits certain excerpts from the manual to provide a glimpse of the extensive due diligence completed prior to filing his Complaint. These excerpts include: (1) Main Cover (showing that this was published as of Jan. 2020 by Nissan North America); (2) Policy Revisions page (stating that "[t]he policies and procedures documented in this manual are those of Nissan North America, Inc and apply to *all dealers equally* unless state mandated laws state otherwise." (emphasis added)); (3) Table of Contents (showing what the manual covers); (4) General Information (showing that the "flat rate manual" is available on NNAnet.com which establishes the labor hours required to perform service operations and hence, the wage that the class members earn from working on any given vehicle); (5) Terms and Definitions (defining "FRT" as "flat rate time" that is established by Nissan; defining "NNA" as "Nissan North America"—amongst other interesting definitions); and (6) the header page to the Warranty Policies and Procedures Manual (outlining that this single source of policies and procedures created by Nissan North America, Inc., has been completed in response to dealers requesting a more user-friendly claims administration process[5]). *Id.*

Mr. Ayala and his counsel also reviewed several documents that were sent to all service

---

[3] The manual in its entirety is 369 pages long.

[4] It is important for this Court to note that Counsel's ability to review the entirety of Nissan's corporate information was constrained. Counsel did not and still does not have access to many of the corporate records that would surely support the allegations in the Complaint, and counsel is not at liberty (with respect to information that employees were permitted to share with them) to divulge such information in court filings, etc. without Nissan's prior permission. That being said, for purposes of this motion, Counsel surely performed more due diligence than what was required by Rule 11 prior to filing a wage claim case.

[5] Each remaining topic (F&I—Finance and Insurance; Certified Pre-Owned Limited Warranties; System Section; and New Vehicle) has a similar header page.

managers, parts managers, warranty administrators, and technicians, and which were available on the NNAnet.com site. Examples of these documents included bulletins that listed changes, reminders, updates, etc. that outlined policies, procedures, and processes that technicians (the class and collective action members) at all dealerships needed to follow for different types of jobs when working on Nissan products. This demonstrates the dominion, control, and employment relationship Nissan held over the dealerships and the technician-employees—the Plaintiffs of this lawsuit. The examples of these bulletins are included in *Exhibit 4* and are also found on NNAnet.com.

In addition to reviewing several documents and other information available to counsel prior to filing this lawsuit, counsel interviewed several current and former Nissan employees to confirm the information shared by Mr. Ayala and to gain a further understanding of the breadth of the potential wage claim against Nissan. Without divulging privileged information, counsel represents to the Court that the allegations contained in the Complaint are based on information obtained from numerous individuals that work or worked for Nissan and their dealership joint venture partners, and each has confirmed the details of how she or he was unfairly treated by Nissan and its joint venture partners.

Additionally, Defendant claims that Mr. Ayala "willfully misstate[s] the terms of an [an] eight-year-old Dealer Term Sales & Service Agreement." (*DE-27* at pg. 6). Mr. Ayala did not misstate the exemplar agreement that was attached in his Complaint, he merely used this as an *exemplar[6]agreement* (*DE-1* at 27(a)), it merely referred to a document as an example of

---

[6] Exemplar (noun) is defined by Merriam Webster as "one that serves as a model or example such as: (a) an ideal model; (b) a typical or standard specimen; (c) a copy of a book or writing." *Exemplar*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/exemplar (last visited Nov. 17, 2020). Plaintiff has no way of knowing whether the document is current, amended, supplemented, etc. It was available in the public record and provided a means for Plaintiff and his counsel to evaluate whether pursuing a claim against Nissan was correct based on the limited information that is available to the public about Nissan, its relationship with its dealership partners, etc.

information that was publicly available to Mr. Ayala and his counsel to evaluate the merits of pursuing a claim against Nissan directly. It would be uncanny that prior to filing the Complaint a service technician (or the like) would have access to the private and confidential Service Agreement between the dealership he worked at and Nissan. Even once he was represented, counsel would not have been entitled to this documentation barring a discovery request *after* the Complaint had been filed.

