# EXHIBIT 1

McGuireWoods LLP
Promenade
1230 Peachtree Street, N.E.
Suite 2100
Atlanta, GA 30309-3534
Phone: 404.443.5500
Fax: 404.443.5599
www.mcguirewoods.com

Peter N. Farley
Direct: 404.443.5623

**McGUIREWOODS**

pfarley@mcguirewoods.com
Fax: 404.443.5680

September 17, 2020

***Via Federal Express and Electronic Mail***
Kevin K. Ross-Andino
éclat Law, LLP
307 Cranes Roost Boulevard, Suite 2010
Altamonte Springs, Florida 32701
kevin.ross@eclatlaw.com

Re:   **Ayala v. Nissan North America, Inc., Case No. 6:20-cv-01625-RBD-GJK (M.D. Fla.)**

Dear Kevin:

This law firm represents Nissan North America, Inc. ("Nissan") with regard to the above-referenced matter. We have reviewed the complaint filed but not yet served against Nissan by Jose J. Ayala, Jr. ("Plaintiff") alleging putative collective and class claims (the "Complaint"). The Complaint is replete with legal and factual inaccuracies that evince a failure to conduct even a cursory investigation into the Complaint's legal and factual underpinnings. This letter does not address each of these errors in detail. Instead, it focuses on a fundamental legal and factual error that renders the entire Complaint baseless. Nissan never was Plaintiff's employer under the Fair Labor Standards Act ("FLSA"), applicable Florida law, or any other standard. As such, we demand that you promptly dismiss the Complaint with prejudice.

Though not entirely clear from the Complaint, Plaintiff apparently worked as a technician for some unnamed independently-owned and operated Nissan dealer somewhere in Florida. The Complaint neither alleges the specific dealer nor provides any specific facts concerning that entity or Plaintiff's relationship to it. Nissan never employed Plaintiff, and Plaintiff never worked for Nissan. Understandably, as such, Nissan has no knowledge of the circumstances of Plaintiff's hiring, resignation or termination by the unidentified dealer, the terms and conditions of his employment, or the structure, amount or conditions of any compensation or other benefits he may have been offered or provided by his employer.

The Complaint nevertheless asserts in conclusory fashion that Nissan employed Plaintiff based solely upon Plaintiff's supposed employment for an independent Nissan dealer. Even if Plaintiff did, in fact, work for an independent Nissan dealer, that relationship did not, and as a matter of law cannot, render him a Nissan employee. The Complaint's allegations to the contrary ignore black letter law and undisputed facts.

Atlanta | Austin | Baltimore | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City
Los Angeles - Downtown | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Tysons | Washington, D.C.

September 17, 2020
Page 2

   The relationships between automobile manufacturers such as Nissan and their independent dealers are well known. Nissan manufactures vehicles at its various manufacturing plants. It relies on independent dealers to sell and service those vehicles. The Complaint even recognizes this relationship, alleging "[e]ach dealer is an independent business entity that enters into a dealership relationship with Nissan …" through a "dealership agreement." Compl., ¶ 27(a). Both Florida state law and United States Department of Labor ("DOL") regulations respectively mandate and recognize that an automobile manufacturer like Nissan cannot be the employer of its independent dealers' employees.

   Florida law regarding the relationship between Nissan and its independent dealers is clear and unambiguous. Fla. Stat. § 320.645 provides, "[n]o … manufacturer, or agent of a manufacturer … shall own *or operate, either directly or indirectly, a motor vehicle dealership* in this state *for the sale or service* of motor vehicles which have been or are offered for sale … [by] a motor vehicle dealer in this state." (emphasis added). In light of this statute and well-settled law, Florida prohibits any arguable joint employer relationship between Nissan and its dealers' employees. The Complaint cannot, therefore, plausibly allege any employment relationship between Nissan and Plaintiff.

   The DOL's FLSA regulations reinforce the lack of any relationship between an auto manufacturer and its dealers' employees. 29 C.F.R. § 779.231 explains:

> While [the independent dealer] operates under a franchise to sell a particular make of automobile and also may be required to stock certain parts and to maintain specified service facilities, it is clear that he retains the control of the management of his business in those respects which characterize an independent businessman. He determines the prices for which he sells his merchandise. Even if prices are suggested by the manufacturer, it is well known that the dealer exercises wide discretion in this respect, free of control by the manufacturer or distributor. *Also the automobile dealer retains control with respect to* the management of his business, *the determination of his employment practices* [including compensation], the operation of his various departments, and his business policies.

(emphasis added). "The methods of operation of the independent automobile dealer are widely known" (*id.*). The Complaint's disregard for these long-established legal standards is inexcusable. As both blackletter Florida law and DOL regulations dictate, Nissan was not Plaintiff's employer.

   Beyond ignoring applicable law, the Complaint deliberately misstates facts. Although the Complaint does not identify the dealer that supposedly employed Plaintiff or provide any allegations regarding the relationship between that dealer and Nissan, it attaches an apparent 2012 Dealer Term Sales & Service Agreement ("Agreement") between Nissan and a different dealer in a different state, Indiana. Specifically, a plain reading of that Agreement shows that the dealer subject to it is and remains independent from Nissan with control over its employees, including compensation, hiring, firing, and other terms and conditions of work. Indeed, the Agreement provides in clear and unambiguous terms that the "Dealer **shall make its own, independent**

September 17, 2020
Page 3

**decisions** concerning the hiring and firing of its employees, including, without limitation, its Executive Manager." Compl. Ex. 1 at 2 (Art. IV, Section 9(b)) (emphasis added).

Inexplicably, the Complaint turns the Agreement on its head and alleges, without reference or citation to any portion of the Agreement, the opposite; that it gives Nissan "absolute control of all corporate policies, including but not limited (sic), human resources, employee benefits and perquisites, compensations policies and procedures related to all employees of each dealership." Compl. ¶ 27(b). This allegation is not made in good faith—it deliberately and explicitly misrepresents the plain language of the Agreement. This type of disregard for the Complaint's own exhibit further demonstrates that the entire Complaint is not well-grounded in law or fact.

By filing the Complaint, you certified to the Court that, "to the best of [your] knowledge, information and belief, formed after *an inquiry reasonable under the circumstances*, the claims [] and other legal contentions [in the Complaint] *are warranted by existing law* ... [and that] the factual contentions *have evidentiary support* ...." Fed. R. Civ. P. 11(b) (emphasis added). The lack of any legal or factual support for Plaintiff's claims against Nissan casts significant doubt on your certification. A reasonable inquiry would have revealed that Plaintiff (and other so-called "Class Members") worked for an independent dealership(s) and not for Nissan, that Nissan's dealership agreements do not give Nissan "absolute," or even any, control over a dealership's mechanics and technicians, and Nissan cannot be Plaintiff's employer as a matter of both law and fact. You either did not conduct a reasonable inquiry before filing the Complaint or, if you did, simply chose to ignore it. In either case, the Complaint is meritless and violates Rule 11.

For the above reasons, we demand that you voluntarily dismiss Plaintiff's Complaint against Nissan with prejudice on or before 5:00 p.m. ET on Thursday, September 24, 2020. If you do not do so but instead continue to litigate this matter, then Nissan will seek all appropriate sanctions under Fed. R. Civ. P. 11 and the court's inherent power to sanction this blatant and deliberate abuse of the litigation process.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Peter N. Farley

cc: Christopher M. Michalik