**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOSE J. AYALA, JR., on behalf of himself and as representative of other class members similarly situated,**

     **Plaintiff,**

**v.**                                      **Case No. 6:20-cv-1625-RBD-GJK**

**NISSAN NORTH AMERICA, INC.**
**d/b/a NISSAN USA,**

     **Defendant.**

_____

**REPORT AND RECOMMENDATION**

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT (Doc. No. 13)** |
| **FILED:** | **October 20, 2020** |

**THEREON** it is **RECOMMENDED** that the Motion be **GRANTED in part** and **DENIED in part.**

## I.    <u>BACKGROUND.</u>

On September 3, 2020, Plaintiff Jose J. Ayala, Jr. ("Ayala") filed a class action Complaint (the "Complaint") against Defendant Nissan North America, Inc.

d/b/a Nissan USA ("Nissan") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and Florida's Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110.[1]  Doc. No. 1.  The class alleged includes all automobile service persons who worked for Nissan in Florida who were compensated under an unlawful "piece-rate" or "flat-rate" compensation program and who were not compensated at their regular hourly rate for all hours worked, not compensated at the statutory minimum wage, or not compensated for overtime for all hours worked in excess of forty hours in a workweek ("Class Members").  Doc. No. 1 at ¶¶ 4, 7, 8.   The Class Period is January 2014 to the entry of judgment.  *Id.* at ¶ 5.

Ayala alleges a myriad of claims against Nissan stemming from his compensation as an automobile service technician.  Doc. No. 1.  Ayala alleges: a failure to pay a promised wage of approximately $26 an hour; arbitrary deductions from his pay; fraud; use of a piece rate system that failed to properly compensate him at minimum wage, and in weeks in which he worked over forty hours per week a failure to pay overtime wages; failure to sufficiently compensate for off the clock hours; and a failure to reimburse him for his purchase of equipment and supplies used in his work that either caused his wages to fall below minimum wage, caused his wages to fail to properly account for overtime, or failed to reach

---

[1] At this stage in the case, all of Ayala's allegations are taken as true; therefore, all the facts herein are taken from the Complaint. S*ee Murphy v. F.D.I.C.*, 208 F.3d 959, 962 (11th Cir. 2000).

the $26 an hour promised rate.[2]  *Id.* at ¶¶ 40, 42-47, 49, 52, 53-54, 56-58, 61-63, 91. The thrust of Ayala's claims is that certain compensation practices at his dealership and others, both individually and collectively, have caused violations of the FLSA and FMWA.  *Id.*  Ayala alleges that Nissan, as his employer, is the party responsible for these violations because Nissan hired Ayala and other Class Members in Florida to perform duties as automobile service technicians on behalf of Nissan.  *Id.* at ¶¶ 39, 73.  Ayala alleges causes of action for violations of the FLSA and FMWA; improper kickbacks in violation of 29 C.F.R. § 531.35; failure to properly maintain payroll records under the FLSA; and unjust enrichment.  Doc. No. 1.

Nissan, an automobile manufacturer, sells Nissan and Infiniti brand motor vehicles through a network of approximately 1,082 Nissan and 211 Infiniti dealers in the United States.  *Id.* at ¶23.   These dealerships also provide a variety of maintenance and repair services to Nissan's customers.  *Id.* at ¶24.   Nissan manages its business by engaging in "joint venture" relationships with various independent business entities that "manage the day to day operation of a dealership, under the direction and control of Nissan."  *Id.* at ¶25.

---

[2] These factual allegations are incorporated into every count of the Complaint. Doc. No. 1 at ¶¶69, 99, 109, 127.  With respect to Ayala's allegations at paragraphs 61 and 62, which are incorporated into every count, Ayala seeks unpaid wages at a promised rate of pay, and claims fraud for failure to satisfy that promised wage.  *Id.* at ¶¶ 61, 62, 69, 99, 109, 127.

Nissan enters into dealership agreements with these independent business entities that outline the financial terms of the relationship, the purchase and sale of Nissan vehicles and services, the terms and conditions for the operation of the dealership, termination of the business relationship, and the control of corporate policies. *Id.* at ¶¶26, 27. Plaintiff attaches an "exemplar" of such an agreement that was executed in Indiana. Doc. No. 1-1. Nissan retains "absolute control" of all corporate policies, including "but not limited[, to] human resources, employee benefits and . . . compensation policies and procedures . . . related to all employees of each dealership." *Id.* at ¶27b. Nissan "provides and controls service departments at their agents'/representatives' respective locations where automobiles are serviced, maintained, and/or repaired." *Id.* at ¶38.

