# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JOSE J. AYALA, JR. and
JEFF SANTOS on behalf of
themselves and as
representatives of other class
members similarly situated,

                **PUTATIVE CLASS ACTION SUIT**
                **6:20-cv-1625-RBD-GJK**

              **Plaintiffs,**

v.

NISSAN NORTH AMERICA, INC. D/B/A
NISSAN USA, a California corporation, and
wholly owned subsidiary of Nissan Motor
Company of Japan,

              **Defendant.**

_____/

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs, JOSE J. AYALA, JR. and JEFF SANTOS ("Plaintiffs") by and

through their undersigned counsel, hereby file this First Amended Class and Collective

Action Complaint, individually, and on behalf of all others similarly situated and

makes the allegations against Defendant, NISSAN NORTH AMERICA, INC.

("NISSAN") and any of its associated partners, agents, affiliates, subsidiaries,

representatives, and the like for violations of the Fair Labor Standards Act ("FLSA"),

1

29 U.S.C. § 201 *et. seq.*, Florida's Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110, and other state and federal laws. The following is alleged in support thereof:

## GENERAL ALLEGATIONS

## I.  THE CLASS / COLLECTIVE ACTION REPRESENTATIVES

1.  Plaintiff, JOSE J. AYALA, JR. ("AYALA") is an individual who maintains his personal residence in Orange County, Florida.

2.  Plaintiff, JEFF SANTOS ("SANTOS") is an individual who maintains his personal residence in Orange County, Florida.

3.  AYALA, SANTOS, and putative members of the FLSA collective are/were mechanics and/or technicians in the service department of NISSAN[1] within the last three (3) years.

4.  AYALA, SANTOS, and putative class members owed Florida minimum wages are/were mechanics and/or technicians in the service department of NISSAN within the last five (5) years.

5.  AYALA is, and at all times material to this lawsuit was, a citizen of Florida and was employed as a mechanic and/or technician in the service department of NISSAN from approximately 2009 through March of 2020 and was a non-exempt employee.

---

[1] References to NISSAN are to NISSAN in its capacity as joint employer of the Plaintiffs and those similarly situated, based on its joint venture relationship with NISSAN dealerships, as will be detailed below.

6. SANTOS is, and at all times material to this lawsuit was, a citizen of Florida and was employed as a mechanic and/or technician in the service department of NISSAN from approximately 2014 through June 2020 and was a non-exempt employee.

7. AYALA and SANTOS bring this suit on behalf of themselves, and all similarly situated individuals.

8. AYALA, SANTOS, and other Class Members (to be defined) were (or are currently) automobile service employees of NISSAN in Florida who were or currently are subject to NISSAN's unlawful compensation program referred to generally as "piece-rate" or "flat-rate" for services performed on behalf of NISSAN.

## II. COLLECTIVE ACTION ALLEGATIONS

### A. Collective Action Members as defined by the Federal Fair Labor Standard Act.

9. NISSAN's employee compensation program violates the Fair Labor Standards Act, 29 U.S.C. §§ 206 and 207, for failure to pay minimum and/or overtime wages for all hours worked, as will be described in Counts I and II below.

10. Pursuant to 29 U.S.C. §§ 206 and 207, AYALA, SANTOS, and all others similarly situated, seek to prosecute their Fair Labor Standards Act ("*FLSA*") claims as a collective action on behalf of all mechanics, technicians, and/or maintenance personnel—together with AYALA and SANTOS to be collectively referred to as "*the Collective*"—who are or were employed by NISSAN at any time from June 2018 to the entry of judgement in this case (the "*Collective Period*").

11.    A collective action is appropriate in this circumstance because the Collective is similarly situated in that 1) they were subjected to NISSAN's unlawful compensation program and policies which compensated them less than the federal minimum wage for all hours worked; 2) they were victim of NISSAN's failure to pay overtime wages; 3) they were forced to purchase large dollar amounts of tools which reduced their compensation below the requisite minimum wage; and 4) further acts of unlawful conduct described later in this pleading consistent with applicable law.

12.    AYALA'S and SANTOS' damages are substantially similar to other members of the Collective because each were 1) not paid wages at or above the federal minimum wage by NISSAN for all hours worked; 2) were victims of NISSAN's unlawful compensation program; 3) were forced to purchase expensive tools without reimbursement up to the point needed to satisfy the minimum wage requirement; 4) were not paid overtime wages for any hour worked in in excess of forty hours per week; plus 5) statutory liquidated damages as provided by federal law for NISSAN's failure to pay minimum wage compensation as required by the FLSA.

13.    The class of similarly situated individuals or potential Collective Action Members (i.e., the Collective) sought to be certified under 29 U.S.C. § 216 is defined as:

> All persons who worked for Nissan and/or a Nissan dealership during the Class Period who were or are automobile service persons compensated under an unlawful compensation program implemented by Nissan and referred to as "piece-rate" or "flat-rate", in which they performed services on behalf of Nissan and were not compensated their A) statutory minimum wage for all hours worked per week during one (1) or more weeks and/or B) were not compensated time-and-a-half of

4

their regular hourly rate for all hours worked in excess of forty (40) hours.

14.     The precise size and identity of the entire Collective is ascertainable from the business records, tax records, and/or employee personnel records of NISSAN. Upon information and belief, NISSAN has employed over 1,500 individuals who were paid under its unlawful compensation program in violation of the Fair Labor Standards Act in Florida during the Collective Period.

15.     NISSAN compensated the Collective in the same manner and under the same unlawful employee compensation program, and each of them has worked in Florida during the Collective Period. All members of the Collective were not compensated, at least, the full minimum wage for all hours worked and many are also owed overtime wages under the FLSA.

16.     AYALA and SANTOS maintain the right to modify the Collective and or create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

## III.  CLASS ACTION ALLEGATIONS

### A.  Class Members as defined by the Florida Minimum Wage Act.

17.     NISSAN's employee compensation program violates Florida's Minimum Wage Act, Fla. Stat. § 448.110 for failure to pay minimum wage for all hours worked, as will be described in Count III of this First Amended Complaint.

18. Pursuant to Fla. Stat. § 448.110 and Fed. R. Civ. P. 23, AYALA, SANTOS and all others similarly situated, seek to prosecute their Florida Minimum Wage Act ("*FMWA*") claims as a class action on behalf of all mechanics, technicians, and/or maintenance personnel—together with AYALA and SANTOS to be collectively referred to as "*the Class*" or "*Class Members*"—who are or were employed by NISSAN and/or a NISSAN dealership any time from June 2016 to the entry of judgment in this case (the "*Class Period*").

