UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JOSE J. AYALA, JR. and JEFF
SANTOS, on behalf of
themselves and as
representatives of other class
members similarly situated,
      Plaintiffs,

v.
                                   Case No.: 6:20-cv-01625-RBD-GJK

NISSAN NORTH AMERICA, INC. D/B/A
NISSAN USA, a Delaware corporation, a
wholly owned subsidiary of Nissan Motor
Company of Japan,
      Defendant.
_____/

## PLAINTIFFS' RULE 23 MOTION FOR CLASS CERTIFICATION[1]

Plaintiffs JOSE J. AYALA, JR. and JEFF SANTOS ("Plaintiffs") by and through their counsel, and pursuant to Federal Rule of Civil Procedure 23 move this Court to (i) certify a class with respect to Counts III-VI of the Amended Complaint (*DE-40*), (ii) designate Plaintiffs JOSE J. AYALA JR. and JEFF SANTOS as class representatives, and (iii) designate éclat Law, LLP as class counsel. In support thereof, the Plaintiffs state as follows:

### INTRODUCTION AND RELEVANT PROCEDURAL HISTORY

Nissan North America, Inc., D/B/A Nissan USA (Defendant/Nissan) is a Delaware Corporation that manufactures and sells Nissan vehicles through a

---

[1] Although class certification motions appear to be exempted from the requirement to meet and confer pursuant to local rule 3.01(g), Plaintiffs will engage in discussions with Defendant to determine if any agreements or stipulations can be made and will advise the Court accordingly.

network of approximately 1,082 Nissan dealers in the United States. (*DE-40*, ¶ *38*). Nissan also provides a variety of warranty, maintenance, and repair services to its customers at hundreds of certified Nissan dealerships throughout the Country, including least sixty-two certified Nissan dealerships in Florida.[2] (*DE-40*, ¶ *41*).

Plaintiffs, on behalf of themselves and all others similarly situated, filed their First Amended Complaint ("FAC") against Nissan for willful and systematic misconduct violating federal and state laws—the Fair Labor Standards Act ("FLSA") and the Florida Minimum Wage Act ("FMWA"), amongst other causes of action. (*DE-40*). Plaintiffs and other putative class members were or currently are Nissan automobile service employees who have worked at one or more certified Nissan dealerships in Florida; these individuals were or are subject to Nissan's unlawful compensation program generally referred to as "piece-rate" or "flat-rate" for services performed for Nissan. (*DE-40*, ¶ *8*).

Plaintiffs were employed by Nissan as mechanics and/or technicians in one or more certified Nissan dealerships and were always employed as non-exempt employees. (*DE-40*, ¶ *5-6*).  Mr. Ayala was formally employed by Nissan dealerships commencing in calendar year 2009 through March of 2020, (*DE-40*, ¶ *5*), and Mr. Santos was formally employed by Nissan dealerships starting in 2014 and continued until June 2020. (*DE-40*, ¶ *6*). Plaintiffs, like all other putative class members, were

---

[2]     NISSAN     USA,     https://www.nissanusa.com/nissandealers/location/florida; https://www.nissanusa.com/owners/ownership/extended-protection-plans.html (last visited Dec. 31, 2021).

subjected to Nissan's illegal compensation program explained as "piece-rate" or "flat-rate" for services performed on behalf of Nissan. (*DE-40*, ¶ 8).[3] Plaintiffs' claims are similar to all current and former Nissan automobile service employees working at a Nissan dealership in Florida during the Class Period (January 2016 through present). (*DE-40*, ¶ *17-35*); *See Ex.1.1 ¶ 4-10, 11-19, 27-31, 34-35, 37-40; See Ex.1.2 ¶ 4-17, 19-22, 26, 31-35, 38-44.*  Plaintiffs and the putative class members were employed by Nissan, a joint employer based on the intricate relationship between Nissan and its certified dealerships, all of whom have extensive agreements with Nissan yielding various corporate, financial and administrative decision-making authority to Nissan, including the manner in which employees are compensated, which includes Nissan's programs in its *Assurance Products Resource Manual*. (*DE-40*, ¶ *24-25, 149*); (*DE-40-1*, pg. 25); *See Ex.1.1 ¶ 4-10, 11-16; See Ex.1.2 ¶ 4-17.*

Nissan filed a Motion to Dismiss the FAC on July 23, 2021, (*DE-42*), which this Court denied. (*DE-62*). Discovery has commenced, including the exchange of certain documents, scheduling depositions, and the retention of experts. Plaintiffs respectfully requests this Court (i) certify a class for Counts III-VI of the FAC, (ii) designate JOSE J. AYALA JR. and JEFF SANTOS as class representatives, and (iii)

---

[3] Nissan defines Flat Rate Time as "[t]he time (established by Nissan) required to perform a labor operation.". *See* (*DE-40* at ¶ *69-73*); see also (DE-40-1, pg. 17). This Manual contains language such as: "as specified in the Agreement, warranty repairs and such other inspections, repairs, service or corrections to Seller's…products…shall be performed in accordance with the provisions of this manual." (*DE-40-1*, pg. 25). It then goes on to say that "dealers are to perform all service, repair…in accordance with the policies and procedures specified in the Nissan Assurance Products Resource Manual…" *Id.* As such, it is applicable to all Florida dealerships and all Nissan technicians alike.

designate éclat Law, LLP as class counsel.

