UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSE J. AYALA, JR.; and JEFF
SANTOS,

    Plaintiffs,

v.                                                        Case No. 6:20-cv-1625-RBD-DAB

NISSAN NORTH AMERICA, INC.,

    Defendant.
_____

### ORDER

Before the Court are Plaintiffs' motions to certify this case as a class and collective action (Docs. 153, 154) and Defendant Nissan North America, Inc.'s ("Nissan") summary judgment and *Daubert* motions (Docs. 161, 162).

### BACKGROUND

The facts of this employment case are relatively simple. Nissan is a car manufacturer and distributor that sells cars to dealerships; the dealerships then sell the cars to consumers and service them. (Doc. 161-1, ¶ 3.) The dealerships hire mechanics to service the cars. (*Id.* ¶ 8.) When the cars are under Nissan's warranty, Nissan pays the dealer to service them. (*Id.*) When the cars are outside the warranty, the customer pays the dealer directly. (*Id.* ¶¶ 8–9.) The issue here arises from how Nissan pays the dealers for warranty work: by "flat rate," meaning

Nissan sets a particular number of hours that a particular job should take and pays the dealers for only that number of hours, regardless of how long the mechanic worked on that job. (*Id.* ¶ 12; Doc. 153-2, pp. 39:21–40:15.) The dealers then pay the mechanics—Nissan does not pay them directly. (Doc. 162-2, pp. 67:23–68:4; *see, e.g.*, Doc. 165-9, p. 1.) Plaintiffs, who were mechanics for various Nissan dealerships, contend that this system results in them being underpaid when the work takes longer than the flat rate allows. (Doc. 40, ¶ 74.)

So Plaintiffs sued Nissan as their "joint employer" for: (1) violating the Fair Labor Standards Act ("FLSA") by failing to pay minimum wage; (2) violating the FLSA by failing to pay overtime; (3) violating Florida's Minimum Wage Act ("FMWA") by failing to pay minimum wage; and (4) three separate unjust enrichment claims. (*Id. passim*.) Plaintiffs now move to certify their FLSA claims as a collective action (Doc. 153; *see* Doc. 165) and their FMWA and unjust enrichment claims as a class action (Doc. 154; *see* Doc. 166). Nissan moves for summary judgment (Doc. 161; *see* Docs. 169, 172) and to exclude one of Plaintiffs' experts (Doc. 162; *see* Doc. 168). After a hearing (Doc. 193), these matters are ripe.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and

all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006). Then the Court must decide whether there is "sufficient disagreement to require submission to a jury." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (cleaned up).

## ANALYSIS

Nissan argues that it is entitled to summary judgment on Plaintiffs' FLSA and FMWA claims because Nissan was not Plaintiffs' employer and thus not liable for any wage violations. (Doc. 161.) The Court agrees.

Nissan's liability under the FLSA and FMWA depends on whether Nissan was Plaintiffs' joint employer alongside their individual dealerships. *See Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1207 (11th Cir. 2003); *see also Anagnos v. Nelsen Residence, Inc.*, 721 F. App'x 901, 904 (11th Cir. 2018). There is an eight-factor test for determining joint employment: (1) the nature and degree of control of the workers; (2) the degree of supervision of the work; (3) the right to hire and fire; (4) the power to determine pay rates or methods; (5) the preparation of payroll and payment of wages; (6) ownership of the work facility; (7) performance of a specialty job integral to the business; and (8) the investment in equipment and facilities. *See Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1176 (11th Cir. 2012). Joint employment is a question of law. *See Martinez-Mendoza*,

340 F.3d at 1209; *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986); *Aimable v. Long & Scott Farms*, 20 F.3d 434, 440 (11th Cir. 1994).

The application of the eight-factor test to the instant facts weighs heavily in favor of finding that Nissan is not the mechanics' joint employer. First, as to the nature and degree of control of the workers, control arises when the company "goes beyond general instructions and begins to assign specific tasks," such as hiring, scheduling, and discipline. *See Layton*, 686 F.3d at 1178 (cleaned up). But here, the dealerships handle hiring, terms of employment, and assignment of tasks. (Doc. 153-3, p. 32:9–23; Doc. 161-1, ¶¶ 17–18; Doc. 161-3, ¶ 9.) Each dealership had different handbooks and its own employment practices. (Doc. 153-1, p. 56:7–11.) While Nissan requires that mechanics clock on to one project at a time for warranty work purposes, Nissan does not assign mechanics to particular projects. (Doc. 161-11, pp. 33:7–22, 90:20–91:3.) And while Nissan defines the general requirements dealers must follow to fulfill their contracts and be paid for warranty claims, this kind of general oversight only rises to a minimal level of control—particularly because most warranty claims are paid immediately with no interaction between corporate and the mechanics. (Doc. 153-2, pp. 50:15–51:20; Doc. 161-1, ¶ 15; Doc. 161-11, p. 98:16–21.) So this factor weighs against a finding of joint employment. *See Valle v. Ceres Env't Servs., Inc.*, No. 21-12020, 2022 WL 1667015, at *5 (11th Cir. May 25, 2022).