Nissan further claims that "[t]his Court has repeatedly stressed a reasonable pre-filing inquiry for an FLSA lawsuit a request for time and pay records from the employer." (*DE*-27 at pg. 8). This statement is followed by case law which suggests what steps could be taken to conduct proper inquiries under Rule 11—it is this Court's interpretation of the requirements of reasonable inquiry under Rule 11. Mr. Ayala and his counsel honored the obligations of Rule 11. Mr. Ayala and his counsel conducted substantial due diligence prior to the drafting and filing of this complaint which included the review and analysis of hundreds of pages of documents, interviews of Mr. Ayala and other potential class/collective action members, and legal research forming the foundation of this lawsuit.

Due to the voluminous nature of documents amassed over a period of ten (10) years by Mr. Ayala, counsel was unable to include his paystubs, timesheets, timecards, and other documents with his Complaint specifying the hours that he worked compared to what he was actually paid. Further, there is documentation of the many training sessions that Mr. Ayala was required to attend that were unpaid and receipts for tools he had to purchase that he was not reimbursed for which ultimately led to him not being paid a minimum wage rate (as described in the Complaint). These documents reviewed as part of Mr. Ayala's and counsel's due diligence were extensive and unsuitable for "attachment" to a Complaint, and in fact, there is no law, rule of procedure or

otherwise that requires Mr. Ayala to do so. Moreover, it is standard practice in wage claim lawsuits to share this information vis-à-vis discovery and not as an attachment to a pleading.

Mr. Ayala was under no obligation to include his "pre-suit research" and due diligence *with* his Complaint. Additionally, Mr. Ayala's counsel did not see the need to make a demand to Nissan for this information for Mr. Ayala or those similarly situated; the reasonable inquiry had already been performed and much of the documentation that the Court suggests to make an adequate pre-suit inquiry had already been obtained through its own investigation. More importantly, if Nissan truly believes that Mr. Ayala and his lawyers are wrong, then the onus is on Nissan and its lawyers to (i) provide documents and other information (information that is in the sole and exclusive possession of Nissan) to counsel showing the substance of Nissan's position and the flaws in the position taken by Mr. Ayala and (ii) provide Mr. Ayala a reasonable opportunity to evaluate this information to reconsider whether the case has merit and should proceed. Instead, Nissan merely threatened Mr. Ayala and his attorneys and demanded that they take Nissan's "word" (presented through basic correspondence without support) that the case lacks merit.

For the reasons above, Mr. Ayala has demonstrated that the allegations in his Complaint are certainly not frivolous and were established after considerable due diligence by counsel. The due diligence revealed that there is an employment relationship between Mr. Ayala and Nissan (for example). Mr. Ayala has pled valid and standard causes of action due to the reasonable inquiry performed under the circumstances in accordance with Fed. R. Civ. P. 11. As such, Defendant's Motion for Sanctions is a baseless attempt at bullying Mr. Ayala to withdraw his case in an effort to conceal the dishonest business practices that Defendant has conducted. As such, Defendant's Motion for Sanctions should be denied.

    **C. Mr. Ayala and Counsel have Asserted Good Faith Causes of Action and Defendant's Second Argument is a Duplication of its First Argument.**

Nissan's second argument is basically redundant of its first argument (and its Motion to Dismiss); it again highlights the same arguments including: Nissan cannot be Mr. Ayala's employer, Mr. Ayala misstated a dealer agreement in its Complaint, Mr. Ayala's counsel failed to make a reasonable pre-filing inquiry, and the Complaint was then pursued in bad faith (*see DE-27*, pp. 9-10). Mr. Ayala and his counsel have reasonably and adequately addressed these arguments multiple times throughout this memorandum of law and the memorandum of law filed in opposition to Nissan's motion to dismiss. *See* Section B., *supra*; *see also DE-21*. Defendant's argument then goes on to suggest what this Court should consider and how this Court should consider ruling in its sanction's order.

The foregoing notwithstanding, Mr. Ayala will address the "factors" that Nissan alleges this Court should consider when making the determination for an award of sanctions. First, Nissan states that "Plaintiff undeniably advanced his false allegations knowingly and willfully." *DE-27* at pg. 11. This statement must fail. Whether it is regarding the employment relationship that Nissan is alleging does not exist or the lack of due diligence it claims Mr. Ayala and his counsel did not complete prior to filing, enough evidence and support has been provided to show that sanctions are not warranted in relation to this factor. Indeed, the allegations are not false (and are based on substantial due diligence described above) and since they are not false, it follows that he could not have advanced any falsities willfully and knowingly[7]. (*See DE-1*, ¶¶2, 4, 33-6, 39-59, 61-2; *see also DE-21*; *see also* Section B., *supra*).