Class Members work under a "piece rate" or "flat rate" pay system where employees are paid a fixed rate for each unit produced or service performed. *Id.* at ¶40. The rate of pay for this work varies by the task performed and whether the service is "warranty-paid" or "customer-paid," with higher rates being paid for "customer-paid" work. *Id.* at ¶¶40, 45, 47. Further, under Nissan's piece rate compensation system, which pays only for repair-related tasks, Class Members are not compensated for non-repair tasks including cleaning, training, traveling to offsite locations for Nissan business, reviewing service orders, and completing invoices. *Id.* at ¶¶42, 44. Class Members' total hours on the job are not properly

documented, Class Members are not reimbursed for tools purchased to fulfill their required duties, and Nissan arbitrarily deducts from class members' paychecks without documentation. *Id.* at ¶¶44, 57, 58. The failure to reimburse Class Members for the purchase of their tools is effectively a kickback to Nissan. *Id.* at ¶56. Although Class Members enter agreements to be paid a certain amount of dollars per hour, about $26, they are never actually compensated the promised hourly wage. *Id.* at ¶¶44e, 91. Instead, Nissan fraudulently promises a specific competitive wage knowing it has no intention of paying this amount. *Id.* at ¶¶61, 62. Nissan, and its agents/representatives, are aware of and materially participate in the implementation of this unfair wage compensation system. *Id.* at ¶63.

In Count I for violation of the FLSA, Ayala alleges Nissan is an employer within the meaning of 29 U.S.C. § 203(d). *Id.* at ¶75. Nissan is an enterprise that had an annual gross volume of business done of not less than $500,000.00. *Id.* at ¶¶74, 76. Class Members were employees of Nissan. *Id.* at ¶77. Nissan determines the nature and amount of compensation paid to the Class Members. *Id.* at ¶78. Class Members worked hours that were not compensated at the minimum wage, and hours in excess of 40 hours per week that were not compensated at an overtime rate. *Id.* at ¶¶88, 89, 90, 91, 92. Nissan's actions were willful. *Id.* at ¶¶93, 95, 96. In Count II, Ayala alleges that the same willful actions

and failure to pay Class Members a minimum wage  also violate the FMWA.  *Id.* at ¶¶99-108.

In Count III, Ayala alleges that Nissan's failure to compensate Class Members for their purchase and maintenance of equipment, tools, and supplies constitutes an unlawful kickback in violation of 29 C.F.R. § 531.35 that directly benefits Nissan.  *Id.* at ¶¶110-112.  Class Members' pay was arbitrarily deducted on a regular basis without reason or description, which also constituted a kickback.  *Id.* at ¶113.  Class Members receive less than minimum wage in violation of the FLSA and FMWA because the kickbacks effectively reduce the wages owed to them during a pay period to below minimum wage.  *Id.* at ¶115.  Class Members "were damaged to the extent that they did not enjoy the earned benefits of their whole paycheck."  *Id.* at ¶116.  Count III seeks reimbursement for all amounts paid by Class Members.[3]  *Id.* at ¶117.

Count V is a claim for unjust enrichment.  *Id.* at ¶¶127-131.   Ayala alleges Nissan was enriched by its failure to compensate Class Members for work that was conducted, specifically when Class Members worked several hours for which they were not lawfully compensated and when Nissan unlawfully retained profits and revenue associated with the work performed by Class Members.  *Id.* at ¶ 129.

---

[3] Ayala voluntarily dismissed Count IV, a claim for failure to properly maintain records under 29 C.F.R. § 516.12, without prejudice.  Doc. Nos. 22; 26.

Ayala also alleges that Nissan benefitted from the tools provided by Class Members to complete their work. *Id.* at ¶¶128, 130.

Ayala's concluding Prayer for Relief seeks an award to Class Members of unpaid wages in the amounts due to them, time worked in each work week at minimum wage, overtime wages, liquidated damages, and punitive damages. *Id.* at 23-24.

On September 10, 2020, Ayala served a Notice of Intent to Initiate Litigation on Nissan providing notice of his intention to sue, and claimed damages and attorney's fees of $300,000,000.00 on behalf of approximately 2,600 individuals for the time period September 2015 to present.  Doc. No. 13-1 at 2-5.

On October 20, 2020, Nissan filed a Motion to Dismiss the Complaint (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. No. 13. Nissan argues that Ayala fails to state a claim against Nissan because he fails to sufficiently allege an employment relationship.  *Id.* at 1.  Nissan argues Ayala cannot state a claim for kickbacks, that Ayala asserts a class period in excess of the statute of limitations, and Ayala applies a Rule 23 standard to the FLSA claims.  *Id.* at 2.  Nissan claims Ayala failed to provide the requisite pre-suit notice under the FMWA.  *Id.*  Nissan argues that the unjust enrichment claim is preempted by the FLSA.  *Id.* at 17.  Nissan seeks attorney's fees as a sanction for the bad faith filing of this action.  *Id.* at 18.