19. A class action is appropriate in this circumstance because the Class Members are similarly situated in that they were subjected to NISSAN's unlawful compensation program and policies which compensated them less than the minimum wage for all hours worked, among other unlawful conduct described later in this pleading consistent with applicable law.

20. The class of similarly situated individuals or potential Class Members sought to be certified under 29 U.S.C. § 216 is defined as:

> All persons who worked for Nissan and/or a Nissan dealership during the Class Period who were or are automobile service persons compensated under an unlawful compensation program manipulated by Nissan, and referred to as "piece-rate" or "flat-rate", in which they performed services on behalf of Nissan and were not compensated their A) statutory minimum wage for all hours worked per week during one or more work weeks; and/or B) were not compensated for all time worked; and/or C) were not compensated for tool and equipment purchases that were required to perform their job.

21. The precise size and identity of all Class Members is ascertainable from the business records, tax records, and/or employee personnel records of NISSAN. Upon information and belief, NISSAN has employed over 1,500 individuals who were

paid under its unlawful compensation program in violation of the FMWA in Florida during the Class Period. NISSAN compensated Class Members in the same manner and under the same unlawful employee compensation program, and each of them has worked in Florida during the Class Period. All Class Members were not compensated, at least, the full minimum wage for all hours worked due to the unlawful compensation program created and implemented by NISSAN; they were also not compensated for all time worked. Additionally, they were not compensated for tool and equipment purchases made that were required to perform their job.

### (i)     *Numerosity of the Putative Class.*

22.     Class Members are so numerous that their individual joinder is impracticable. Although the precise identities, numbers and addresses of Class Members are currently unknown to AYALA and SANTOS, the facts on which the calculation of that number can be based are presently within the sole control of NISSAN. Upon information and belief, there are in excess of one hundred (100) Class Members during the Class Period.

### (ii)     *Existence of Common Questions of Fact and Law.*

23.     There is well-defined commonality in the questions of law and fact involved affecting Class Members. The common questions of law include, but are not limited to:

a.     Whether NISSAN's implementation, manipulation, and use of piece-rate pay and/or flat-rate pay violated Florida and federal laws and statutes;

b. Whether NISSAN employed Class Members within the meaning as prescribed by law;

c. What proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d. Whether NISSAN failed and/or refused to pay Class Members minimum wage for all hours worked;

e. Whether NISSAN failed and/or refused to pay Class Members wages owed for all hours worked;

f. Whether NISSAN failed to reimburse Class Members for tools and equipment purchased that were required to perform job duties;

g. Whether NISSAN acted with intention—willfully and maliciously—in its actions; and

h. Whether NISSAN is liable for all damages claimed hereunder, including but not limited to compensatory, liquidated, interest, costs and disbursements, and attorneys' fees.

### (iii) *Typicality.*

24. AYALA'S and SANTOS' claims are typical of the claims of all Class Members because they were employed in the same capacity as a NISSAN mechanic and/or technician during the Class Period; AYALA and SANTOS experienced the same harms and violations of law as all other Class Members.

25. Additionally, all claims arise from the same conduct and factual basis including NISSAN's unlawful compensation program.

*(iv)* ***Adequacy.***

26.     AYALA and SANTOS are adequate representatives of Class Members because their interests do not conflict with the interests of other Class Members they seek to represent.

27.     AYALA and SANTOS have retained competent counsel for this class action and intend to vigorously pursue this action.

28.     AYALA and SANTOS and their counsel will fairly and adequately protect the interests of Class Members.

*(v)* ***Predominance and Superiority.***

29.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation—particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against NISSAN.

30.     The individual members of the class have no interest or capacity to bring separate actions; the plaintiffs are unaware of any other litigation concerning this controversy; thus, it is desirable to concentrate the litigation in one case.

31.     There are no likely difficulties that will arise in managing the class action.

32.     This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law common to the Class Members predominate over the questions affecting only individual members of the class; a class

action is superior to other available means for the fair and efficient adjudication of this action.

33. The damages suffered by individual Class Members may be disproportionate to the burden and expense of complex litigation of these claims on an individual basis.

34. Additionally, individual litigation may lead to inconsistent and conflicting judgments against NISSAN; therefore, effective redress for each and every Class Member may be limited or impossible.

35. A class action which involves all Class Members favors judicial economy, fairness, and provides the benefit of a single, consistent, adjudication on the issues herein claimed.

36. Plaintiffs maintain the right to modify the class and or create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

## IV. THE DEFENDANT – NISSAN NORTH AMERICA, INC.

37. NISSAN is a California corporation that maintains its principal place of business in Franklin, Tennessee.

38. NISSAN manufactures and sells NISSAN and Infiniti brand cars, sport utility vehicles and pickup trucks through a network of approximately 1,082 NISSAN and 211 Infiniti dealers in the United States.

39. At all material times during the last three years, NISSAN was an enterprise governed by the FLSA because it was engaged in commerce or the production of goods for commerce within the meaning of Section 3(s) of the FLSA because it has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have moved in or were produced for commerce by any person. 29 U.S.C. § 203(s).

40. At all times material hereto, NISSAN has had an annual gross volume of business done of not less than $500,000.00 exclusive of taxes.

41. NISSAN also provides, in addition to manufacturing and selling motor vehicles, a variety of maintenance and repair services to its customers at its various NISSAN and Infiniti dealerships.

42. At all material times hereto, NISSAN was and continues to be an "employer" within the meaning of FLSA 29 U.S.C. § 203(d) because it is a corporation acting directly in the interest of its associated agents/business partners—its franchisee dealerships—in relation to the employees at issue—the technicians, mechanics, and maintenance servicemen.

43. At all material times hereto, Class Members were "employees" of NISSAN within the meaning of FLSA, 29 U.S.C. § 203(e)(1).

44. NISSAN engages in joint venture relationships with various qualifying individuals or business entities who manage the day-to-day operation of a dealership, under the direction and control of NISSAN.

45.     The joint venture relationship between NISSAN and its dealerships is established through NISSAN's dealer sales and service agreement.

46.     By way of example –

- XYZ Corp. seeks to own a Nissan dealership.

- NISSAN evaluates XYZ Corp.'s creditworthiness, financial resources, and other criteria required by NISSAN to determine whether NISSAN wishes to engage in the joint venture relationship with the potential dealer.

- Assuming XYZ Corp. satisfies NISSAN's criteria, then the two parties enter into a dealership agreement (i.e., a NISSAN dealer sales and service agreement) that NISSAN has created to govern the relationship with all of its dealership partners.

47.     NISSAN's dealer sales and service agreement is an arrangement between NISSAN and their dealerships, as joint venture employers, to share the employee's services.

48.     NISSAN indirectly performs oversight, quality control, and management of dealership operations by means of the aforementioned sales and service agreement.