## THE PROPOSED CLASS

The proposed class sought to be certified under 29 U.S.C. § 216 is defined as:

> All persons who worked with a Nissan dealership as an automobile service employee during the Class Period who were compensated under a compensation program established and controlled by Nissan, and referred to as "piece-rate" or "flat-rate", in which they performed services on behalf of Nissan and were not compensated their A) statutory minimum wage for all hours worked per week during one or more work weeks; and/or B) were not compensated for all time worked; and/or C) were not compensated for training, tool, and equipment purchases required to perform their job.

The class action claims include violations of Florida's Minimum Wage Act, Fla. Stat. § 448.110, which has a limitations period of four (4) years *or* five (5) years if the actions are willful. Nissan's actions were willful thereby permitting the class period to be defined as automobile service employees who were employed by Nissan from June 2016 through present day. *See (DE-40, ¶¶ 99-144); See also (DE-66, pgs. 19-20).*

## MEMORANDUM OF LAW

## I)   LEGAL STANDARD GOVERNING CLASS CERTIFICATION

In determining whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). One must first show that the named Plaintiff has standing. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). Next, the proposed class must: (1) be adequately defined and clearly ascertainable; (2) meet each of the requirements of Federal Rule of Civil Procedure 23(a); and (3) meet at least one of the requirements of Rule 23(b). *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th

Cir. 2012). The Eleventh Circuit has stated that "a class is not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharms., Inc.*, 621 Fed. Appx. 945, 946 (11th Cir. 2015). Identification is administratively feasible when it is a "manageable process" not requiring much, if any, individual inquiry. *Id.*

The initial burden of proof rests with the Plaintiff. *See generally Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The party seeking to maintain the class action must affirmatively demonstrate compliance with Rule 23. *Id.* at 350. The party must "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact', typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (emphasis supplied) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. 338 at 350).

As explained in *Valley Drug Co. v. Geneva Pharm., Inc.*, "Rule 23 establishes the legal roadmap courts must follow when determining whether class certification is appropriate." 350 F.3d 1181, 1187 (11th Cir. 2003). Federal Rule of Civil Procedure 23 provides the standard for certification of class actions in federal court. Specifically, Rule 23(a) sets forth the following prerequisites for class certification:

> One or more members of a class may sue...as representative parties [if]...(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Further, Rule 23(b)(3) provides for three (3) categories to which a Plaintiff must meet at least one of the requirements. As applied, a class action is authorized when:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class.

FED. R. CIV. P. 23(b)(3).

Courts in the Eleventh Circuit agree that to the extent practicable, the merits of plaintiffs' claims should not be determined at the class certification stage. However, to ascertain if the demands of Rule 23 have been met, trial courts are given the discretion to evaluate the merits "to the degree necessary" or any other matter within its discretion to rule in favor of certification. *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009). However, if needed, courts should limit review to the merits only related to the Rule 23 requirement. *See Bush v. Calloway Consol. Group River City, Inc.*, No. 3:10-cv-841-J-37MCR, 2012 U.S. Dist. LEXIS 40450, at *10 (Fla. M.D. Mar. 26, 2012). The Court may consider any evidence submitted that bears on the question of certification to determine whether it is appropriate. *Id.* at 11.

## 1. The Class Representatives' Standing to Bring the Claim.

First, the Court must determine whether at least one named class representative has Article III standing to raise each class claim. *Prado-Steiman v. Bush*,

221 F.3d 1266, 1279 (11th Cir. 2000). To meet the standing requirement, "a plaintiff must allege and show that he personally suffered injury." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). "Only after the court determines the issues for which the named plaintiff[] [has] standing should it address the question whether the named plaintiff[] [has] representative capacity…to assert the rights of others." *Id.*

Here, Mr. Ayala and Mr. Santos are the named class representatives, each was employed by Nissan at one or more of its certified dealerships for five to eleven years as non-exempt employees, subject to the illegal payment system referred to as "piece-rate" pay or "flat-rate" pay, where employees are paid a fixed rate for each service performed, regardless of the amount of time the employee actually spent working on the task. (*DE-40*, *¶ 8, 52, 69-98*); *See Ex.1.1  ¶ 4-19, 22-40*; *See Ex.1.2  ¶ 4-22, 25-44*. The rate of pay per service varies by the task performed and whether the service is "warranty-paid" or "customer-paid". (*DE-40, ¶ 8*).