The similar second factor, degree of supervision of the work, also weighs against such a finding. "[I]nfrequent assertions of minimal oversight do not constitute the requisite degree of supervision." *Martinez-Mendoza*, 340 F.3d at 1211. Oversight here was minimal: no one from Nissan corporate supervised the day-to-day work of the mechanics, and while engineers from corporate would occasionally come to dealerships to help with tricky problems, their presence provided technical help rather than supervision. (Doc. 153-1, pp. 97:24–98:4; Doc. 153-2, pp. 50:15–51:20, 63:4–6; Doc. 153-8, p. 5.) Because the dealerships, not Nissan, supervised the mechanics daily, this factor cuts strongly against a joint employment finding. *See Martinez-Mendoza*, 340 F.3d at 1211.

As to the right to hire and fire, the dealerships handle all hiring and promotions, have their own HR departments, and generally control the terms of employment. (Doc. 153-2, pp. 22:17–18, 31:5–18, 37:16–25; Doc. 153-3, p. 32:9–23; Doc. 153-8, p. 5; Doc. 161-3, ¶ 9.) While Nissan did require mechanics to be certified (via a one-day training course) before performing warranty work, Nissan did not set requirements for other work, nor did it assign particular mechanics to work on particular projects; indeed, dealerships had mechanics on staff who were not certified and did not do warranty work. (Doc. 153-14; Doc. 161-1, ¶¶ 17–18; Doc. 161-9, pp. 102:18–103:3; Doc. 161-11, pp. 49:21–51:3, 114:15–17, 124:9–15.) Because Nissan had minimal, limited involvement in the employment process, this

factor weighs against joint employment. *See Layton*, 686 F.3d at 1179; *Diaz v. U.S. Century Bank*, No. 12-21224, 2013 WL 2046548, at *8 (S.D. Fla. May 14, 2013).

The fourth factor—the power to determine pay rates or methods—forms the gravamen of Plaintiffs' argument. The evidence makes clear that the dealerships, not Nissan, set the mechanics' hourly rate of pay. (Doc. 153-2, pp. 31:5–18, 37:16–25; Doc. 153-8, p. 5.) But Plaintiffs argue that the flat-rate system—by which Nissan sets a flat amount of time it will pay the dealerships for a particular piece of warranty work, regardless of how long it takes the mechanic to complete— indirectly affects their take-home pay. (Doc. 153, pp. 13–16; Doc. 169, p. 13; *see* Doc. 161-1, ¶¶ 12, 22.) The record evidence belies this argument. The amount Nissan pays a dealer for a particular repair is separate from what the dealer pays the mechanics; indeed, Nissan typically pays dealers over $100 an hour for warranty work but dealers only pay the mechanics between $14 and $30 an hour. (Doc. 161-1, ¶¶ 13–14; Doc. 161-14, p. 59:20–22; Doc. 161-2, ¶ 9.) In fact, both named Plaintiffs changed Nissan dealerships for better pay—a nonsensical move if Nissan controlled pay. (Doc. 161-9, p. 63:17–25; Doc. 161-10, p. 16:1–3.) If the dealerships withhold mechanics' pay when Nissan (on rare occasion) rejects a dealer's claim for warranty work, or when they work longer than the flat rate allows, that is the dealer's decision, not Nissan's. (Doc. 161-1, ¶¶ 9–24; Doc. 161-2, ¶ 9; *see* Doc. 162-3, pp. 62:20–63:15.) Moreover, Nissan only pays for warranty

work and has no control over what the dealerships pay mechanics for customer-paid jobs, which is often a substantial portion of their work. (*See* Doc. 161-1, ¶¶ 9, 26.) Consequently, if the mechanics are not paid minimum wage or overtime, that is the dealer's fault—not Nissan's. Because the dealerships, not Nissan, set the mechanics' pay rate, this factor weighs against a finding of joint employment. *See Aimable*, 20 F.3d at 442; *see also Valle*, 2022 WL 1667015, at *6.