Nissan states that Mr. Ayala's "false allegations—particularly with respect to the non-existent employment relationship—are so pervasive that they 'infect the entire pleading'". *DE-27*

---

[7] It is noteworthy to mention that the mere fact that Nissan says the allegations are false does not make them false; Nissan must prove, with evidence, that the allegations are false.

13

at pg. 11. The Defendant's tactic of continuous denial of any employment relationship has run its course; it is abundantly clear that Nissan is attempting to advance a most "compelling" argument when they drafted their Motion to Dismiss and their Motion for Sanctions—if there is no employment relationship there is no Complaint. This argument, however, ignores the broad nature of the applicable employment statutes, joint-employer case law, agency law, and the like. Mr. Ayala's Complaint alleges, at minimum, a joint employer relationship between Nissan, the dealerships, and Mr. Ayala (and those similarly situated), and further, an employment relationship pursuant to the statutes at issue as is described in *DE-1*, ¶¶2, 4, 7-8, 11, 25-8; *see also DE-21*; *Exhibit 1-4*; *see also* Section B., *supra*.

Next, Defendant alleges that Mr. Ayala's "baseless" claims were brought to injure Nissan. *DE-27* at pg. 11. Mr. Ayala simply has no appreciation for this statement, and it flies in the face of the nature and purpose of litigation—to provide relief to plaintiffs who have been harmed by adversaries. Mr. Ayala worked for ten (10) years as a technician, experiencing financial harm as a direct result of the payment scheme devised by Nissan—an employer pursuant to statutory laws (for example) and not developed by any dealership. As a result, there were several weeks where Mr. Ayala did not get paid either minimum wage or proper overtime pay for the hours that he performed his duties as required by Nissan. *DE-1*, ¶¶40-9. Mr. Ayala and the other class or collective action members are attempting to obtain the compensation that is owed to them for work performed and other benefits provided to Nissan.

Finally, Nissan complains that this action has imposed costs in terms of its need for counsel to defend against the claims. To this, Mr. Ayala contends that any substantial costs that Nissan has expended up to this point (e.g. the Motion to Dismiss and the Motion for Sanctions) are self-inflicted. Had Defendant done even the most "cursory investigation" of their own records, it would

have found that their arguments thus far are unsubstantiated, trivial, and specious—a mere attempt to intimidate Mr. Ayala and his counsel.

All in all, Nissan provides little to no support for their arguments once again. It makes nothing more than conclusory statements as to what it believes exists based on their lack of reasonable inquiry. Nissan's "beliefs" are not supported by facts, documentation, or proof. Even the exhibits to its Motion for Sanctions are no more than letters and emails that do not include hard evidence to substantiate their claims.

Nissan goes on to state that sanctions are warranted in this case and "should include, at a minimum, the dismissal of the Complaint with prejudice and an award of Nissan's reasonable attorney's fees in defending against the Complaint and bringing this motion." *DE-27* at pg. 11. First, the Eleventh Circuit has continually held that "[d]ismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances." *Idearc Media Corp. v. Kimsey & Assocs., P.A.*, No.: 8:07-CV-1024-T-17EAJ, 2009 U.S. Dist. LEXIS 34446, at *8 (M.D. Fla. Mar. 31, 2009) (quoting *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006)). Second, as shown throughout the Complaint, the Response to the Motion to Dismiss, and this memorandum of law, this is hardly a case in which there exists a bad faith pleading brought without reasonable inquiry and plausible causes of action. *See Baker*, 158 F.3d at 524.

Finally, as this Court has consistently held, "Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Id.* Mr. Ayala has shown a factual basis for bringing his claim—Mr. Ayala, and those similarly situated had an employment relationship with Nissan and were not compensated their A) regular hourly rate for all hours

worked, B) time-and-a-half of their regular hourly rate for all hours worked in excess of forty (40) hours, or C) were not compensated statutory minimum wage for all hours worked per week during one or more work weeks (amongst other causes of action). *DE-1*, ¶¶2, 4, 7, 34-6, 39-66; *see also DE-21*. There are valid legal theories supporting Mr. Ayala's claims including violations of the Fair Labor Standards Act, violations of Florida's Minimum Wage Act, failure to comply with 29 C.F.R. §531.35, and unjust enrichment. Further, based on the above, Mr. Ayala's Complaint was not filed in bad faith or for an improper purpose. Accordingly, Defendant's Motion for Sanctions should be denied in its entirety.