Nissan argues that it cannot be an employer because Florida law precludes any automobile manufacturer from selling or servicing the automobiles they manufacture. *Id.* at 3 (citing Fla. Stat. § 320.645).  Nissan also argues that Ayala fails to allege the details of how Class Members were paid, specific concerns with hours worked, and any specific instances where Ayala did not receive at least the applicable minimum wage. *Id.* at 5.

On November 3, 2020, Ayala filed a response to the Motion (the "Response"). Doc. No. 21.  In his Response, Ayala argues that Nissan's reliance on section 320.645, Florida Statutes, is outside the four corners of the Complaint, that it does not establish as a matter of law that Nissan cannot be an employer under the FLSA and FMWA, and that Ayala has sufficiently alleged Nissan was his employer under the "economic realities" test because he alleges Nissan's control over the conditions of employment and the method of compensation. *Id.* Ayala also claims he has sufficiently alleged direct control of the workers as required under the joint employer theory. *Id.* at 5.   Ayala admits the pre-suit notice was given after the Complaint was filed, but claims his pre-suit notice under the FMWA is sufficient because Nissan was given the required amount of time to respond before the Complaint was served, and because this is a class action complaint. *Id.* at 14-16.  Ayala claims that he has permissibly pled a claim for unjust enrichment in the alternative to his other claims. *Id.* at 16-17.

## II.   <u>STANDARD OF REVIEW.</u>

"When considering a motion to dismiss for failure to state a claim, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiff." *Murphy*, 208 F.3d at 962 (11th Cir. 2000) (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The Court is limited to reviewing what is within the four corners of the complaint.  *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Specifically, the factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).  "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Ritchie v. Dolman*, No. 20-cv-61047, 2020 U.S. Dist. LEXIS 234505, at *11 (S.D. Fla. Dec. 10, 2020) (quoting *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted)).  To state a plausible claim for relief, the plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### III.   <u>ANALYSIS.</u>

The FLSA was enacted with the intent "to be a broadly remedial and humanitarian statute . . . to correct 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers. . . .'" *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977) (quoting 29 U.S.C. § 202(a) (1977)).   To state an overtime claim under the FLSA, a plaintiff must allege sufficient facts to establish: 1) the defendant employed him; 2) either (a) the defendant was engaged in interstate commerce, or (b) the defendant is an enterprise engaged in interstate commerce; 3) he worked over forty hours a week; and 4) the defendant did not pay him all of his overtime wages. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008).   To allege a claim for minimum wage compensation under the FLSA, the plaintiff must allege the first two elements listed above, and, instead of the last two elements, allege that the defendant did not pay him the minimum wage.  *See Kwasnik v. Charlee Family Care Servs. of Cent. Fla., Inc.*, No. 6:08–cv–926–Orl–31KRS, 2009 WL 1607809, at *3 (M.D. Fla. June 9, 2009).  "In Florida, the FMWA expressly adopts the statutory and regulatory provisions of the FLSA." *Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-cv-1306, 2014 U.S. Dist. LEXIS 80225, at *4

(M.D. Fla. June 12, 2014); *Dix v. RCSH Operations, LLC*, No. 2:20-cv-98, 2020 U.S. Dist. LEXIS 156169, at *6 (M.D. Fla. Aug. 28, 2020) (FMWA cause of action requires same allegations).

### A.   Counts I and II - FLSA and FMWA Claims

#### 1.   Nissan as Ayala's Employer

Ayala alleges: 1) Nissan employed him; 2) that it is an enterprise engaged in interstate commerce with annual sales of $500,000.00; 3) he did not receive minimum wages due to Nissan's piece rate compensation plan; and 4) he was not paid overtime wages when he worked more than 40 hours per week.   Doc. No. 1 at ¶¶ 71-77, 86, 89, 90, 92, 102-104.   In support of these allegations, Ayala alleges he was employed as a mechanic and/or technician in the "service department at Nissan" from "approximately September 2009 to March of 2020." *Id.* at ¶2.   Ayala offers no other facts to support his allegation that Nissan employed him directly. Ayala alleges a Class Period that extends from January 2014 to entry of judgment in this case. *Id.* at ¶5.

Ayala alleges at varying points in his Complaint that: 1)  independent business entities own the Nissan dealerships that provide services to Nissan's customers; 2) those entities handle the day-to-day operations of the service departments; 3) the independent business entities are engaged in a joint venture with Nissan; 4) the dealerships are Nissan's franchisees; and, still elsewhere, 5) the

dealerships are Nissan's agents or representatives. *Id.* at ¶¶23-27, 38, 63, 75. Ayala also alleges that Nissan exercises absolute control of the conditions of his employment through corporate policies and determines employees' rate and method of payment. *Id.* at ¶¶25-27, 38.