49.     NISSAN directly establishes and publishes pertinent policies and procedures concerning day-to-day operations that all dealerships are required to comply with. This is done so by way of the Nissan North America, Inc. Assurance Products Resource Manual. *See* Exhibit 1[2].

---

[2] The manual in its entirety is 369 pages long. Due to the proprietary nature of the manual, in addition to the length of the manual, Plaintiffs will not file the entire manual as there are likely trade secrets included in it. Plaintiffs can provide the entire manual if this Court requests by filing it under seal or it can also be obtained from the Defendant.

50.     While the Class Members physically work at and are formally employed by NISSAN dealerships, NISSAN is a joint-employer for the Class Members, since NISSAN establishes the policies and procedures that govern the day-to-day operations of its dealerships and the mechanics and technicians working in said dealerships. NISSAN dealerships are required to comply with NISSAN's policies and procedures and lack the authority to alter or amend these policies and procedures.

51.     While the dealerships handle the governance of the employees, the requirements of the employees including job description, rates, service information, training requirements, and amount of compensation is handled by NISSAN.

52.     Most notably, NISSAN:

    a.  Establishes and enforces corporate policies which must be followed equally by all Nissan dealerships and the Class and Collective Action Members as employees of Nissan;

    b.  Provides procedures to its dealerships on to how to access resources through the NNAnet.com site such as phone numbers for certain departments, warranty resource materials, flat rate manuals, service manuals, service bulletins, and more to assist their dealers;

    c.  Provides audit procedures in which an inspection by NISSAN of the dealer's records occurs to determine compliance with NISSAN policies and procedures and the dealer sales and service agreement;

    d.  Provides dealerships and employees with information regarding NNAnet.com, which is an electronic data transfer and database system used to send and receive information between the dealership and NISSAN, and was procured, developed, and managed by NISSAN, and is utilized directly by NISSAN employees including those employees at the individual dealerships;

    e.  Provides dealerships and employees with the manual(s) specifying how dealers are to perform all service, repair, and other obligations

13

required by their sales and service agreement with the policies and procedures specified therein;

f. Establishes Flat Rate Time, and specifically the methodology to be used to calculate the nature and amount of compensation, that mechanics / technicians are to receive for performing a labor operation;

g. Maintains the right to decrease warranty-flagged hours for any repair;

h. Details the specific job duties and job descriptions of other positions including the Parts Department, Dispatcher, NISSAN Representative, Cashier, and Claims Administrator;

i. Provides detailed policies and procedures to be followed by employees, specifically mechanics/technicians, including but not limited to: labor allowances, flat rate reimbursement, time clocking requirements, technician training requirements, claims submissions, repair guidelines, and more;

j. Sends NISSAN corporate representatives to the service departments to ensure that uniforms are being worn, technicians' workspaces are organized, and that the shop is running in compliance with NISSAN corporate policies such as those presented in the Nissan North America, Inc. Assurance Products Resource Manual;

k. Corporate representatives visit dealerships to meet with technicians in order to identify and resolve unique, complex, and reoccurring problems and issues with NISSAN vehicles;

l. NISSAN corporate representatives meet with the technicians to discuss issues with day-to-day operations including common technical issues with vehicles, common issues with warranty work, and updates on best practices for repairing recurrent maintenance issues;

m. Maintains employee information through the NNAnet.com system to track items such as: employee name, job title, and training history.

53. Based on the foregoing, it is evident that NISSAN exercises a high degree of control over the mechanics and/or technicians working in Nissan Dealerships.

54.    Accordingly, NISSAN is both directly and indirectly responsible and liable for the acts and omissions alleged throughout this pleading and is liable to compensate all Class Members for the harm each has endured at the hands of NISSAN.

55.    The systems, policies, and procedures established and maintained by NISSAN are intentionally designed to undercompensate Plaintiffs and those similarly situated.

## V.    JURISDICTION AND VENUE

56.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 under § 1332(d)(2) because this is a class action where any member of a class of plaintiffs is a citizen of a state different from any defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs.

57.    This Court has original jurisdiction as to Counts I and II under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*; such jurisdiction lies under 28 U.S.C. §§ 1331 and 1332.

58.    This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, as the state law claims share all common operative facts with the federal law claims, and the parties are identical.  Resolving all state and federal claims in a single action is in the interest of judicial economy and fairness to the litigants.

59.     Venue is proper in this District under the provisions of 28 U.S.C. § 1391 because: (1) NISSAN conducts business in this District, (2) a substantial part of the acts or omissions giving rise to the claim occurred in this District; and the lead plaintiffs and several hundred of the Class Members reside within the District.

## VI.     NISSAN'S WRONGFUL BUSINESS PRACTICES

60.     NISSAN has engaged in willful and systematic misconduct by depriving Class Members of the wages they are entitled to in violation of both federal and state wage and labor laws.

61.     In addition, NISSAN has failed to properly reimburse Class Members for all business expenses including, without limitation, the cost to procure and maintain tools, equipment, and supplies necessary for the discharge of their duties, resulting in failure to pay minimum wages and unpaid wages.

62.     NISSAN willfully engages in wage compensation misconduct that denies Class Members the right to be compensated for all work hours performed and benefits provided on behalf of NISSAN.

63.     NISSAN is engaged in the service of automobiles in Florida, nationwide, and globally.

64.     Further, NISSAN is engaged in the service of automobiles through joint ventures with local dealers in Florida. This is memorialized in each dealership's sales and service agreement and the Nissan North America, Inc. Assurance Products Resource Manual, which establishes the policies and procedures of the day-to-day operations of the service departments.

65.     NISSAN provides and controls service departments at their agents'/representatives' respective locations where automobiles are serviced, maintained, and/or repaired through their aforementioned sales and service agreement and the Products Resource Manual.

66.     This allows NISSAN to comply with local and state regulations on paper, while still maintaining policies and procedures that control the operations of every NISSAN dealership nationwide; there is little independent decision making by the dealerships—this is the reason that NISSAN dealerships are uniform nationwide.

67.     NISSAN is an employer as defined under 29. U.S.C. § 203(d), given that NISSAN serves as the joint employer for the mechanics, technicians, and maintenance personnel (i.e., Class Members) that work at NISSAN dealerships nationwide.  The joint employer relationship between NISSAN and its dealerships is evidenced by the fact that NISSAN benefits financially and reputationally from the work performed by Class Members, such as the maintenance and repair on automobiles.[3]

68.     Further, as laid out in both the sales and service agreement and the Products Resource Manual, NISSAN retains control over important aspects of the employees' information, such as information regarding their employment records and pay structure.