Moreover, Plaintiffs were required to remain at work and perform unpaid "non-repair" tasks, including but not limited to cleaning, attending meetings, trainings, traveling to offsite locations in connection with Nissan's business, reviewing service orders, and completing invoices. (*DE-40, ¶ 77*); *See also See Ex.1.1  ¶ 8-10 18, 19, 31, 40; See Ex.1.2  ¶ 9-11, 19, 32, 33, 44.* These types of tasks are not documented as "working hours" nor are they included on paychecks or time entries. *Id.* As to unpaid minimum wages in particular (as an example), it is estimated that Mr. Ayala is owed $2,124.96 from 2015 through 2020 and Mr. Santos is owed

7

approximately $9,975.84 from 2016 through 2020. *Ex. 1.1 ¶ 23-25; Ex. 1.2 ¶ 26-29.*

Further, the Plaintiffs were required to purchase their own tools to fulfill their required duties, for which they were never compensated. (*DE-40, ¶ 23(f), 61, 77(c), 85, 88, 146, 150, 170*); *Ex. 1.1 ¶ 37-39. Ex. 1.2 ¶ 40-43.* These purchases add up to thousands of dollars' worth of tools that are necessary for any technician to work at Nissan and to complete Nissan's work.[4] *Id.* They were not reimbursed for these tools in any pay period which ultimately led to additional violations of the FMWA as the purchases effectively reduced their weekly wage below minimum wage. *Id.*

These are just a few instances in which Nissan directly violated Plaintiffs' rights. Both named representatives were personally harmed by Nissan's unlawful conduct in the same manner that the putative class members were harmed. *See generally Exhibits. 1.1 and 1.2.* Thus, as Plaintiffs have sufficiently shown they were personally injured, they possess the requisite standing for class certification.[5]

## 2. Adequately Defined and Clearly Ascertainable.

The proposed class must be "adequately defined and clearly ascertainable." *Little*, 691 F.3d at 1304 (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). A class is adequately defined and clearly ascertainable when there is an objective criteria that allows the identification of class members in an

---

[4] Mr. Ayala estimates spending $3,000.00 per year on tools and equipment necessary to conduct work on behalf of Nissan. For Mr. Santos, approximately $9000 has been confirmed in tool and expenses needed for work on behalf of Nissan, with a total estimate of $12,000 since 2014.
[5] For additional information, please review Exhibits 1.1 and 1.2, the declarations of the Plaintiff representatives, which includes various information demonstrating the harm they experienced.

administratively feasible way. *Bussey*, 562 F. App'x 782 at 787. Plaintiffs must show a "manageable process that does not require much, if any, individual inquiry." *Id.* *see also Karhu*, 621 Fed. Appx. at 946. This matter is a class action wage case, upon which the class is ascertainable and identification of class members is simple, with straightforward management. Plaintiffs propose the following class definition:[6]

> All persons who worked with a Nissan dealership as an automobile service employee during the Class Period who were compensated under a compensation program established and controlled by Nissan, and referred to as "piece-rate" or "flat-rate", in which they performed services on behalf of Nissan and were not compensated their A) statutory minimum wage for all hours worked per week during one or more work weeks; and/or B) were not compensated for all time worked; and/or C) were not compensated for training, tool, and equipment purchases required to perform their job.

This definition is adequate and allows the parties and this court to readily ascertain who the class members are; there is no individual inquiry required. Here, the named Plaintiffs were formally employed by Nissan dealerships, to which Nissan is a joint employer.[7] (*DE-40*, ¶¶ *42-55*). Per the FMWA, an employer is —"any private individual, firm, partnership, institution, corporation, or association that employs ten or more persons." Fla. Stat. § 448.101(3). Plaintiffs further allege a joint employer relationship with Nissan, by working in Nissan's Florida dealerships, as

---

[6] If necessary, this class definition can also be readily separated into 3 sub-classes: (a) members not compensated their statutory minimum wage, (b) members that were not compensated for all time worked, and (c) members who were not compensated for training, tool, and equipment purchases that were required to perform the members' job on behalf of Nissan.

[7] A joint employer relationship exists between Nissan and the class members' formal employers, the Nissan dealerships, as laid out in Plaintiffs' FAC. (*DE-40*, ¶¶ *42-55*). Plaintiffs also incorporate by reference its arguments supporting the joint employer relationship in DE-51, pages 4-16. *See also* (*DE-40* at ¶ *24-25, 52(j), 52(k), 52(l), 69-75, 96, 149*); see also (*DE-40-1*, pgs. *7, 17, 25*); (*DE-40-1*, pg. *25*); (*See DE-47-1*, pgs. *6-9*); *See Ex.1.1* ¶ *4-10, 11-16*; *See Ex.1.2* ¶ *4-17*.