The fifth factor is also pay-related: the preparation of payroll and payment of wages. There is no question that the dealerships, not Nissan, paid the mechanics their weekly wages directly. (Doc. 162-2, pp. 67:23–68:4; *see, e.g.*, Doc. 165-9, p. 1.) Any questions or issues with pay went to the dealership supervisors. (Doc. 162-2, pp. 157:1–158:10.) The only time any money goes from Nissan corporate directly to the mechanics is via Nissan's retention incentive program, which provides periodic bonuses for productive workers; but this program is voluntary, and some dealerships and mechanics do not participate. (*See* Doc. 161-11, pp. 129:1–3, 136:10–14.) Because Nissan is not responsible for the regular payment of the mechanics' wages, this factor weighs against a finding of joint employment—but not strongly, given that Nissan does occasionally pay mechanics directly.

As to factor six, the ownership of the work facility, it is undisputed that the dealerships own the facilities, not Nissan. (Doc. 161-1, ¶ 3.) In fact, Nissan, as a manufacturer and distributor, is prohibited from owning dealerships. (*Id.* (citing

7

Fla. Stat. § 320.696).) So this factor cuts strongly against a finding of joint employment. *Cf. Molina v. Hentech, LLC*, No. 6:13-cv-1111, 2015 WL 1242790, at *7 (M.D. Fla. Mar. 18, 2015) (Conway, C.J.) (noting that the entity that owns the worksite is the likeliest to control labor law violations).

Factor seven involves whether the workers perform a specialty job integral to the business. This factor is interpreted narrowly: it favors joint employment where the worker does one process in an assembly line, whereas it weighs against joint employment if the worker's task can be completed individually and not side-by-side with others. *See Layton*, 686 F.3d at 1180; *Valle*, 2022 WL 1667015, at *7. Intuitively, one might argue that a mechanic performs a specialty job integral to a car dealership and service center, but the Eleventh Circuit has squarely rejected this argument. *See Valle*, 2022 WL 1667015, at *7 (rejecting argument that delivery drivers were integral to delivery business). Because the mechanics do not work as part of an assembly line, this factor weighs against a finding of joint employment.

Finally, as to the investment in equipment and facilities, there is no evidence that Nissan supplied anything to the mechanics. *Cf. Layton*, 686 F.3d at 1181 ("[W]orkers are more likely to be economically dependent on the person who supplies the equipment or the facilities."). As discussed above, the dealerships were independently owned. Mechanics even paid for their own tools and kept them when they moved dealerships. (*See, e.g.*, Doc. 161-14, p. 58:8–10.) So this last

8

factor also cuts against a finding of joint employment.

With all the factors weighing against a finding of joint employment, the Court concludes that Nissan is not Plaintiffs' joint employer as a matter of law. So Nissan cannot be liable to Plaintiffs for the alleged FLSA and FMWA violations[1] and is thus entitled to summary judgment.[2] *See Valle*, 2022 WL 1667015, at *5–8.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Nissan's motion for summary judgment (Doc. 161) is **GRANTED**.

2. Nissan's *Daubert* motion (Doc. 162) is **DENIED AS MOOT**.

3. Plaintiffs' class and collective certification motions (Docs. 153, 154) are **DENIED**.

4. Nissan's motion in limine (Doc. 185) is **DENIED AS MOOT**.

---

[1] Nissan is also entitled to summary judgment on the unjust enrichment claims for the same reasons, as there is no evidence that Nissan received any benefit *directly* from the mechanics, as required by Florida law. *See Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017); *see also Caldwell v. Compass Ent. Grp. LLC*, No. 6:14-cv-1701, 2016 WL 7136181, at *2 (M.D. Fla. Feb. 4, 2016).

[2] Summary judgment in favor of the defendant on a joint employer issue does not automatically resolve class certification. *See Martinez-Mendoza*, 340 F.3d at 1215–16 ("[E]ven after finding against plaintiffs on the merits, the court should have determined whether the class action could be maintained."). Here, neither a class nor a collective could be maintained because Plaintiffs are not similarly situated (as required for a collective) nor are their claims common (as required for a class). *See Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1260–62 (11th Cir. 2008); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Specifically, because Plaintiffs all work for different dealerships and not Nissan, the inquiries as to each one would be individualized and unwieldy, defeating the purpose of collective treatment and foreclosing the necessary classwide proof of injury. *See Lewis-Gursky v. Citigroup, Inc.*, No. 8:15-cv-2887, 2017 WL 892604, at *6–7 (M.D. Fla. Mar. 6, 2017); *Villoch v. Ultimate Fitness Grp.*, No. 8:15-cv-587, 2015 WL 4645460, at *5–6 (M.D. Fla. Aug. 4, 2015). So the class and collective certification motions (Docs. 153, 154) are also due to be denied.

5. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiffs, terminate all pending deadlines, and close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 3, 2023.

ROY B. DALTON JR.
United States District Judge