**D. Mr. Ayala Has Not Committed Egregious Behavior Warranting Sanctions Pursuant to this Court's Inherent Authority.**

Nissan's motion should be denied because Mr. Ayala, nor counsel, engaged in any egregious behavior warranting sanctions. The Court's inherent authority to sanction parties that come before it hinges on a finding of bad faith. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). This Court has explained when a finding of bad faith is warranted: (1) when an attorney knowingly or recklessly raises a frivolous argument; (2) argues a meritorious claim merely to harass an opponent; (3) delaying or disrupting litigation; or (4) hampering enforcement of a court order. *Id.* As stated previously, none of the undersigned have raised any of the arguments in this case frivolously; the arguments have been raised in good faith and with extensive inquiry. Next, Mr. Ayala's meritorious claims have not been raised merely to harass Nissan; they have been raised to recompense Mr. Ayala, and those similarly situated, for the violations that have transpired against them at the hands of Nissan. Lastly, it is clear that numbers (3) and (4) do not apply in this situation.

Further, it has not been clearly established—as Defendant would lead this Court to believe—that any of Mr. Ayala's attorneys' conduct has been so egregious that it could have only

been committed in bad faith, or was tantamount to bad faith. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224-5 (11th Cir. 2017). "The inherent power must be exercised with restraint and discretion… it is for rectifying disobedience… Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority." *Id.* at 1225 (internal citations omitted). Mr. Ayala nor his counsel have displayed egregious behavior that warrants this type of sanction. If every attorney faced these types of sanctions merely for bringing adversarial lawsuits to this Court on behalf of their clients, a plaintiff's Constitutional rights would cease to exist.

There is no bad faith on the part of Mr. Ayala and his counsel; there is only a disagreement from Nissan and its counsel as to Mr. Ayala's pleadings with no evidence to support their position. In light of the fact that Nissan is unable to exhibit a valid showing of bad faith on the part of Mr. Ayala or his counsel, sanctions pursuant to the Court's inherent authority are inappropriate. For this reason and the reasoning above, Nissan's Motion for Sanctions should be denied in its entirety.

IV. **CONCLUSION**

Nissan has boorishly filed a Motion for Sanctions against Mr. Ayala and his attorneys in an effort to scare, bully, and intimidate them so that Mr. Ayala would abandon his constitutional right to seek justice through this Court seeking compensation he is entitled to based on Nissan's violation of the law. This motion is based on a faulty and inappropriate premise and should be summarily denied.

WHEREFORE, Plaintiff, JOSE AYALA, on behalf of himself and others similarly situated, respectfully requests this Honorable Court deny Defendant's, NISSAN NORTH AMERICA, INC., Motion for Sanctions in its entirety with any other relief this Court deems just and proper.

Respectfully submitted this 27th day of November 2020:

éclat Law, LLP
*Attorneys for Plaintiff*
307 Cranes Roost Blvd., Suite 2010
Altamonte Springs, Florida 32701
Ph: (407) 636-7004|Fax: (888) 413- 0249
Email: kevin.ross@eclatlaw.com
Email: mgrodman@eclatlaw.com
Email: jfalto@eclatlaw.com
Email: lbolinger@eclatlaw.com

*/s/   Kevin K. Ross-Andino*
KEVIN K. ROSS-ANDINO, FBN: 66214
MITCHELL E. GRODMAN, FBN: 543713
JOLYNN M. FALTO, FBN: 1002743
LISA E. BOLINGER, FBN: 1017749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of Court this 27th day of November 2020 by using the Federal Case Management/Electronic Case Files System (CM/ECF System). Accordingly, a copy of the foregoing is being served on this day to all attorney(s)/interested parties identified on the CM/ECF Electronic Service List, via transmission of Notices of Electronic Filing generated by the CM/ECF System.

*/s/   Kevin K. Ross-Andino*
Kevin K. Ross-Andino; FBN: 66214