Ayala relies on a dealership agreement between Nissan and an independent business entity (the "Dealer") in Indiana that dates back to 2012-2014 as an exemplar of the type of relationship contemplated between the dealerships and Nissan (the "Agreement"). Doc. No. 1-1. However, the Agreement appears to be incomplete as it encompass only the first fifteen pages of what was originally a fifty page document provided to another court,[4] and, regardless of length, the Agreement incorporates "Nissan Dealer Sales and Service Agreement Standard Provisions" by reference which are not included with the Agreement. Doc. No. 1-1 at 3 (Article Fifth). Aside from the potential incompleteness of the Agreement, language within the Agreement indicates that the Dealer makes its own independent decisions concerning the hiring and firing of its employees (Article Fourth (b)). *Id.* at 2. Additionally, an exclusivity amendment to the Agreement reflects that the Dealer was not precluded from offering parts, accessories, or

---

[4] One of the headers across the Agreement reflects it is a copy of a document submitted in another case, case number 4:18-cv-00075, filed on May 2, 2018. Doc. No. 1-1. The same header reflects the document at issue submitted in the other case was 50 pages in length. *Id.* Additionally, the Court would note that portions of the Agreement provided by Ayala are partially illegible. *Id.*

servicing for vehicles of other lines or makes so long as such services were incidental to the Dealer's provision of Nissan services.  Doc. No. 1-1 at 13 (B. Exclusivity (b)).  Ayala makes no effort to point out what language in the Agreement supports his allegations that he is employed directly by Nissan.  *Id.* Instead, Ayala simply alleges in conclusory fashion that Nissan retains absolute control over all the dealerships' policies related to all employees of each dealership.  *Id.* at ¶27.

Nissan argues that it cannot be an employer as a matter of law because Nissan cannot own or operate a dealership.  Doc No. 13 at 8.  Section 320.645(1), Florida Statutes, provides that no "manufacturer, or agent of a manufacturer or distributor . . . shall own or operate, either directly or indirectly, a motor vehicle dealership in this state  for the sale or service of motor vehicles which have been or are offered for sale under a franchise agreement with a motor vehicle dealer in this state."[5]  Thus, Florida law prohibits Nissan from owning or operating motor vehicle dealerships in Florida that provide repair services.  However, the fact that

---

[5] Ayala argues that the Court is precluded from considering section 320.645(1), Florida Statutes, because it is outside the four corners of the Complaint.  That argument is rejected because if it appears from the face of the Complaint that a statute precludes a specific cause of action, then dismissal may be appropriate so long as that determination does not require consideration of additional matters outside the four corners of the Complaint. *See Crossley v. Armstrong Homes, Inc.*, No. 5:14-cv-636, 2015 U.S. Dist. LEXIS 62030, at *13 (M.D. Fla. May 12, 2015) (citing *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 764 (11th Cir. 1994) (providing dismissal based on applicable statute of limitations appropriate as long as based on face of complaint).

it is unlawful for Nissan to own or operate a motor vehicle dealership, directly or indirectly, does not necessarily preclude a claim against Nissan as a joint employer under the FLSA on a motion to dismiss.  *Cf. Vickery v. Cumulus Broad., LLC*, No. 6:16-cv-248, 2016 U.S. Dist. LEXIS 109100, at *5 (M.D. Fla. Aug. 17, 2016) ("it is immaterial whether a party *intended* to create an employment relationship; it is sufficient that one person suffer or permit another to work") (internal citation omitted).

An "employer" is defined under the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ."  29 U.S.C. § 203(d).   A joint employment relationship may be found where one employer suffers, permits, or otherwise employs the employee to work, but another person simultaneously benefits from that work.  *Duarte v. Maldonado Bros.*, No. 13-80552, 2014 U.S. Dist. LEXIS 166450, at *8 (S.D. Fla. Dec. 1, 2014) (citing *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996)); *see* 29 C.F.R. § 791.2.  Courts assess the economic reality of the relationship between the employee and the alleged employer or employers based on a totality of the circumstances. *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1177  (11th Cir. 2012).

> Courts in the Eleventh Circuit consider the following factors to determine whether joint employment exists: (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or

indirectly, to hire, fire, or modify the employment
conditions of the workers; (5) the preparation of payroll
and the payment of wages; (6) the ownership of the
facilities where work occurred; (7) performance of a
specialty job integral to the business; and (8) investment
in equipment and facilities.

*Aquino v. BT's on the River, LLC*, No. 20-20090, 2020 U.S. Dist. LEXIS 235174, at *7

(S.D. Fla. Dec. 14, 2020) (quoting *O'Reilly v. Art of Freedom, Inc.*, No. 17-21251-civ,

2018 U.S. Dist. LEXIS 113043, at *10-11 (S.D. Fla. July 9, 2018)); *Layton v. DHL*

*Express (USA), Inc.*, 686 F.3d at 1176; *Villareal v. Woodham*, 113 F.3d 202, 205 (11th

Cir. 1997); *Aimable v. Long & Scott Farms*, 20 F.3d 434, 438-44 (11th Cir. 1994).  The

touchstone is an alleged employee's economic dependence on the employer.

*Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 494 F. App'x 940, 942 (11th

Cir. 2012); *Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 783 (11th Cir. 2006).[6]

---

[6] The Court notes that on January 16, 2020, the Department of Labor issued a final rule, which took effect on March 16, 2020, that updated and revised the interpretation of joint employer status under the FLSA in order to "promote certainty for employers and employees, reduce litigation, promote greater uniformity among court decisions, and encourage innovation in the economy." 85 FR 2820.  The newly revised rule, 29 C.F.R. § 791.2, provides that there are only four relevant factors for this type of joint employment, which include whether the other person: 1) hires or fires the employee; 2) supervises and controls the employee's work schedule or conditions of employment to a substantial degree; 3) determines the employee's rate and method of payment; and 4) maintains the employee's employment records.  However, whether "the employee is economically dependent on the potential joint employer is not relevant . . . and no factors should be used to assess economic dependence." *Id.* § 791.2(c).  To the undersigned's knowledge the Eleventh Circuit has yet to address the impact of this rule, but the Southern District of New York has found the Department's new interpretation arbitrary and capricious, violative of the Administrative Procedures Act, and vacated portions of the revised § 791.2 in a suit by seventeen states and the District of Columbia.  *See Reyes-Trujillo v. Four Star Greenhouse, Inc.*, No. 2021 U.S. Dist. LEXIS 5525, at *20-21 (E.D. Mich. Jan 12, 2021) (discussing *New York v. Scalia*, No. 1:20-cv-1689-GHW, 2020 U.S. Dist. LEXIS 163498, at *3 (S.D.N.Y. Sept. 8, 2020)).

No one factor is dispositive.  *Layton,* 686 F.3d at 1177; *Vickery*, 2016 U.S. Dist. LEXIS 109100, at *6  (the "Eleventh Circuit has condemned the practice of focusing on a single factor, such as control; rather, the district court must consider the entire circumstances of the work relationship.").

Here, there is a lack of non-conclusory factual allegations regarding the nature of Ayala's employment and its connection to Nissan.  While Ayala appears to acknowledge that independent business entities own and operate Nissan dealerships, he fails to allege he was employed by one of them.  *See* Doc. No. 1 at ¶¶23, 24, 25.  Instead, Ayala jumps directly to largely conclusory allegations that Nissan's "absolute control" of the dealerships' corporate policies "related to all employees of each dealership" makes Nissan the employer of each dealership's employees.  *Id.* at ¶27.

With respect to a potential joint employer claim, Ayala fails to provide non-conclusory factual allegations regarding his employment at the dealership as well as failing to address other factors of joint employment such as hiring, firing, and day-to-day operations.  Federal pleading requirements require "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Thus, the lack of specific factual allegations in the Complaint runs afoul of federal pleading standards.  *See Layton v. Percepta, LLC*, No. 6:17-cv-1488, 2018 U.S. Dist.

LEXIS 234503, at *4, 6 (M.D. Fla. Mar. 23, 2018) (finding plaintiff failed to allege sufficient facts to support joint employer status to cross the line from conceivable to plausible); *Vickery*, 2016 U.S. Dist. LEXIS 109100, at *6-7 (dismissing plaintiff's complaint for failing to allege sufficient factual allegations under the economic reality test).   As in *Layton v. Percepta, LLC*, Ayala must provide more factual allegations regarding the nature of his employment relationship to cross the line from conceivable to plausible.   Thus, Ayala fails to state a claim against Nissan as an employer, joint or otherwise.

2.      <em>Wage Claims</em>

In his Complaint, Ayala offers a description of how automobile service technicians are compensated under Nissan's piece rate compensation system, but he does not provide any factual allegations regarding how that system impacted his regular rate of pay in a manner that violates the FLSA or FMWA.   Piece rate work is a permissible compensation system as long as it does not run afoul of minimum wage and overtime pay requirements.   *See* 29 U.S.C. § 207(g), 29 C.F.R. § 778.111;   *White v. Integrated Elec. Techs., Inc.*, No. 11-2186, 2013 U.S. Dist. LEXIS 83298, at *6 n.6 (E.D. La. June 13, 2013) (the FLSA permits employers to compensate employees pursuant to a piece rate system under certain circumstances but an employer cannot use a piece rate system to avoid paying employees the federal minimum wage or overtime).   Piece rate compensation may cover non-productive

hours as well.  *See* 29 C.F.R. § 778.318(c); *see also Jackson v. First Student Mgmt.*, No. 3:16-cv-557, 2017 U.S. Dist. LEXIS 228082, at *10-12 (M.D. Fla. Apr. 19, 2017) (discussing the lack of redress for straight time or overtime gap time under the FLSA for other types of compensation).[7]