69.     Class Members work under a payment system referred to as "piece-rate" pay or "flat-rate" pay, where employees are paid a fixed rate for each unit produced or

---

[3] Class members perform a specialty job integral to NISSAN's business given that they are responsible for servicing NISSAN vehicles under manufacturer warranties.

service performed ("_flagged hours_"), regardless of the amount of time the employee spent working on the task.

70. All NISSAN dealerships are required to comply with this payment system, which was established by NISSAN.

71. Under this payment system, the rate of pay per service varies by the task performed and whether the service is "warranty-paid" or "customer-paid".

72. The rate of pay is defined directly by NISSAN to each of its dealerships in its Products Resource Manual. _See_ Ex. 1.

73. Through NISSAN's implementation of this payment system, NISSAN determines the pay rates and overall compensation of the Class Members.

74. Traditionally, this payment system was common with automotive technicians and was initially created as an incentive for their employees to work at a faster pace; in fact, it was quite lucrative for many technicians in previous years before intentionally amending its policies in order to continue compensating employees at a flat-rate or piece-rate system, while forcing them to work many hours over forty hours per week, ultimately reducing the compensation to its employees.

75. NISSAN's misconduct and misuse of this payment system fails to properly compensate employees for a substantial number of hours worked in the day, including time working non-flagged hours for such tasks as training, cleaning the workshop, or prepping tools.

76. NISSAN's willful misuse of the "flat-rate pay" system withholds wages owed to their technicians, thereby resulting in decreased expenses and increased profits

for NISSAN. In comparison to other vehicle manufacturers, NISSAN established additional policies, causing their technicians to suffer a significant amount of unpaid wages over the past several years.

77.     For instance:

a.      JOSE AYALA, JEFF SANTOS, and those similarly situated, are required to perform various unpaid "non-repair" tasks, including, but not limited to cleaning, attending meetings and/or on-site/virtual trainings, traveling to offsite locations in connection with NISSAN's business, reviewing service orders, and completing invoices. These tasks comprise a large portion of their "work-time", for which the employees are not paid. Class and Collective Members are not compensated for the hours spent conducting "non-piece-rate" or "non-flat-rate" tasks.

b.      The total amount of hours spent "on the job" by Class and Collective Members are not documented as required and paystubs denote what purports to be "flagged hours" only, with no supportive information.

c.      Class and Collective Members are required to purchase tools and equipment in order to fulfill their duties as a NISSAN service technician. When they purchase these tools and equipment, their weekly rate of pay falls below the required statutory minimum wage to which they are never recompensed.

d.      When the Class and Collective Members purchase the tools in order to fulfill their duties for NISSAN, they are conferring a benefit onto NISSAN to which NISSAN accepts. NISSAN never pays the value of the benefit back to the employees, therefore retaining an unjust enrichment in the benefit conferred.

78.     NISSAN has also established and employed an arbitrary system where services paid by customers directly provides a significantly higher flat-rate pay-out to the NISSAN employee conducting the work; on the other end of the spectrum, that same work, but for a customer with a vehicle under warranty (which consists of approximately 80% of NISSAN's customer base/service-work as of recent years) pays

a *substantially* lower flat-rate pay-out to the employee than if it were to be paid directly by a customer.

79.     There is no difference in the work being performed between "customer-paid" and "warranty-paid" work, other than the rate being paid to the employee.

a. For example, the flat-rate pay-out to a technician for replacing a transmission in a Nissan Sentra that is paid directly by the customer is eight (8) hours.

b. When the same transmission is brought in by a customer with the same vehicle, but under a warranty (either manufacturer or an extended warranty), the transmission replacement conducted by the technician will now only pay four (4) hours, with no justification for the significant discrepancy in pay.

c. This drastic change in the flat-rate paid to the technician is arbitrary and capricious, as there is no difference in the work performed or the time it takes to replace a transmission (for example) in a warranty-paid versus customer-paid vehicle.

80.     "Warranty-paid" work provides a substantially lower payout to the employees than "customer-paid" work because the warranty work constitutes a great majority of the service requested at NISSAN.

81.     The disparity between the amount of "warranty-paid" vs. "customer-paid" work has resulted in reduced profit-margins for NISSAN.  In an effort to claw-back some of the profits, NISSAN reduces the pay-out to its employees through the unlawful method described herein.

82.     Consequently, mechanics, technicians, and maintenance personnel did not and are not receiving fair compensation for all hours worked while providing

valuable benefits and services to NISSAN, for which NISSAN receives profits. These invaluable NISSAN employees have outstanding unpaid wages[4] owed to them.

83.    NISSAN's employee compensation program violates the Fair Labor Standards Act, 29 U.S.C. §§ 206 and 207, for failure to pay minimum and/or overtime wages for all hours worked, as will be described in Counts I and II of this complaint.

84.    Further, NISSAN's employee compensation program violates Florida's Minimum Wage Act, Fla. Stat. § 448.110, as will be described in Count III of this complaint.

85.    Additionally, Class Members are generally required to purchase, and maintain their own tools, equipment, and supplies necessary for the discharge of their duties for the direct benefit of NISSAN.

86.    NISSAN has been unjustly enriched through their conduct by failing to reimburse employees for expenses relating to these equipment purchases resulting in profit and benefit for NISSAN to the detriment of the employees/Class Members.

87.    NISSAN's failure to reimburse Class Members for out-of-pocket expenses resulted in a benefit to the employer, as it decreased the employees' regular wages below the minimum wage resulting in injury to the employee/Class Member.

88.    In other words, by requiring Class Members to purchase their own tools to complete their duties, the cost of such tools purchased by the employee diminishes

---

[4] "Unpaid wages" means the difference between the wages actually paid to an employee and the wages required to be paid to the employee including all compensation for services.

the overall compensation of the employee resulting in lower than minimum wage compensation.

89. By requiring Class Members to purchase their own tools, NISSAN is effectively requiring employees to kick-back their wages to the employer.

90. For instance, AYALA purchased a Vehicle Interface on January 20, 2018, in the amount of $2,371.44, for which he was never reimbursed. This purchase decreased his pay for that pay period well below the statutory minimum wage of $7.25 per hour for 2018.

91. NISSAN's arbitrary decisions to deduct certain hours from employees' wages is an incomprehensible violation of employment laws and constitutes a kick-back for the benefit of NISSAN.

92. As a result of NISSAN's misconduct and misuse of the flat-rate pay system including failure to adequately compensate employees for hours worked and/or overtime hours, and kick-backs, employees are not compensated in accordance with the requisite minimum wage.

93. NISSAN and its agents/representatives are aware of and materially participated in the implementation of the unfair wage compensation system.

94. NISSAN employs unlawful wage compensation systems to capture more profits and combat shrinking profit margins by underpaying their essential technicians, mechanics, and maintenance personnel and failing to pay them the wages they are legally entitled to for the skilled labor they perform.