laid out in Plaintiffs' FAC. (*DE-40*, ¶¶ *42-55*). Generally, service departments, like the ones where Plaintiffs worked, are open seven (7) days a week and usually have extended hours for at least six (6) out of the seven (7) days. *See Ex. 1.1 ¶ 22-25, 32, 33*; *See Ex. 1.2 ¶ 25-28, 36, 37*. It is common for these employees to consistently work more than a forty (40) hour workweek to accommodate the business hours. *Id.* In any given month they would work a minimum of two (2) weeks per month with six (6) work days per week, twelve (12) hour shifts per day. *Id.* The remaining two (2) weeks of the month they would work five (5) days per week, twelve (12) hour shifts. *Id.*

Nissan's *Assurance Products Resource Manual* states that it does in fact "apply to all dealers equally unless state mandated laws state otherwise." (*DE-40-1*, pgs. *4, 25*). This manual also states that the "flat rate manuals", which establish the labor hours required to perform common service operations, are also available on the NNAnet.com site[8]. (*DE-40* at ¶¶ *69-73*); *see also* (*DE-40-1*, pgs. *17, 25*). The class of non-exempt service technicians who were subjected to the "piece-rate" compensation program, had or currently have access to the nnanet.com site and the aforementioned manual which is published and controlled by Nissan. *Id.* Since the flat-rate program was applied to 'all dealerships' and each dealership was likely open extended hours, it is logically estimated that there are hundreds, if not thousands, of

---

[8] The nnanet.com site is established, maintained, controlled, and monitored by Nissan in which employees, such as Plaintiffs, were required to log in to review training history, complete new training, review documents/bulletins sent via the site, and review items such as the flat rate manual, which establishes the labor hours required to perform service operations and hence, the wage that the class members earn from working on any given vehicle. Also, *see generally Ex. 1.1 and 1.2.*

potential class members throughout the class period within the state of Florida which have been exposed to the violations of the FMWA. The identities of the class members can be easily ascertained from the nnanet.com website controlled and established by Nissan. In fact, Nissan has begun to produce documents providing names of potential members, responsive to Plaintiffs' discovery requests. *See Ex. 2.*

Based on the above, the putative class can be adequately defined, with little to no individual inquiry. The class members' information can be easily found in Defendant's own business records (certainly through the nnanet.com database belonging to Nissan) or the business records of their agents/representatives', to which Nissan maintains control over (such as the dealerships to which Plaintiffs assert Nissan is the joint employer, by a simple datamining process of human resources records). Nissan, having at least sixty-two (62) dealerships in Florida, certainly has a relationship and is in communication with the dealerships it purports to oversee (vis a vis its *Assurance Products Resource Manual* and certainly its actions). *See* (*DE-51,* pgs. *4*-16); *Ex. 1.1 ¶ 10-17*; *Ex. 1.2 ¶11-18*. Nissan has information directly or has control over information identifying which employees were or are automotive service personnel within the dealerships, their formal titles, pay rates, and other identifying information. *Id.* Nissan can also identify which of its employees were compensated through its "piece-rate" or "flat-rate" program and the amount they were compensated to determine the damages. Through its paystubs, human resources data, the flat rate and warranty rate manuals created by Nissan, and other

11

relevant records, the parties can straightforwardly ascertain how many hours each employee worked, how much they were paid, and what they are owed. Additionally, this information would focus only on June 2016 through the entry of judgment in this case—the Class Period[9].  From here, a simple macro input into a spreadsheet would show whether proposed class members A) were compensated their hourly rate for all hours worked, B) were compensated time-and-a-half of their hourly rate for all hours worked in excess of forty (40) hours, and/or C) were not compensated statutory minimum wage for all hours worked per week during one or more work weeks. The calculation to determine this data can be done on a mass scale in an administratively feasible and manageable way with limited to no individual inquiry.

 Retrieval of this information requires little to no individual inquiry because a large company such as Nissan would unquestionably have this information organized and easily classified either by dealership, division, department, or employee number. Thus, through Defendant's business records, Plaintiffs can easily ascertain the employees that worked for Florida Nissan dealerships during the Class Period and consequently fit the putative class. Therefore, the putative class is adequately defined (*supra* pgs. 4, 9) and clearly ascertainable.

## II)   PLAINTIFFS SATISFY ALL OF RULE 23'S PREREQUISITES

Once Plaintiffs have shown that they have standing and the putative class is adequately defined and clearly ascertainable, Plaintiffs must satisfy Rule 23(a)'s

---

[9] Strictly non-exempt employees.

prerequisites—numerosity, commonality, typicality, and adequacy of representation.

## 1. NUMEROSITY (Rule 23(a)(1))

Rule 23 requires that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Plaintiffs seeking class certification do not need to know the exact size of the proposed class. *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). While the size of the proposed class is relevant to a court's determination, other factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits" should also be considered. *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004). While there is no set number for a class, more than forty (40) putative class members is adequate to establish numerosity. *Roundtree v. Bush Ross, P.A.*, No. 8:14-cv-357-T-27AEP, 2014 U.S. Dist. LEXIS 174902, at *14 (M.D. Fla. Dec. 10, 2014).