While a plaintiff need not plead his entire time and payroll records in the Complaint, the plaintiff must provide enough for the Court to conclude the claims are plausible.  *Chavez v. Frontline*, No. 5:18-cv-228, 2018 U.S. Dist. LEXIS 226751, at *4 (M.D. Fla. Aug. 8, 2018).  Here, the lack of factual allegations regarding Ayala's compensation as an automobile service technician prevents the Court from determining whether there is a plausible claim for relief.  *Freeman*, 494 F. App'x at 942 (quoting *Twombly*, 550 U.S. at 555) (a plaintiff's allegations must be enough to raise a right to relief above the speculative level); *see Stafflinger v. Rtd Constrs., Inc.*, No. 6:15-cv-1564, 2015 U.S. Dist. LEXIS 173739, at *5-6 (M.D. Fla. Dec. 14, 2015) (plaintiff must sufficiently allege a workweek of 40 hours of work as well as some uncompensated time in excess of 40 hours); *Jackson*, 2017 U.S. Dist. LEXIS 228082,

---

[7] Although not raised by the parties, the Court notes there is an overtime exemption for mechanics primarily engaged in servicing automobiles for a nonmanufacturing establishment.  29 U.S.C. § 213(b)(10)(A) (establishing an overtime exemption for "any . . . mechanic primarily engaged in selling or servicing automobiles. . . if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles to ultimate purchasers.");  *see Viart v. Bull Motors, Inc.*, 149 F. Supp. 2d 1346, 1349-51 (S.D. Fla. 2001). Generally, the application of an exemption under the FLSA is pled as an affirmative defense.  *Lange v. Tampa Food & Hosp., Inc.*, 2021 U.S. Dist. LEXIS 32199, at *35 (M.D. Fla. Feb. 22, 2021).

at *15 (while every class member need not satisfy Rule 8's pleading requirements, every named plaintiff who elects to file suit must).   Here, Ayala has failed to satisfy Rule 8's pleading requirements.

Similarly, Ayala alleges that Nissan arbitrarily took improper deductions from his paycheck, but does not describe what those deductions were, does not explain why they were improper, and does not connect those deductions with a failure to be paid minimum or overtime wages. Doc. No. 1 at ¶57.  Ayala also fails to provide factual support for his claims of fraud, which have heightened factual pleading requirements, and which have been incorporated into every count of the Complaint. *Id.* at ¶¶61, 62; Fed. R. Civ. P. 9(b) (in allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake); *see Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (particularity rule serves important purpose in alerting defendants to the precise misconduct with which they are charged, simply alleging fraud is insufficient).  A complaint should set forth precisely what statements were made in what documents or the oral representations or omissions, the time and place the statements or omissions were made, and the person responsible for making them, the content and the manner in which they misled the plaintiff, and what the defendant obtained as a consequence.  *Id.*   Thus, Ayala fails to state a claim for unpaid minimum and overtime wages under the FLSA and the FMWA.

### 3.     *Statute of Limitations*

Under the FLSA, the statute of limitations is two years, three years if the violation was willful.  29 U.S.C. § 255(a).   The FMWA has a four year statute of limitations, five years if the violation is willful.   Fla. Stat. § 95.11(2) (d), (3)(q).  Dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the Complaint that the claim is time-barred.  *Crossley v. Armstrong Homes, Inc.*, No. 5:14-cv-636, 2015 U.S. Dist. LEXIS 62030, at *13 (M.D. Fla. May 12, 2015) (citing *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 764 (11th Cir. 1994)).

The Complaint alleges a Class Period that extends back to January 2014, over six years before the Complaint was filed.  Doc. No. 1 at ¶5.  The Complaint alleges Nissan's violations are willful.   *Id.* at ¶¶93, 95, 96.   Thus, any claims under the FLSA and FMWA would be time-barred to the extent they exceed the applicable three year and five year statutes of limitations absent any other justification for extending the limitations periods.[8]

### 4.     *Scope of Relief*

The FLSA and FMWA only provide relief for the failure to receive statutory minimum wages and, with respect to the FLSA, overtime wages.   *McDaniel v. Trend Aviation, LLC*, No. 6:17-cv-193, 2017 U.S. Dist. LEXIS 62202, at *4 (M.D. Fla.

---

[8] Ayala offers no argument in response to Defendant's arguments on this point except to suggest they should have been included in a motion to strike instead of a motion to dismiss.  Doc. No. 21 at 13.

Apr. 24, 2017); *see* 29 U.S.C. § 216(b).   Ayala's FLSA and FMWA claims both

incorporate allegations regarding a failure to pay the Class Members' agreed upon

hourly rates in addition to his claims for minimum and overtime wages.  Doc. No.

1 at ¶¶ 44e, 61, 62.  Thus, on the face of the Complaint, the relief Ayala seeks

exceeds the scope of relief available under the FLSA and FMWA.