95. This action represents a situation typical of class treatment.

96.     NISSAN's failure to pay wages for all hours worked by all mechanics, technicians, and maintenance personnel employed by NISSAN is uniform throughout the State of Florida. These employees are also similarly situated due to the application of "piece-rate" and or "flat-rate" pay.

97.     Determining liability for violations of the Federal Fair Labor Standards Act, Florida's Minimum Wage Act, and Code of Federal Regulations, and other laws will ensure that all mechanics, technicians, and maintenance personnel of NISSAN are fairly and legally compensated under these laws then, now, and in the future.

98.     All conditions precedent to bring this action have taken place, are futile, expired or were effectively waived.

## COUNT I
## VIOLATION OF THE FLSA FOR FAILURE TO PAY MINIMUM WAGES
## (COLLECTIVE ACTION AGAINST NISSAN)

99.     Collective Action Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 16 and 37 through 98 above as if fully set forth herein.

100.    The Collective brings this cause of action to recover unpaid minimum wages owed to them pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*

> a.  This includes failure to pay minimum wage for all hours worked by the Collective and reductions in the employees' paychecks for the benefit of the employer in which they required employees to purchase tools to perform their work without reimbursement or compensation up to the statutory minimum wage.

101. The similarly situated Collective Members are automobile service or maintenance employees (or former-employees) of NISSAN throughout the State of Florida—including but not limited to mechanics/technicians and maintenance servicemen. The definition of this collective action was set forth in paragraphs 9 through 16 and is to be fully incorporated herein.

102. All other collective action plaintiffs were, at all times relevant to this action, adults residing in Florida. Collective Action Members consent to sue in this action pursuant to 29 U.S.C. § 216(b); additional potential opt-in plaintiffs may execute and file forms consenting to "opt in" and joining as plaintiffs in this collective action.

103. Collective Action Members were hired by NISSAN dealerships in Florida to perform duties as a technician on behalf of NISSAN and for NISSAN's profit during the Collective Action Period.

104. Collective Action Members were employed by NISSAN as a joint employer based on the joint venture relationship between NISSAN and its dealerships described above.

105. Collective Action Members were also required by NISSAN to procure and maintain tools, equipment, and supplies necessary for the discharge of their duties, which reduced the employees' weekly wage to an amount that was below the requisite minimum wage.

    a. These tool purchases further reduced the employees' weekly wage to an amount that was below the statutory minimum wage.

b.  By way of example, AYALA purchased a Vehicle Interface on January 20, 2018, in the amount of $2,371.44, for which he was never reimbursed. This purchase decreased his pay for that pay period well below the statutory minimum wage of $7.25 per hour for 2018.

106.   By failing to pay minimum wages, NISSAN has violated, and continues to violate Sections 206 and 215 of the FLSA.

107.   The conduct described throughout this Complaint and above constitutes a willful violation of the FLSA.

108.   NISSAN knew that it was required to pay its employees at least the requisite minimum wage for all hours worked.

109.   Instead of lawfully paying its employees, NISSAN established and maintained systems, policies, and procedures that were intentionally designed to avoid paying employees their earned wages as detailed in the paragraphs above.

110.   NISSAN has engaged in a widespread systematic pattern, policy, and practice of violating the FLSA, as detailed throughout this Complaint. Application of these practices does/did not depend on the personal circumstances of the Collective Action Members. Rather, the same practices which result in the non-payment of minimum wages to Collective Action Members apply to all Collective Action Members.

111.   Collective Action Members are/were entitled to be paid at least minimum wage for all hours worked during the workweek pursuant to FLSA 29 U.S.C. § 206.

a. Further, when tool and equipment purchases decrease the employees' weekly paycheck below the statutory minimum wage, Collective Action

Members are entitled to reimbursement up to and including the statutory minimum wage.

112. NISSAN violated FLSA 29 U.S.C. § 206 by failing to pay minimum wages, as described above, and caused Collection Action Members to suffer lost wages and interest thereon.

113. Collective Action Members have been required to work eight (8) hours per day, and beyond, without receiving the full compensation for the hours worked.

114. Due to NISSAN's misconduct and misuse of the employee compensation system, Collective Action Members did not earn wages at the minimum wage rate for all of their hours worked during one or more work weeks.

115. Collective Action Members were only compensated for "flagged hours", which sufficiently reduced the compensable hours included in their pay-out, effectively lowering their rate of pay in a manner which falls below the federal minimum wage rate.

   a. By way of example, on April 17, 2019, AYALA received a paycheck stating that he worked 13 hours and was paid $416.00 (gross), but worked at least 60 hours, which is $.32 per hour below the federal minimum wage rate of $7.25 per hour for 2019. For this one week, he is owed a total of $19.20 in unpaid federal minimum wages.

   b. Similarly, on February 9, 2018, SANTOS received a paycheck stating that he worked 19.3 hours and was paid $328.10 (gross), when in fact he actually worked 50 hours, which is $.69 per hour below the federal minimum wage rate of $7.25 per hour for 2018. For this one week, he is owed a total of $34.50 in unpaid federal minimum wages.

116.    NISSAN knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay proper minimum wages as compensation with respect to Collective Action Members.

117.    NISSAN knew that Collective Action Members were owed compensation and that NISSAN was required to pay such compensation. However, NISSAN failed to do so.

118.    As a result of NISSAN's intentional, willful, and unlawful acts in refusing to pay Collective Action Members, and those similarly situated to them, minimum wage rates per hour worked per workweek in one or more workweeks, Collective Action Members, and those similarly situated to them, have suffered damages, and incurred reasonable attorneys' fees and costs as provided in 29 U.S.C. § 216.

119.    As a result of NISSAN's willful violation of FLSA § 206, Collective Action Members are entitled to recover the full amount of any unpaid back wages unlawfully withheld, plus the same amount as liquidated damages as per 29 U.S.C. § 216.

120.    Collective Action Members are entitled to recover from NISSAN their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages or pre-judgment interests, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. §§ 206 and 216.

121.    Because NISSAN's violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

122.    Collective Action Members request designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join, and appointing Plaintiffs and their counsel to represent the Collective Action Members.

**WHEREFORE**, Plaintiffs, JOSE AYALA, JR., JEFF SANTOS, and the Collective demand judgment against Defendant, NISSAN for the payment of all hours worked by each of them for which NISSAN did not properly compensate them at the statutory minimum wage including weeks in which they purchased tools and/or equipment that decreased their weekly pay below the statutory minimum wage, prejudgment interest in the event liquidated damages are not awarded, attorneys' fees and costs, and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT II**
**NISSAN'S VIOLATION OF THE FLSA FOR FAILURE**
**TO PAY OVERTIME WAGES[5]**
**(COLLECTIVE ACTION AGAINST NISSAN)**

123.    Collective Action Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 16 and 37 through 98 above as if fully set forth herein.