The nature of this action, while large and rather expansive, is a straightforward employment wage case involving multiple Plaintiffs with similar harm. (*DE-40* at ¶ *21*). There is great geographic diversity as Nissan's sixty-two (62) dealerships exist within the state of Florida.[10] The class members physically worked or work within the Nissan dealerships throughout the state of Florida, making the

---

[10] NISSAN USA, https://www.nissanusa.com/nissandealers/location/florida (last visited Dec. 14, 2021).

class extremely geographically diverse.[11] Furthermore, based on the fact that sixty-two (62) dealerships exist in Florida, it is reasonable and logical that the number of class members would greatly exceed forty (40), the average minimum for a class; however, to further solidify the potential amount of class members, Nissan has provided partial documentation indicating that there exists, *at least*, 740 potential class members within Florida.[12]

Trying each class member's lawsuit individually would be inconvenient for the Court and the parties involved, with novel challenges as a result of potential backlog from the Covid-19 pandemic. It would be inconvenient and impractical for any witnesses, experts, and even Nissan personnel that may be required to appear, particularly as discovery will be nearly identical in each case. Additionally, it is unlikely that all the class members would have the ability to institute individual lawsuits in this matter—as a sample analysis, none of current opt-in plaintiffs have ever filed lawsuits in this manner. It is unlikely that individual Plaintiffs would be able to assume the financial burdens associated with individual lawsuits. Therefore, because the number of potential Plaintiffs is at least 740, but will likely reach over 1000 individuals, the geographic dispersion of members of the proposed class is great, the judicial economy arising from numerous actions is overwhelmingly inconvenient, and the financial ability and resources of individuals to file individual

---

[11] *Id.*

[12] Thus far, Nissan was able to identify (but produced only names) approximately 740 technicians who received the required certification to perform warranty work on Nissan automobiles within Florida during Nissan's understanding of the statute of limitations period. *See Ex. 2.*

suits is impracticable, joinder of all members is unreasonable and impracticable. Thus, Plaintiffs have satisfied Rule 23(a)'s numerosity requirement for certification.

## 2. COMMON QUESTIONS OF LAW OR FACT (Rule 23(a)(2))

Under Rule 23(a)(2), to satisfy the commonality requirement, the characteristics of the class must involve common issues of law or fact susceptible to class-wide proof. *Roundtree*, 2014 U.S. Dist. LEXIS 174902, at *16. This commonality requirement is satisfied when Plaintiffs allege a common or standardized conduct by the Defendant directed towards members of the proposed class. *Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-1349-J-34PDB, 2016 U.S. Dist. LEXIS 112881, at *8 (M.D. Fla. Aug. 24, 2016). Even a single common question suffices the commonality requirement of Rule 23(a)(2) when resolution of that issue will affect all or a significant number of the putative class members. *Roundtree*, 2014 U.S. Dist. LEXIS 174902, at *16.

However, commonality does not require that the class members have identical claims. *Grames v. Sarasota Cty.*, No. 8:20-cv-739-CEH-CPT, 2021 U.S. Dist. LEXIS 37953, at *12 (M.D. Fla. Mar. 1, 2021). Instead, commonality pertains to the group characteristics…where…the determination of the truth of a common contention will resolve an issue that is central to the validity of each of the claims in one stroke. *Roundtree*, 2014 U.S. Dist. LEXIS 174902, at *16-17.

A sufficient nexus of legal claims and facts clearly exists here. Plaintiffs assert common questions of fact among the class members who were or currently area

automobile service employees of Nissan and were/are adversely affected by Defendant's failure to compensate wages during the Class Period. (*DE-40*, ¶ *21-25, 70-72, 147, 155-167, 170-172, 176-181, 184-190*); (*DE-40-1*, pg. *25*); *Ex. 1.1 ¶4-16*; *Ex. 1.2* ¶ *5-17*. The common legal questions that arise out of Nissan's common scheme against Plaintiffs and all class members include: whether Nissan violated the Fair Labor Standards Act and Florida's Minimum Wage Act; whether Nissan failed to comply with 29 C.F.R. § 531.35 "Free and Clear" Payment or "Kickbacks"; and whether Nissan was unjustly enriched. *Id*. Class-wide proof is available, in the form of personnel and wage records, held by the Defendant which can be easily ascertained, as described above. All of Plaintiffs and the proposed class members' damages could be calculated in one broad stroke with a common formula through a designed macro within a readily available spreadsheet database. *Ex. 1.1 ¶ 15-17*; *Ex. 1.2 ¶ 16-18*.