## 5.   *Presuit Notice Under FMWA*

Section 448.110(6)(a), Florida Statutes, provides that:

> prior to bringing ***any claim*** for unpaid minimum wages
> pursuant to [448.110], the person aggrieved shall notify
> the employer alleged to have violated this section, in
> writing of ***an intent to initiate such an action***.  The notice
> must identify the minimum wage to which the person
> aggrieved claims entitlement, the actual or estimated
> work dates and hours for which payment is sought, and
> the total amount of the alleged unpaid wages through
> the date of the notice.

(Emphasis added.)  Thus, as a condition precedent to filing suit under the statute,

a person must first deliver pre-suit notice to the employer.  *Griffith v. Landry's, Inc.*,

No. 8:14-cv-3213, 2017 U.S. Dist. LEXIS 223637, at *12 (M.D. Fla. Nov. 22, 2017).

While the court in *Griffith* suggests that class action claimants need not comply

with section 448.110's presuit notice requirements (*id.* at *13-14), other courts have

found that failure to comply with the statute constitutes a failure to satisfy a

condition precedent to filing suit.  *See Johnson v. Nobu Assocs. S. Beach, LP*, No. 10-

21691, 2011 U.S. Dist. LEXIS 19483, at *10 (S.D. Fla. Feb. 4, 2011) (the statutory

language is clear that a pre-suit notice is required prior to allowing an aggrieved person to bring a claim for unpaid wages); *Fraser v. Envtl. Tracing, LLC*, No. 1:20-cv-22479, 2020 U.S. Dist. LEXIS 132550, at *3 (S.D. Fla. July 24, 2020) (where a claimant does not send the required notice before filing a complaint, dismissal of the claim is appropriate because a condition precedent has not been performed).

Section 448.110 states that notice shall be provided before bringing *any* claim for unpaid wages.  Fla. Stat. § 448.110(6)(a).   Ayala admits in his Response he provided notice to Nissan *after* initiating suit.  Doc. Nos. 13-1; 21 at 14.  Further, the Complaint does not allege compliance with the pre-suit notice requirements of section 448.110.  Doc. Nos. 1, 13.   Thus, the Court finds that Ayala has failed to satisfy a condition precedent under the FMWA.

For the foregoing reasons, it is recommended that Counts I and II for violations of the FLSA and FMWA be dismissed without prejudice and with leave to amend within thirty days of the Court's order, in part so that Ayala has sufficient time to comply with the presuit notice requirements of section 448.110. *See Fraser*, 2020 U.S. Dist. LEXIS 132550, at *4 (citing *Villfana v. Feeding S. Fla., Inc.*, No. 13-60760-civ, 2013 U.S. Dist. LEXIS 82603, at *15-16 (S.D. Fla. June 12, 2013) (dismissing without prejudice and giving thirty days to comply with pre-suit notice requirement and, if necessary, file an amended complaint).

B.    Count III - 29 C.F.R. § 531.35

The FLSA does not create a separate cause of action for reimbursement of equipment costs or tools of the trade, instead, the deductions are considered in the context of minimum wages to be paid.  *See Carter v. Rasier-Ca, LLC*, No. 17-cv-00003, 2017 U.S. Dist. LEXIS 150349, at *9 (N.D. Cal. Sept. 15, 2017); *Dix*, 2020 U.S. Dist. LEXIS 156169, at *10 (citing 29 C.F.R. § 531.35).   "The FLSA does not require the employer to add the costs of the tools onto the regular wages, but only to reimburse the worker up to the point that the minimum wage is met."  *Id.* at *10-11 (citing *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1237 n. 11 (11th Cir. 2002)).

The Complaint alleges that Nissan failed to reimburse Class Members for equipment and supply purchases which resulted in improper kickbacks and that due to those kickbacks "Class Members received less than minimum wage pay, in violation of the [FLSA and FMWA] when the kickbacks effectively reduce wages owed to them during a pay period below minimum wage." *Id.* at ¶ 115.  However, Ayala also seeks relief for the entirety of the kickbacks and improper deductions, which is beyond the scope of the minimum wage provisions of the FLSA and FMWA.[9]  Ayala cannot maintain an independent cause of action under 29 C.F.R.

---

[9] Ayala makes the following claim for relief:  "As a direct and proximate result of the kickbacks described about and throughout this Complaint, Class Members were damaged to the extent that they did not enjoy the earned benefit of their whole paycheck, without any kickbacks to Nissan." Doc. No. 1 at ¶116. "WHEREFORE, Plaintiff and those similarly situated are entitled to receive compensation kicked-back to the employer, which was unlawfully taken, plus interest, attorneys' fees, and cost, including any other remedy provided and applicable under law." *Id.* at ¶117.