---

[5] This claim is filed against NISSAN as joint employer of the Collective Action Members based on NISSAN's joint venture relationship with its dealerships. Given that NISSAN is an automobile manufacturer, the exemption under 29 U.S.C § 213(b)(10)(a) does not apply.

124.    The Collective Action Members bring this cause of action to recover unpaid overtime wages owed to them pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

125.    The similarly situated Collective Action Members are automobile service or maintenance employees (or former-employees) of NISSAN throughout the State of Florida—including but not limited to mechanics/technicians and maintenance servicemen. The definition of this collective action was set forth in paragraphs 9 through 13 and is to be fully incorporated herein.

126.    All other collective action plaintiffs were, at all times relevant to this action, adults residing in Florida. Collective Action Members consent to sue in this action pursuant to 29 U.S.C. § 216(b); additional potential opt-in plaintiffs may execute and file forms consenting to "opt in" and joining as plaintiffs in this collective action.

127.    Collective Action Members were hired by NISSAN dealerships in Florida to perform duties as a technician on behalf of NISSAN and for NISSAN's profit during the Collective Action Period.

128.    Collective Action Members were employed by NISSAN as a joint employer based on the joint venture relationship between NISSAN and its dealerships described above.

129.    By failing to pay overtime wages, NISSAN has violated and continues to violate the FLSA sections 207 and 215.

130. The conduct described throughout this Complaint and above constitutes a willful violation of the FLSA.

131. NISSAN knew that it was required to pay its employees the requisite overtime for all overtime hours worked.

132. Instead of lawfully paying its employees, NISSAN established and maintained systems, policies, and procedures that were intentionally designed to avoid paying employees their earned wages as detailed in the paragraphs above.

133. NISSAN has engaged in a widespread systematic pattern, policy, and practice of violating the FLSA, as detailed throughout this Complaint. Application of these practices does/did not depend on the personal circumstances of the Collective Action Members. Rather, the same practices which result in the non-payment of overtime wages to Collective Action Members apply to all Collective Action Members.

134. Collective Action Members are entitled to be paid overtime at a rate not less than one and one-half times their regular rate for all hours worked in excess of forty hours per week pursuant to FLSA 29 U.S.C. § 207.

135. NISSAN violated the FLSA, 29 U.S.C. § 207, by failing to pay Collective Action Members overtime wages at a rate of time and a half of their regular pay during the weeks that they worked in excess of forty (40) hours, as described in the paragraphs above, and caused Collection Action Members to suffer lost wages and interest thereon.

136.    Collective Action Members were only compensated for "flagged hours", which sufficiently reduced the compensable hours included in their pay-out. Furthermore, "flagged hours" were the only hours that were counted for purposes of determining whether Collective Action Members were entitled to overtime, rather than the actual hours worked by the Collective Action Members.

137.    Therefore, Collective Action Members frequently worked over forty hours per week but did not receive the required overtime for every hour worked in excess of forty (40) hours per week, since flagged hours were the only hours that were counted for purposes of overtime.

a.  By way of example, on January 31, 2020, AYALA received a paycheck stating that he worked 48 hours and was paid $1,536.00 (gross). He was paid at his straight rate for each of these hours. Under 29 U.S.C. § 207, AYALA should have been paid at a rate not less than one and one-half times the regular rate at which he is employed for every hour in excess of forty (40) hours, which he was not. For this one week, he is owed a total of $384 in unpaid overtime wages.

b.  Similarly, on January 4, 2019, SANTOS received a paycheck stating that he worked 46.7 hours and was paid $863.95 (gross). He was paid at his straight rate for each of these hours. Under 29 U.S.C. § 207, SANTOS should have been paid at a rate not less than one and one-half times the regular rate at which he is employed for every hour in excess of forty (40) hours per week, which he was not. For this one week, he is owed a total of $185.93 in unpaid overtime wages.

138.    Moreover, despite working more than forty (40) hours per week, NISSAN failed to pay Collective Action Members overtime compensation at the appropriate rate.

139.    NISSAN knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay Collective Action Members the required overtime wages.

140. NISSAN knew that Collective Action Members were owed compensation and that NISSAN was required to pay such compensation. However, NISSAN failed to do so.

141. As a result of NISSAN's intentional, willful, and unlawful acts in refusing to pay Collective Action Members, and those similarly situated to them, overtime wage rates per hour worked per workweek in one or more workweeks, Collective Action Members, and those similarly situated to them, have suffered damages, and incurred reasonable attorneys' fees and costs as provided in 29 U.S.C. § 216.

142. As a result of NISSAN's willful violation of FLSA § 207, Collective Action Members are entitled to recover the full amount of any unpaid back wages unlawfully withheld, plus the same amount as liquidated damages or pre-judgement interest as per 29 U.S.C. § 216. They are further entitled to reasonable attorneys' fees, costs and disbursements.

143. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

144. Collective Action Members request designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join, and appointing Plaintiffs and their counsel to represent the Collective Action Members.

**WHEREFORE**, Plaintiffs, JOSE AYALA, JR., JEFF SANTOS, and the Collective demand judgment against Defendant, NISSAN for the payment of all hours worked by each of them and the Collective for which NISSAN did not properly compensate them at their overtime wage, prejudgment interest in the event liquidated damages are not awarded, attorneys' fees and costs, and all other relief to which Plaintiffs may be entitled at law or in equity.

## COUNT III
## VIOLATION OF FLORIDA'S MINIMUM WAGE ACT FOR FAILURE TO PAY MINIMUM WAGES
## (CLASS ACTION AGAINST NISSAN)

145. Class Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 8 and 17 through 98 above as if fully set forth herein.

146. The class brings this cause of action to recover unpaid minimum wages owed to them pursuant to Florida's Minimum Wage Act, Fla. Stat. § 448.110.

   a. This includes failure to pay minimum wage for all hours worked by the Class and reductions in the employees' paychecks for the benefit of the employer in which they required employees to purchase tools to perform their work without reimbursement or compensation up to the statutory minimum wage.

147. The similarly situated Class Members are automobile service or maintenance employees (or former employees) of NISSAN throughout the State of Florida—including but not limited to mechanics/technicians and maintenance servicemen. The definition of this class action was set forth in paragraphs 17 through 36 and is to be fully incorporated herein.

148.    Class Action Members were hired by NISSAN dealerships in Florida to perform duties as a technician on behalf of NISSAN and for NISSAN's profit during the Class Action Period.

149.    Class Action Members were employed by NISSAN as a joint employer based on the joint venture relationship between NISSAN and its dealerships described above.

150.    Class Action Members were also required by NISSAN to procure and maintain tools, equipment, and supplies necessary for the discharge of their duties, which reduced the employees' weekly wage to an amount that was below the requisite minimum wage.

a.  These tool purchases further reduced the employees' weekly wage to an amount that was below the statutory minimum wage.

b.  By way of example, AYALA purchased a Vehicle Interface on January 20, 2018, in the amount of $2,371.44, for which he was never reimbursed. This purchase decreased his pay well below the statutory minimum wage of $8.25 per hour for 2018.

151.    By failing to pay minimum wages, NISSAN has violated, and continues to violate the FMWA.

152.    The conduct described throughout this Complaint and above constitutes a willful violation of the FMWA.

153.    NISSAN knew that it was required to pay its employees at least the requisite minimum wage for all hours worked.

154. Instead of lawfully paying its employees, NISSAN established and maintained systems, policies, and procedures that were intentionally designed to avoid paying employees their earned wages as detailed in the paragraphs above.

155. NISSAN has engaged in a widespread pattern, policy, and practice of violating Florida's Minimum Wage Act, as detailed throughout the Complaint. Application of these practices does/did not depend on the personal circumstances of the Class Action Members. Rather, the same practices which result in the non-payment of minimum wages to Class Action Members apply to all Class Action Members.

156. Class Members are/were entitled to be paid at least minimum wage for all hours worked pursuant to Fla. Stat. § 448.110, Florida's Minimum Wage Act.

a. Further, when tool and equipment purchases decrease the employees' weekly paycheck below the statutory minimum wage, Class Action Members are entitled to reimbursement up to and including the statutory minimum wage.

157. NISSAN's failure to pay minimum wage is in violation of the statute and caused Class Action Members to suffer loss of wages and interest thereon.

158. NISSAN violated Fla. Stat. § 448.110 by failing to pay minimum wages, as described in the paragraphs above.

159. Class Action Members have been required to work eight (8) hours per day, and beyond, without receiving the full minimum wage compensation for the hours worked.

160. Due to NISSAN's misconduct and misuse of the employee compensation system, Class Action Members did not earn wages at the minimum wage rate for all of their hours worked during one or more work weeks.

161. Class Action Members were only compensated for "flagged hours", which sufficiently reduced the compensable hours included in their pay-out, effectively lowering their rate of pay in a manner which falls below the state minimum wage rate.

a. By way of example, on April 17, 2019, AYALA received a paycheck stating that he worked 13 hours and was paid $416.00 (gross), when in fact he actually worked 60 hours, which is $1.53 per hour below the state minimum wage rate of $8.46 per hour for 2019. For this one week, he is owed a total of $91.80 in unpaid minimum wages.

b. Similarly, on February 9, 2018, SANTOS received a paycheck stating that he worked 19.3 hours and was paid $328.10 (gross), when in fact he actually worked 50 hours, which is $1.69 per hour below the state minimum wage rate of $8.25 per hour for 2018. For this one week, he is owed a total of $84.50 in unpaid minimum wages.

162. NISSAN knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay proper minimum wages as compensation with respect to Class Action Members.

163. NISSAN knew that Class Action Members were owed compensation and that NISSAN was required to pay such compensation. However, NISSAN failed to do so.

164. As a result of NISSAN's willful violation of Fla. Stat. § 448.110, Class Members are entitled to recover the full amount of any unpaid back wages unlawfully withheld, plus the same amount as liquidated damages (or alternatively, pre-judgment interests), as per Fla. Stat. § 448.110(6)(c)(1).

165.    As a result of NISSAN's willful violation of Fla. Stat, § 448.110, Class Members are entitled to an award of reasonable attorneys' fees and costs pursuant to Fla. Stat. § 448.110(6)(c)(1).

166.    As a direct and proximate result of NISSAN's willful violations, Class Members are entitled to such legal or equitable relief as may be appropriate to remedy the violation, including, without limitation, liquidated damages, reinstatement in employment, injunctive relief, and all other damages allowable under law.

167.    Because NISSAN's violations of the FMWA have been willful, a five-year statute of limitations applies pursuant to Fla. Stat. § 95.11.

**WHEREFORE**, Plaintiffs, JOSE AYALA, JR., JEFF SANTOS, and the Class Action Members demand judgment against Defendant, NISSAN for the payment of all hours worked by each of them for which NISSAN did not properly compensate them at the statutory minimum wage including weeks in which they purchased tools and/or equipment that decreased their weekly pay below the statutory minimum wage, prejudgment interest in the event liquidated damages are not awarded, attorneys' fees and costs, and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT IV**
**UNJUST ENRICHMENT – TOOL AND EQUIPMENT PURCHASES[6]**
**(CLASS ACTION AGAINST NISSAN)**

168.    Class Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 8 and 17 through 98 above as if fully set forth herein.

169.    Class Members conferred valuable benefits on NISSAN in the form of unreimbursed expenses and equipment purchases.

170.    NISSAN was unjustly enriched by its failure to compensate Class Members for expenses and equipment purchases directly related to the work that was performed by them on behalf of NISSAN. For example, Class Members were required to purchase thousands of dollars in tools, equipment, and supplies that were required to perform their job, without reimbursement for any of these purchases. Nevertheless, NISSAN unlawfully retained the profits and revenues generated from the work performed.

171.    NISSAN was enriched by, appreciated, and reaped the benefits that Class Members conferred upon it in the form of profits and revenues that NISSAN received for the work performed by Class Members through the use of the tools, equipment, and supplies provided by Class Members.

---

[6] This claim is limited only to the amount of unreimbursed tools and equipment purchases in excess of damages awarded under the FLSA or FMWA.

172. The benefits conferred by Class Members were non-gratuitous and NISSAN received value from this benefit such that it would be inequitable for NISSAN to retain the benefit without compensating the Class Members.

173. There is no adequate remedy at law for the relief requested herein given that would provide relief for the harms alleged herein, and neither the FLSA nor the FMWA provide relief for the harms alleged.

**WHEREFORE**, Plaintiffs, JOSE AYALA, JR., JEFF SANTOS, and the Class Action Members demand judgment against Defendant, NISSAN for damages found to be due and owing, attorneys' fees and costs, and all other relief to which Plaintiffs may be entitled at law or in equity.

<u>**COUNT V**</u>
**UNJUST ENRICHMENT – FAILURE TO COMPENSATE CLASS MEMBERS FOR TIME WORKED[7]
(CLASS ACTION AGAINST NISSAN)**

174. Class Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 8 and 17 through 98 above as if fully set forth herein.

175. Class Members conferred valuable benefits to NISSAN in the form of labor which is not afforded redress by the FLSA or FMWA.

---

[7] This claim is separate and distinct from Plaintiffs' FLSA and FMWA claims as it is not seeking compensation for Nissan's failure to pay minimum wage or overtime hours. This claim is limited to the hours worked by Class Members which they were never compensated for due to NISSAN's inadequate record-keeping, implementation of the piece-rate/flat-rate pay system, and/or non-flagged hours worked with no adequate remedy at law.

176.    NISSAN was unjustly enriched due to its failure to compensate Class Members for the hours that employees spent at the work site performing non-flagged tasks.

177.    This is due to Nissan's failure to properly maintain appropriate records regarding hours worked, use of Nissan's flat-rate or piece-rate system, and lack of tracking of non-flagged hours worked.

178.    This work added up to a substantial portion of the employees' day as it included tasks such as mandatory NISSAN training (both on and off site), cleaning the workshop, and prepping tools.

179.    All work that was performed by the Class Members was work that was conducted on behalf of, and for the benefit of, NISSAN. NISSAN subsequently and unlawfully retained the profits and revenues generated from the work performed by the Class Members, without compensating them for the time spent on said work.

180.    NISSAN was enriched by, appreciated, and reaped the benefits that Class Members conferred upon it in the form of profits and revenues that NISSAN received for the uncompensated work performed by Class Members.

181.    The benefit conferred by Class Members were non-gratuitous and NISSAN received value from this benefit such that it would be inequitable for NISSAN to retain the benefit without compensating the Class Members.

182.    There is no adequate remedy at law for the relief requested herein given that would provide relief for the harms alleged herein, and neither the FLSA nor the FMWA provide relief for the harms alleged.

**WHEREFORE**, Plaintiffs, JOSE AYALA, JR., JEFF SANTOS and the Class Action Members demand judgment against Defendant, NISSAN for damages found to be due and owing, attorneys' fees and costs, and all other relief to which Plaintiffs may be entitled at law or in equity.

**COUNT VI**
**UNJUST ENRICHMENT- OVERTIME**
**(CLASS ACTION AGAINST NISSAN)**

183.   Class Members reallege and incorporate by reference the allegations contained in paragraphs 1 through 8 and 17 through 98 above as if fully set forth herein.

184.   In the event the Class Members are unable to recover overtime wages under the FLSA, then in the alternative, Class Members conferred valuable benefits to NISSAN in the form of labor in excess of the "flat-rate" time or "piece-rate" time which is not afforded redress by the FLSA or FMWA.

185.   NISSAN was unjustly enriched due to its failure to compensate Class Members for the excess hours that employees spent at the work site performing non-flagged tasks. Employees were only compensated for the flagged hours worked rather than the actual hours worked, thus conferring a benefit to NISSAN.

186.   This is due in part to Nissan's failure to properly maintain appropriate records regarding hours worked, use of Nissan's flat-rate or piece-rate system, and lack of tracking of non-flagged hours worked.

187. This work added up to a substantial portion of the employees' day as it included tasks such as mandatory NISSAN meetings, training (both on and off site), cleaning the workshop, and preparing tools.

188. All work that was performed by the Class Members was work that was conducted on behalf of, and for the benefit of, NISSAN. NISSAN subsequently and unlawfully retained the profits and revenues generated from the work performed by the Class Members, without compensating them for the time spent on said work.

189. NISSAN was enriched by, appreciated, and reaped the benefits that Class Members conferred upon it in the form of profits and revenues that NISSAN received for the uncompensated work performed by Class Members.

190. The benefit conferred by Class Members were non-gratuitous and NISSAN received value from this benefit such that it would be inequitable for NISSAN to retain the benefit without compensating the Class Members.

191. There is no adequate remedy at law for the relief requested herein given that would provide relief for the harms alleged herein, and neither the FLSA nor the FMWA provide relief for the harms alleged.

**WHEREFORE**, Plaintiffs, JOSE AYALA, JR., JEFF SANTOS, and the Class Action Members demand judgment against Defendant, NISSAN for damages found to be due and owing, attorneys' fees and costs, and all other relief to which Plaintiffs may be entitled at law or in equity.

# PRAYER FOR RELIEF

**WHEREFORE**, Class Members respectfully request that judgment be entered in their favor, against NISSAN, and:

a. Certification and acknowledgement of the Collective Action (Counts I and II of this litigation) and appointing JOSE J. AYALA, JR., JEFF SANTOS, and their counsel the opportunity to represent the collective action class;

b. Certification of this action (Counts III - VI) as a Class Action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing JOSE J. AYALA, JR., JEFF SANTOS, and their counsel to represent the class;

c. Awarding Class Members his/their unpaid wages in the amount due to him/them for Class Members, time worked in each work week at minimum wage, any owed overtime wages, and any other relief provided for under law;

d. Awarding Class Members and those similarly situated to them, liquidated damages as permitted by law;

e. Awarding Class Members reasonable attorneys' fees and costs and expenses of the litigation pursuant to Florida and Federal law;

f. Awarding Class Members damages for their unjust enrichment claims as permitted by law;

g. Awarding Class Members punitive damages and/or pre-judgment interest as permitted by law;

h.  Granting Class Members an Order, on an expedited basis, allowing them to send notice of this action, pursuant to Fed. R. Civ. P. 23, to those similarly situated to Class Members;

i.  Granting Collective Action Members an Order, on an expedited basis, allowing them to send notice of this action as a collective action pursuant to 29 U.S.C. § 216(b) to those similarly situated Collective Action Members; and

j.  Order any other further relief the Court deems just and proper.

## JURY TRIAL DEMANDED

Class Members respectfully demand a trial by jury on all issues so triable.

Respectfully submitted this 9th day of July 2021:

**éclat Law, LLP**

*/s/ Kevin K. Ross-Andino*
Kevin K. Ross-Andino, # 66214
kevin.ross@eclatlaw.com
Jolynn M. Falto, #1002743
jfalto@eclatlaw.com
Lisa E. Bolinger, # 1017749
lbolinger@eclatlaw.com
Nikki J. Pappas #126355
Nikki.pappas@eclatlaw.com
307 Cranes Roost Boulevard # 2010
Altamonte Springs, Florida 32701
Main Line: (407) 636-7004

*Lead Trial Counsel to the Plaintiffs and each Class Member*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of Court this 9th day of July 2021 by using the Federal Case Management/Electronic Case Files System (CM/ECF System). Accordingly, a copy of the foregoing is being served on this day to all attorney(s)/interested parties identified on the CM/ECF Electronic Service List, via transmission of Notices of Electronic Filing generated by the CM/ECF System.

*/s/    Kevin K. Ross-Andino*
Kevin K. Ross-Andino; FBN: 66214