Plaintiffs allege a standardized conduct by Nissan causing them harm in the form of unpaid wages. (*DE-40*, ¶ *21-25, 70-72, 147, 155-167, 170-172, 176-181, 184-190*); (*DE-40-1*, pg. *25*); *Ex. 1.1 ¶ 3-16, 18, 19, 22-40*; *Ex. 1.2 ¶ 4-17, 19-44*. Nissan used the same unlawful compensation program referred to as "piece-rate" or "flat-rate" on all class members for services performed on behalf of Nissan. *Id*. As a result of Nissan's common scheme, Plaintiffs and all class members were not paid the statutory minimum wage for all hours worked per week during one or more work weeks. *Id*. Additionally, they were not compensated for all time worked or for tool and equipment purchases required to perform their job. *Id*.

Plaintiffs and the class members have a right to recovery based on the same essential facts—Nissan's common scheme of "piece-rate" or "flat-rate" compensation. *Id*. Thus, because Nissan's common scheme of "piece-rate" compensation harmed all class members, resolution of this common issue affects all members, and the nexus of legal claims and facts are evident, Plaintiffs have shown commonality. Therefore, Plaintiffs have satisfied Rule 23(a)'s commonality requirement for class certification and this Motion should be granted.

### 3. TYPICALITY (Rule 23(a)(3))

Under Rule 23(a)(3), to satisfy the typicality requirement, the class representatives must "possess the same interest and suffer the same injury as the class members". *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982). A sufficient nexus, establishing the typicality requirement, is satisfied if "the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). As long as there is a "strong similarity of legal theories", the typicality requirement may be satisfied even when there are substantial factual differences. *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).

The key inquiry in determining whether a proposed class satisfies Rule 23's 'typicality' is whether the class representative is part of the class and possesses the same interest and suffers the same injury as the class. *Scantland v. Jeffry Knight, Inc.*, No. 8:09-CV-1985-T-17TBM, 2011 U.S. Dist. LEXIS 113392, at *15 (M.D. Fla.

Sept. 29, 2011). In other words, the Plaintiffs will advance the interests of the class members by advancing their own interests. *Prindle*, 2016 U.S. Dist. LEXIS 112881, at *17-18. Like commonality, the test for typicality is not demanding. *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).

Here, the legal theory underlying the claims of the class members are virtually identical to the Plaintiffs' claims. The facts upon which Plaintiffs and the class members' legal theories are based on all arise from Nissan's same unlawful conduct—its "piece-rate" or "flat-rate" compensation program. (*DE-40, ¶ 21-25, 70-72, 147, 155-167, 170-172, 176-181, 184-190*); (*DE-40-1, pg. 25*); *Ex. 1.1 ¶ 3-16, 18, 19, 22-40*; *Ex. 1.2 ¶ 4-17, 19-44*. Likewise, Plaintiffs and the class members' legal theories against Nissan arise out of the same or similar legal theories including but not limited to: the Fair Labor Standards Act and Florida's Minimum Wage Act; 29 C.F.R. § 531.35 "Free and Clear" Payment or "Kickbacks"; and unjust enrichment. *Id.*

Additionally, each class member is similarly situated and has suffered the same type of compensable harm in the form of unlawful wage practice. *Ex. 1.1 ¶ 3-16, 18, 19, 22-40*; *Ex. 1.2 ¶ 4-17, 19-44*. In fact, Plaintiffs and all class members have the same type of class-wide proof—personnel and wage records that can be easily ascertained from Nissan's business records. *Ex. 1.1 ¶ 15-17*; *Ex. 1.2 ¶ 16-18*. Although each class member's amount of uncompensated wages may vary, they were all inflicted because of the same unlawful practice initiated by the Defendant, making them typical of the class as a whole. *Ex. 1.1 ¶ 3-16, 18, 19, 22-40*; *Ex. 1.2 ¶ 4-17, 19-44*.

Plaintiffs' damages are so typical of those of the class members that everyone's damages could be calculated with one common formula with ease. In essence, by advancing their own interests, Plaintiffs will also advance the interests of the class members. Thus, because Plaintiffs suffered the same type of injury and have the same interests based on the same legal theories as the class members, the named Plaintiffs are typical of the class member group. Therefore, Plaintiffs have satisfied Rule 23(a)'s typicality requirement for class certification.

## 4. ADEQUACY OF REPRESENTATION (Rule 23(a)(4))

Under Rule 23(a)(4), to satisfy the adequacy requirement, the class representatives should fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). Inquiries must be made as to (1) whether there are any substantial conflicts of interest between the named representative(s) of the class and class members and (2) whether the representative(s) will adequately prosecute the action. *Busby*, 513 F.3d at 1323. If significant or "fundamental" conflicts are determined to exist among a class or specific to the issues of the case, then class certification is inappropriate. *Valley Drug Co.*, 350 F.3d at 1189. Minor conflicts alone will not defeat class certification. *Id.* The Court must also consider the conflicts and competency of class counsel. *Gross v. Advanced Disposal Servs.*, No. 8:17-cv-1920-T-36TGW, 2018 U.S. Dist. LEXIS 226037, at *17 (M.D. Fla. Dec. 10, 2018).

The undersigned affirms that no conflicts of interest exist between Plaintiffs and the class members nor between Plaintiffs, class members, and counsel. (*DE-40*, ¶

*26-28*). Plaintiffs have extremely similar, if not exact, interests as the class members. (*DE-40*, ¶ *21-25, 70-72, 147, 155-167, 170-172, 176-181, 184-190*); (*DE-40-1*, pg. *25*); *Ex. 1.1 ¶ 3-16, 18, 19, 22-40*; *Ex. 1.2 ¶ 4-17, 19-44.* Like the class members, Plaintiffs also desire to be fairly compensated with the full minimum wage for all hours worked, compensated for all time worked, and compensated for tool and equipment purchases made that were required to perform the job. *Id.* As such, the named Plaintiffs will fairly and adequately protect the interests of the class by protecting their own. Here, Plaintiffs' interest stem from the same factual and legal theories as the class members. *Id.*  Thus, by virtue of commonality and typicality satisfaction, Plaintiffs have also satisfied the adequacy of representation requirement.

Further, Plaintiffs' counsel is adequate and competent to represent Plaintiffs and the class members in this action. Class counsel has a comprehensive team of litigators with combined extensive experience in relevant areas including class action, mass tort litigation, complex litigation, defense of class action lawsuits, wage claims, and employment lawsuits. Additionally, class counsel has the ability to absorb the costs of this litigation. Class counsel will vigorously prosecute the interests of Plaintiffs and the class as a whole. Class counsel has the capability and technical knowledge to litigate and administer the class (including a marketing department with third-party vendor relationships, experts, and third-party e-discovery vendors). Therefore, because Plaintiffs have a common interest as the class members (with no conflict present) and the class counsel is prepared and experienced to represent them,

Plaintiffs have satisfied Rule 23(a)'s adequacy requirement for class certification and this Motion for Class Certification should be granted.

## III)   REQUIREMENTS UNDER RULE 23(b)(3)

Having satisfied Rule 23(a), Plaintiffs must also show that they meet one of the three types of class actions recognized in Rule 23(b). Here, Plaintiffs seek class certification pursuant to Rule 23(b)(3). A Rule 23(b)(3) class action is maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Plaintiffs' claims satisfy both requirements for class                      certification                   under                   Rule                   23(b)(3).

### A. PREDOMINANCE (RULE 23(b)(3))

To satisfy the predominance requirement, the class members' claims must contain common, genuine questions of law or fact that warrant adjudication by collective representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). Common issues of fact and law predominate when they have a direct impact on every class member's effort to establish liability, entitlement to injunctive relief, and entitlement to monetary relief. *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 784 (11th Cir. 2014). On the other hand, "common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of legal and

factual issues." *Id.* Rule 23(b)(3)'s predominance requirement's overarching purpose is to "[ensure] that a class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 279 (M.D. Fla. 2019) (quoting *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1235 (11th Cir. 2016).

Predominance exists here as Plaintiffs' proposed class is sufficiently cohesive to warrant adjudication by class representation. Due to Nissan's unlawful conduct towards Plaintiffs and the class members, there are common questions of law and fact shared among them, such as: whether Nissan's use of piece-rate pay violated Florida and federal laws and statutes; whether Nissan failed to pay class members minimum wage for all hours worked and owed wages; and whether Nissan failed to reimburse class members for tools and equipment purchased that were required to perform job duties, among others. (*DE-40*, ¶ *21-25, 70-72, 147, 155-167, 170-172, 176-181, 184-190*); (*DE-40-1*, pg. *25*); *Ex. 1.1 ¶ 3-16, 18, 19, 22-40*; *Ex. 1.2 ¶ 4-17, 19-44*. Plaintiffs and class members also share common questions of law stemming from Nissan's unlawful conduct such as: whether Nissan violated the Fair Labor Standards Act and Florida's Minimum Wage Act; failed to comply with 29 C.F.R. § 531.35 "Free and Clear" Payment or "Kickbacks"; and whether it was unjustly enriched. *Id.* These questions of law and fact are shared among Plaintiffs and all class members as they stem from the same legal theories and Nissan's misconduct. *Id.*

Nissan's unlawful practices towards Plaintiffs are the same unlawful practices used against all class members. *Id.* Thus, by Plaintiffs proving their case, they are also proving the cases of all class members, establishing predominance.

Further, Plaintiffs and the class members' issues of law and fact can be solved through a reasonable methodology for generalized proof of class-wide impact—one common formula calculating uncompensated wages based on the minimum wage, hours owed, and expenses paid for tools and equipment. *Ex. 1.1 ¶ 15-17*; *Ex. 1.2 ¶ 16-18.* Although the calculation of uncompensated wages per class member may vary, the overarching issues of the Defendant's unlawful acts remain at-large and would predominate over the individual calculation of damages. This overwhelming predominance would promote efficiency and uniformity of decision for Plaintiffs and the class members similarly situated. Thus, because Plaintiffs and the class members have common questions of law and fact stemming from Nissan's misconduct that overwhelmingly predominate over individual inquiries and advancing Plaintiffs' issues would also advance those of all class members, Plaintiffs have satisfied Rule 23(a)'s predominance requirement for class certification.

## B. SUPERIORITY OF CLASS ACTION (RULE 23(b)(3))

Superiority asks whether a class action is superior to other available methods for the fair and efficient adjudication of the claims. *See generally* FED. R. CIV. PRO. 23(b)(3). The Court looks to the four non-exclusive factors listed in Rule 23(b)(3). Superiority focuses on the relative advantages of a class action suit over other forms

of litigation that might be realistically available to Plaintiffs. *Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 319 (M.D. Fla. 2018). Superiority follows predominance—the more common issues predominate over individual issues, the more desirable a class action lawsuit is. *Id.* In making a superiority determination, the court focuses on: "A) the class members' interests in individually controlling the prosecution or defense of separate actions; B) the extent…of any litigation concerning the controversy…begun by…class members; C) the desirability…of concentrating the litigation of the claims in the particular forum; and D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3)(A)-(D).

Having established predominance, Plaintiffs' superiority claim is clear from the record presented herein and within the allegations of the FAC. First, the hundreds (at the least 740), if not thousands, of class members will be unable to assume the financial burdens associated with litigation of individual suits. *Ex. 2.* To Plaintiffs' knowledge, no class member has filed individual FLSA or FMWA claims against Nissan for the issues presented in the FAC. (*DE-40*, ¶ *26*). It is desirable for all parties involved to conduct litigation through this cohesive class action as it is in the interest of justice and judicial economy—through this class action, Nissan would only have to defend against these allegations of liability a single time, rather than hundreds of times through expensive individual claims. (*DE-40*, ¶ *23-35*). Additionally, individual litigation would be more difficult in managing versus that of a class action due to the duplicity of resources and expenditures. Finally, the

identification and notification of the putative class members do not present manageability problems as the members' names and other information is contained in Nissan's own business records as joint employer with the dealerships. In fact, approximately 740 names of potential class members have been presented to Plaintiffs by Nissan thus far (provided December 21, 2021). *See Ex. 2.*

Through Nissan's business records, Plaintiffs' counsel will also be able to calculate the wages owed to all class members. Refusing to certify the proposed class would preclude recovery for many putative class members who lack the resources to pursue individual claims. Thus, because individual actions would be needlessly duplicative, expensive, and time-consuming, especially in light of Plaintiffs' established predominance questions, this class action is the superior avenue for adjudication of the claims. Therefore, Plaintiffs have established all of Rule 23(b)(3)'s superiority requirements for class certification and certification should be granted.

**WHEREFORE**, Plaintiffs respectfully request this Court (1) certify a class with respect to Counts III-VI of the FAC (*DE-40*); (2) designate Plaintiffs JOSE J. AYALA, JR. and JEFF SANTOS as class representatives; and (3) designate éclat Law, LLP as class counsel along with any relief this Court deems just and proper.

## SIGNATURE PAGE AND SERVICE LIST

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of Court this 31st day of December 2021 by using the Federal Case Management/Electronic Case Files System (CM/ECF System). Accordingly, a copy of the foregoing is being served on this day to all attorney(s)/interested parties identified on the CM/ECF Electronic Service List, via transmission of Notices of Electronic Filing generated by the CM/ECF System.

*/s/   Kevin K. Ross-Andino*
KEVIN K. ROSS-ANDINO, FBN: 66214
JOLYNN M. FALTO, FBN: 1002743

**éclat Law, LLP**
*Attorneys for Plaintiffs & Class / Collective Members*
307 Cranes Roost Blvd., Suite 2010
Altamonte Springs, Florida 32701
Ph: (407) 636-7004|Fax: (888) 413- 0249
Email: kevin.ross@eclatlaw.com
Email: jfalto@eclatlaw.com

**Electronic Service To:**
Thomas R. Brice Florida Bar No. 0018139
tbrice@mcguirewoods.com
50 North Laura Street, Suite 3300, Jacksonville, Florida 32202
Telephone: (904) 798-2629 |Facsimile: (904) 360-6335
Peter N. Farley (Virginia Bar No. 34592)
Christopher M. Michalik (Virginia Bar No. 47817)
Igor Babichenko (Virginia Bar No. 78255) Admitted pro hac vice

McGuireWoods LLP
Gateway Plaza 800 East Canal Street Richmond, VA 23219
Tel: 804-775-1000 Fax: 804-775-1061
Email: pfarley@mcguirewoods.com | Email: cmichalik@mcguirewoods.com
Email: ibabichenko@mcguirewoods.com
**Attorneys for Defendant**