§ 531.25 to recoup all equipment and supply expenses paid for Defendant's benefit because the relief is beyond that available under the FLSA and FMWA.  Ayala's claims for reimbursement of all such expenses must be dismissed.[10]  Thus, it is recommended that Count III be dismissed without prejudice.

C.    Count V - Unjust Enrichment

In Florida, to state a claim for unjust enrichment, a plaintiff must allege: (1) plaintiff has conferred a benefit on defendant; (2) defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for defendant to retain that benefit without paying the value thereof. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).  Unjust enrichment is equitable relief that is available when there is no adequate remedy at law. *Fernandez v. CheckAltEras, Inc.*, No. 20-cv-22746, 2020 U.S. Dist. LEXIS 160321, at *14 (S.D. Fla. Aug. 28, 2020).

Section 216 of the FLSA is the exclusive remedy for enforcing rights created under the Act.  29 U.S.C. § 216.  "As a matter of law, [a] plaintiff cannot circumvent

---

[10] Ayala's allegations in this regard also suffer from the same deficiency as those in his FLSA and FMWA claims in that there are no factual allegations supporting the conclusory allegations of purchases of equipment or supplies, their use in his employment, how their use benefitted his employers, or instances in which the failure to reimburse such expenses resulted in him not receiving minimum or overtime wages.  Again, Ayala's sole reliance on conclusory allegations without a connection to the factual basis to support such allegations fails to bridge the gap between speculative and plausible claims.  *Freeman*, 494 F. App'x at 942 (quoting *Twombly*, 550 U.S. at 555).

the exclusive remedy prescribed by Congress by asserting equivalent state law claims in addition to [an] FLSA claim." *Bule v. Garda CL Se., Inc.*, No. 14-21898, 2014 U.S. Dist. LEXIS 95618, at *5 (S.D. Fla. July 11, 2014) (quoting *Tombrello v. USX Corp.*, 763 F. Supp. 541, 545 (N.D. Ala. 1991)); s*ee Fernandez*, 2020 U.S. Dist. LEXIS 160321, at *14 (quoting *Garcia v. Nachon Enters., Inc.*, 223 F. Supp. 3d 1257, 1286 (S.D. Fla. 2016) ("Where a plaintiff's state law claims are merely the FLSA claims recast in state law terms, those state law claims are preempted by the FLSA."). However, "[c]ourts in the Eleventh Circuit have found that the determination of whether the FLSA preempts a claim for unjust enrichment is premature at the motion to dismiss stage, as it is dependent on the nature of the state-law claim." *Hyskaj v. New York New York Pizza, LLC*, No. 8:18-cv-397, 2018 U.S. Dist. LEXIS 223380, at *9 (M.D. Fla. Nov. 14, 2018).

Ayala's unjust enrichment claim largely relies upon the same allegations as his FLSA and FMWA claims; Ayala makes no distinguishable allegations. However, Ayala does seek relief that is distinct from what is available under the FLSA and FMWA in that he seeks full reimbursement for equipment and supply purchases.  At this stage, particularly given the paucity of factual allegations, the Court cannot completely discount that Ayala may be able to maintain a separate unjust enrichment claim against Nissan for unreimbursed expenses and equipment purchases, but the current cause of action for unjust enrichment is

insufficiently pled.  *See Hyskaj*, 2018 U.S. Dist. LEXIS 223380, at *9-10.  Thus, it is recommended that Count V be dismissed without prejudice.

        D.   <u>Sanctions</u>

Nissan seeks sanctions under the Court's inherent authority. Doc. No. 13 at 18.  The Court's inherent power to sanction "is both broader and narrower than other means of imposing sanctions."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).  The court must exercise its inherent power with "restraint and discretion." *Id.* at 44.  A court's inherent power to sanction allows it to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.* at 45-46 (internal quotation marks omitted).  Thus, "[t]he key to unlocking a court's inherent power is a finding of bad faith."  *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).  When considering sanctions under the court's inherent power, the threshold of bad faith conduct "is at least as high as the threshold of bad faith conduct for sanctions under § 1927."  *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1252 (11th Cir. 2006); 28 U.S.C. § 1927.  "Bad faith is an objective standard that is satisfied when an attorney "knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims."  *Id.* at 1242.

Nissan also filed a separate motion for sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority on the same grounds.  Doc. No. 27.  On

March 8, 2021, the Court denied that motion as premature.  Doc. No. 31.  Similarly, the Court also views this request for sanctions as premature, and, in its discretion, recommends denying the request without prejudice.

## IV.   CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Motion be **GRANTED in part** and **DENIED in part** as follows:

1.      Counts I, II, III, and V be **DISMISSED without prejudice**;

2.      Plaintiff be provided thirty (30) days from the date of the Court's Order to file an Amended Complaint; and

3.      The Motion be otherwise **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida, on March 11, 2021.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties